**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**ORETHA BEH, RUBY CASON, BRIANA**
**KINCANNON and KIMBERLY BALKUM,**
**individually and on behalf of all persons**
**similarly situated,**

**Plaintiffs,**

-versus-                                                          No.

**COMMUNITY CARE COMPANIONS INC.,**               **JURY TRIAL DEMANDED**
**ALEXANDER J. CARO, MARK GATIEN,**
**INTERIM HEALTHCARE OF ROCHESTER,**
**INC., and JAMES WATSON,**                               **COLLECTIVE AND**
                                                          **CLASS ACTION**
**Defendants,**                **COMPLAINT_____**
-------------------------------------------------------------x

ORETHA BEH, RUBY CASON, BRIANA KINCANNON and KIMBERLY BALKUM

(hereinafter collectively "Named Plaintiffs"), by their attorneys, Creighton, Johnsen & Giroux

and Gladstein, Reif & Meginniss LLP, allege upon knowledge to themselves and upon

information and belief as to all other matters as follows:

**PRELIMINARY STATEMENT**

1.  This action is brought by the Named Plaintiffs, on their own behalves and on behalf of

all persons similarly situated, to redress

(a) Defendants' failures to pay to Named Plaintiffs and to other Personal Care

Assistants ("PCAs") and/or Home Health Aides ("HHAs") employed by one or more Defendants

(i) contractual wages for work performed, (ii) wages at not less than the applicable minimum

wage rate(s) for work performed, (iii) wages at not less than 1.5 times said employees' regular

rate(s) of pay for work performed in each workweek in excess of 40 hours, (iv) reimbursements

for expenses incurred in traveling between respective residences of two of Defendants' clients,

for purchases of uniforms or parts thereof, and for expenses incurred in laundering said uniforms or parts thereof, (v) uniform maintenance payments for laundering/maintenance of uniforms or parts thereof, (vi) one hour's pay at the applicable minimum hourly wage rate for each workday in which the spread of hours for work performed exceeds ten (10) hours, and (vii) one hour's pay at the applicable minimum hourly wage rate for each day in which an employee is subjected to a split shift, if any;

(b) Defendants' causing Named Plaintiffs and other PCAs/HHAs employed by one or more of them to make payments by separate transactions that would not be permitted as deductions from wages;

(c) Defendants' failures to provide to each of the aforesaid persons, at the time of his/her hiring or within 10 business days of his/her first day of employment, a written notice of his/her rate(s) of pay and the basis thereof; each allowance, if any, claimed by Defendant(s); the regular pay day; the name of each employer and any "doing business as" name used by it/him; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number; and

(d) Defendants' failures to furnish to each of the aforesaid persons, with each payment of wages, a written statement listing the dates of each pay period corresponding to each such payment of wages; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked.

2.  Said failures by Defendants are violative of 29 U.S.C. § 207(a)(1) (failures to pay overtime compensation required by federal law) and 29 U.S.C. § 206(a)(1) (failures to pay wages

at the federally-mandated minimum wage rate).  Said failures also are violative of 12 NYCRR § 142-2.2 (failures to pay overtime compensation required by state law), N.Y. Labor Law § 652(1) (failures to pay wages at the applicable state-mandated minimum wage rate(s)), NYLL § 198(3) and the New York law of contracts (failures to pay wages at agreed-upon rates), NYLL § 195(1) (failures to timely provide written notice of required information), NYLL § 195(3) (failures to furnish required wage statement together with each wage payment), NYLL § 193 (failures to reimburse employees for payments employer required employees to make by separate transactions), 12 NYCRR § 142-2.5(c) (failures to timely reimburse employees for purchase(s) of uniform(s) and failures to provide employees with maintenance pay for laundering/maintenance of uniforms), and 12 NYCRR § 142-2.4(b) (failures to compensate for spreads of hours exceeding ten (10) hours and/or for split shifts).  Plaintiffs' claims for redress for Defendants' violations of federal law are made pursuant to Title 29 U.S.C. § 216(b).  Their claims for redress for Defendants' violations of state law are made pursuant to Labor Law § 663 and § 198(1-a), (1-b) and (1-d).

## JURISDICTION and VENUE

3.  This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1332(d)(2) and 1337(a) and over their state claims pursuant to 28 U.S.C. § 1367.

4.  The Western District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b).

## JURY TRIAL

5.  Plaintiffs demand a trial by jury on any and all issues triable as of right by a jury.

## PARTIES

**Defendants**

6. Defendant Community Care Companions, Inc. ("CCC") is a domestic business corporation organized and existing under the laws of the State of New York. Its principal place of business is located at 300 West Main Street, Smithtown, New York 11787. At least since October 13, 2017, CCC has owned and operated franchised home care businesses and employed individuals as PCAs or HHAs in those businesses.[1] As such, it provides and has provided home care services to individual clients. At all relevant times, CCC was and is engaged in commerce and operated and operates an enterprise engaged in commerce. It has several offices and employs hundreds of individuals in counties within the Western District of New York.

7. Defendant Alexander J. Caro is an individual residing at 132 Oakside Drive, Smithtown, New York 11787. On information and belief, at least since October 13, 2017, Caro has been the owner of CCC and has had operational control of said company. He has had substantial control over the wages, hours and working conditions as well as the hiring and discharge of individuals employed by CCC, including those employed as PCAs or HHAs. At least since October 13, 2017, pursuant to 29 U.S.C. § 203(d), Caro has employed the individuals employed by CCC as PCAs/HHAs.

8. Defendant Mark Gatien is an individual residing at 18 Arthur Avenue, Patchogue, New York 11722. On information and belief, at least since October 13, 2017, Gatien has been the Chief Executive Officer of CCC and has had operational control of said company. He has had substantial control over the wages, hours and working conditions as well as the hiring and

---

[1]     Unless otherwise noted, the term "PCA" includes, but is not limited to, each Named Plaintiff who works and/or worked as a PCA, and the term "HHA" includes, but is not limited to, each Named Plaintiff who works and/or worked as an HHA. PCAs and HHAs are sometimes hereinafter referred to collectively as "home care workers."

discharge of individuals employed by CCC, including those employed as PCAs/HHAs.  At least

since October 13, 2017, pursuant to 29 U.S.C. § 203(d), Gatien has employed the individuals

employed by CCC as PCAs/HHAs.

9.  Defendant Interim Healthcare of Rochester, Inc. ("IHR") is a domestic business

organized and existing under the laws of the State of New York.  It has places of business

located at 1 South Washington Street, Suite 200, Rochester, New York 14614 and 360 Delaware

Avenue, Suite 3 North, Buffalo, New York 14202.  Said company does and/or did business in the

name of Interim Healthcare of Western New York and in its own name.  IHR has owned and

operated home care businesses and employed individuals as PCAs or HHAs in those businesses.

As such, it has provided home care services to individual clients.  At all relevant times, IHR is

and/or was engaged in commerce and operates and/or operated an enterprise in commerce.

Through October 13, 2017, IHR operated one or more home care businesses franchised by

Interim Healthcare, Inc.  The latter company, the franchisor, is and was a Florida corporation

with its principal place of business located at 1601 Sawgrass Corporate Parkway Suite 220,

Sunrise, Florida 33323.  IHR employs and/or employed hundreds of individuals as PCAs or

HHAs whose work for IHR is and/or was performed in counties within the Western District of

New York.

10.  Through October 13, 2017, Defendant James Watson was the sole shareholder and

operator of IHR, whether doing business as Interim Healthcare of Western New York or in its

own name.  Watson possessed operational control over said company and, specifically, had

substantial control over the wages, hours and working conditions as well as the hiring and

discharge of PCAs/HHAs employed by IHR.  Through October 13, 2017, pursuant to 29 U.S.C.

§ 203(d), Watson employed the home care workers employed by IHR, whether doing business as Interim Healthcare of Western New York or in its own name.

**Named Plaintiffs**

11.   Plaintiff Oretha Beh ("Beh") is a resident of the State of New York residing in the City of Buffalo and County of Erie.  She was employed as a PCA within the meaning of 29 U.S.C. § 203(g) and N.Y. Labor Law § 2(7) by Defendants IHR and Watson from approximately June, 2016 through approximately October 13, 2017 and then, without interruption, by Defendants CCC, Caro and Gatien from approximately October 13, 2017 through the present.

12.   Plaintiff Ruby Cason ("Cason") is a resident of the State of New York residing in the City of Buffalo and County of Erie.  She was employed as a PCA within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by Defendants IHR and Watson from approximately January, 2013 through approximately October 13, 2017 and then, without interruption, by Defendants CCC, Caro and Gatien from approximately October 13, 2017 through the present.

13.   Plaintiff Briana Kincannon ("Kincannon") is a resident of the State of New York residing in the City of Buffalo and County of Erie.  She was employed as a PCA within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by Defendants CCC, Caro and Gatien from approximately May 2018 through the present.

14.   Plaintiff Kimberly Balkum ("Balkum") is a resident of the State of New York residing in the City of Rochester and County of Monroe.  She was employed as an HHA within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by Defendants IHR and Watson in approximately October, 2017 through approximately October 13, 2017 and then, without

interruption, by CCC, Caro and Gatien from approximately October 13, 2017 through January, 2019.[2]

16.   At all times when employed by the CCC Defendants and/or when employed by the IHR Defendants, each Named Plaintiff is and/or was employed in commerce within the meaning of 29 U.S.C. § 203(b) and/or in an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(r)(1) and (s)(1).

## FACTS

16.   On or about October 13, 2017, pursuant to written agreements with Interim Healthcare Inc. and with companies operating home care businesses franchised by Interim Healthcare, CCC acquired several such franchised home care businesses as well as the right to operate those businesses as franchises within Interim Healthcare's franchise system including its trademark and proprietary information.  Among the franchises acquired by CCC were franchises that had been operated by IHR.  Those home care workers who had been employed by IHR immediately prior to the aforesaid acquisition by CCC thereupon became employed by CCC as home care workers performing the same tasks for the same clients as when they were employed by IHR.

17.   Thus, at the time of the transfer of Interim Healthcare franchises from IHR to CCC, Named Plaintiffs Beh, Cason and Balkum, who had been employed as home care workers by IHR, became home care workers employed by CCC and performed the same tasks with the same clients.

---

[2]        CCC, Caro and Gatien are hereinafter referred to collectively as "CCC Defendants."  IHR and Watson are hereinafter referred to collectively as "IHR Defendants."

18.   Additional home care workers were hired by CCC to service its clients after the foregoing transfer of franchises to CCC.  Among these additional hires was Named Plaintiff Kincannon.

19.   Each home care worker employed by the CCC Defendants or by the IHR Defendants provided, is providing and/or will provide care to those Defendants' clients at the clients' respective residences.  Individuals designated as PCAs perform duties such as cleaning and bathing clients, doing their laundry and preparing clients' meals, among other duties.  Duties performed by individuals designated as HHAs include ensuring clients take their medications properly and assisting them in the taking of their medications, helping clients get out of and into bed, assisting in preparation of clients' meals, helping them to eat, maintaining their hygiene, taking clients to medical or other appointments, and related tasks.  PCAs and HHAs (sometimes referred to as "home care workers") perform a mixture of the duties associated with the other title and, in practice, there is no meaningful distinction that is relevant here.  Each PCA or HHA, including each Named Plaintiff, devotes more than 80% of his/her time with each client and in each workweek to the provision of care.

20.   PCAs/HHAs frequently were, are and/or will be required by one or more Defendants to provide home care services for more than one client in the same workday.  Whenever that occurs, the home care worker was, is and/or will be required to travel from one client's residence to the other client's residence.  Such travel was, is and/or will be primarily for the benefit of said Defendant(s).  Each Defendant employing such a home care worker knew, knows and/or will know and had, has and/or will have reason to know of such travel by that home care worker. The time during which each PCA/HHA is required to be at a client's residence is determined entirely by one or more Defendants.  Consequently, the amount of time between the scheduled

servicing of one client and the scheduled servicing of the second client is determined entirely by said Defendant(s).  One or more Defendants also determine which clients should be serviced on the same workday by the same home care worker and thereby determine the distance to be traveled by that home care worker between two clients.

21.  PCAs/HHAs required to service two clients in a single workday were not, are not and/or will not be compensated by any Defendant for the time expended by them on such travel.

22.  Defendants did not, do not and/or will not transport PCAs/HHAs who are required to travel between clients' residences nor did they, do they and/or will they otherwise make transportation available to home care workers for such travel.  PCAs/HHAs therefore regularly incurred, incur and will incur expenses for their travel between clients' residences.  Defendants did not, do not and/or will not reimburse or otherwise pay home care workers for such expenses.

23.  For example, Beh was required to travel from one client's residence to another's in at least seventy-seven (77) weeks from December 2017 to the present, while employed by CCC.  Cason was required to travel from one client's residence to another's in at least eighteen (18) weeks from December 2017 to the present, while employed by CCC.  Kincannon was required to travel from one client's residence to another's in at least seventeen (17) weeks from December 2017 to the present, while employed by CCC.  Balkum was required to travel from one client's residence to another's in at least forty-three (43) weeks between December 2017 and January 2019, while employed by CCC.  Each Named Plaintiff incurred expenses on each occasion she was required to engage in such travel.  Nevertheless, Defendants failed to compensate any of the Named Plaintiffs for any time expended on such travel in those weeks and likewise failed to reimburse or otherwise pay them for the expenses they incurred in connection with that travel.

24.  If a PCA/HHA arrives at a second client's residence after traveling from another client's residence but before the scheduled time for servicing the second client begins, that home care worker is required to wait until that scheduled time before entering the residence and providing services to that second client and is not compensated for that waiting time.  The amount of time between the servicing of clients in a single workday is such that home care workers are unable to use that time for personal benefit.  Each of the Named Plaintiffs was, is and/or will be required to wait to provide services for the second client until the beginning of her scheduled shift with that client.  None of them was, is and/or will be compensated for such waiting time.  Each Defendant employing a PCA/HHA knew and had reason to know of such waiting by that home care worker.

25.  After the conclusion of each PCA's/HHA's regularly-scheduled shift providing services for a client, that home care worker is required by one or more Defendants to perform additional work at that client's residence, primarily for the benefit of said Defendant(s).  Each Defendant employing such a home care worker knows and has reason to know of the performance of such additional work by that home care worker.  This additional work, which generally consists of regular home care duties, is integral and indispensable to performance of the PCA's/HHA's principal duties.  Performance of this additional work normally requires approximately thirty (30) minutes.  No home care worker was, is and/or will be compensated for her/his performance of this additional work.

26.  For example, in at least seventy-eight (78) weeks beginning in or about December 2017, the CCC Defendants failed to compensate Cason for the time she expended on work performed at clients' residences after the end of a scheduled shift, which work consisted of one or more principal duties or was integral and indispensable to performance of her principal duties.

10

In at least fifty-two (52) weeks beginning in or about December 2017, said Defendants failed to compensate Kincannon for time she expended on work performed at clients' residences after the end of a scheduled shift, which work consisted of one or more principal duties or was integral and indispensable to performance of her principal duties.  In at least forty-three (43) weeks between December 2017 and January 2019, said Defendants failed to compensate Balkum for time she expended on work performed at clients' residences after the end of a scheduled shift, which work consisted of one or more principal duties or was integral and indispensable to the performance of her principal duties.

27.   No Defendant launders the uniform (or part thereof) of a PCA/HHA employed by it/him.  Each PCA/HHA is required by one or more Defendants to launder his/her uniforms. Home care workers normally launder their uniforms or parts thereof approximately once per week and, due to the smell and filth of those items, normally wash them separately from personal clothing.  Such work is integral and indispensable to performance of their principal duties.  Each such laundering ordinarily takes approximately 1 ½ hours.  Each Defendant knows and has reason to know of such laundering by a home care worker employed by that Defendant.

28.   No PCA/HHA was, is and/or will be compensated for the time spent laundering her/his uniforms.

29.   No Defendant makes machines or facilities available to any PCAs or HHAs for the laundering of their uniforms.  Consequently home care workers employed by it/him normally incur expenses in order to launder their uniforms or parts thereof.  No Defendant reimbursed, reimburses, and/or will reimburse nor otherwise pay PCAs or HHAs for expenses they incur in performing that laundering work.

30.   For example, the CCC Defendants failed to compensate Beh for time she expended laundering her uniform or parts thereof on at least seventy-nine (79) occasions beginning in or about December 2017.  They failed to compensate Cason for time she expended laundering her uniform or parts thereof on at least seventy-eight (78) occasions beginning in or about December 2017.  Said Defendants failed to compensate Kincannon for time she expended on laundering her uniform or parts thereof on at least fifty-two (52) occasions beginning in or about December 2017.  And they failed to compensate Balkum for time she expended on laundering her uniform or parts thereof on at least forty-three (43) occasions between December 2017 and January 2019.  Said Defendants also failed to reimburse or otherwise pay any of the Named Plaintiffs for any of the expenses they incurred in laundering their uniforms or parts thereof.

31.   On numerous occasions, PCAs/HHAs are, were and/or will be required by one or more Defendants to undergo home training sessions.  Such training is integral and indispensable to performance of their principal duties.  Such sessions ordinarily last approximately one hour.  Each Defendant knew, knows and/or will know and had, has and/or will have reason to know of the attendance at such training sessions by each home care worker employed by it/him.

32.   No Defendant compensated, compensates or will compensate any PCA/HHA employed by it/him for the time said employee is required to expend on these training sessions.

33.   For example, twice per year, Defendants required and/or will require Cason to participate in a home training session.  Twice per year, Defendants likewise required and/or will require Kincannon to participate in a home training session.  Defendants failed and/or will fail to compensate any of the Named Plaintiffs for the time they expended on participation in such training sessions.

34.   Defendants required and/or will require PCAs/HHAs to obtain and purchase the uniforms they are required to wear for Defendants' benefit while at work but did not and/or will not reimburse or otherwise pay such home care workers for the cost of purchasing their uniforms.  Such uniforms cost approximately $20 per set of shirt and pants.

35.   For example, Named Plaintiffs were required by one or more Defendants to purchase uniforms to be worn during the performance of work but said Defendant(s) did not reimburse or otherwise pay the Named Plaintiffs for such purchases.  Named Plaintiffs purchased between four (4) and twenty-four (24) uniforms annually.

## COLLECTIVE ACTION

36.   Named Plaintiffs bring this action on their own behalves and on behalf of all persons similarly situated within the meaning of 29 U.S.C. § 216(b) who consent in writing to become a party to this action and whose consent is filed with the court in which this action is brought.

## CLASS ACTION

37.   Named Plaintiffs also bring this action on behalf of the class of persons who were, are and/or will be employed as PCAs or HHAs by CCC in the State of New York on or after October 13, 2017 ("Class A") and on behalf of the class of persons who were employed as PCAs or HHAs by IHR in the State of New York on or before October 13, 2017, whether in its own name or as Interim Healthcare of Western New York ("Class B").

38.   Pursuant to Fed. R. Civ. P. 23(c)(4), Class A includes the following Subclasses:

A.   Subclass No. A1 consists of all PCAs/HHAs employed by CCC who performed, are performing and/or will perform activities required by or otherwise benefiting CCC for which they were not, are not and/or will not be compensated.  These uncompensated activities include (i) travel in the course of a workday between the respective residences of two

CCC clients, (ii) waiting at the residence of a second CCC client before being allowed to enter said residence and provide services for that client, (iii) activities performed at the residence of a CCC client after conclusion of a regularly-scheduled shift at that residence, (iv) laundering their uniforms or parts thereof and/or (v) attending mandatory training sessions conducted by or for CCC.

        B.  Subclass No. A2 consists of all PCAs/HHAs employed by CCC who were, are and/or will be required by CCC to expend personal monies on the performance of activities required by CCC but who were not, are not and/or will not be reimbursed for those expenditures. This includes PCAs/HHAs required to expend personal monies (i) on travel in the course of a workday between the residences of two or more CCC clients as required by CCC, (ii) on laundering their uniforms or parts thereof as required by CCC and/or (iii) on the purchase of uniforms or parts thereof that CCC required, requires or will require them to wear;

        C.  Subclass No. A3 consists of all PCAs/HHAs employed by CCC whose activities required by or otherwise benefiting CCC, including those identified in Subparagraph A, occupy more than forty (40) hours in one or more workweeks;

        D.  Subclass No. A4 consists of all PCAs/HHAs employed by CCC who were not, are not and/or will not be paid at or above $7.25 per hour for activities required by or otherwise benefiting CCC, including those set forth in Subparagraph A, in one or more workweeks;

        E.  Subclass No. A5 consists of all PCAs/HHAs employed by CCC who were not, are not and/or will not be paid in one or more workweeks at not less than the applicable minimum wage rate(s) set forth in NYLL § 652(1) for activities required by or otherwise benefiting CCC, including those set forth in Subparagraph A;

F.  Subclass No. A6 consists of all PCAs/HHAs employed by CCC who were not, are not and/or will not be provided, at the time of hiring or within ten (10) business days of the first day of employment, with a written notice of their rate(s) of pay and the basis thereof; each allowance, if any, claimed by the employer(s); their regular pay day; the name of each employer and each "doing business as" name used by each employer; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number;

G.  Subclass No. A7 consists of all PCAs/HHAs employed by CCC who were not, are not and/or will not be furnished, together with each wage payment, with a written statement listing the dates of the corresponding pay period for which each payment of wages is made; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked;

H.  Subclass No. A8 consists of all PCAs/HHAs employed by CCC who were, are and/or will be required to work one or more split shifts; and

I.  Subclass No. A9 consists of all PCAs/HHAs employed by CCC who were, are and/or will be required to work one or more workdays in which the spread of hours exceeds ten (10) hours.

39.  Pursuant to Fed. R. Civ. P. 23(c)(4), Class B includes the following Subclasses:

A.  Subclass No. B1 consists of all PCAs/HHAs employed by IHR who performed activities required by or otherwise benefiting IHR for which they were not compensated.  These uncompensated activities included (i) travel in the course of a workday

15

between the respective residences of two IHR clients, (ii) waiting at the residence of a second IHR client before being allowed to enter said residence and provide services for that client, (iii) activities performed at the residence of an IHR client after conclusion of a regularly-scheduled shift at that residence, (iv) laundering their uniforms or parts thereof and/or (v) attending mandatory training sessions conducted by or for IHR.

B.  Subclass No. B2 consists of all PCAs/HHAs employed by IHR who were required by IHR to expend personal monies on the performance of activities required by IHR but who were not reimbursed or otherwise compensated for those expenditures.  This includes PCAs/HHAs required to expend personal monies (i) on travel in the course of a workday between the residences of two or more IHR clients as required by IHR, (ii) on laundering their uniforms or parts thereof as required by IHR and/or (iii) on the purchase of uniforms or parts thereof that IHR required them to wear;

C.  Subclass No. B3 consists of all PCAs/HHAs employed by IHR whose activities required by or otherwise benefiting IHR, including those identified in Subparagraph A, occupied more than forty (40) hours in one or more workweeks;

D.  Subclass No. B4 consists of all PCAs/HHAs employed by IHR who were not paid at or above $7.25 per hour for activities required by or otherwise benefiting IHR, including those set forth in Subparagraph A, in one or more workweeks;

E.  Subclass No. B5 consists of all PCAs/HHAs employed by IHR who were not paid in one or more workweeks at not less than the applicable minimum wage rate(s) set forth in NYLL § 652(1) for activities required by or otherwise benefiting IHR, including those set forth in Subparagraph A;

F.   Subclass No. B6 consists of PCAs/HHAs employed by IHR who were not provided, at the time of hiring or within ten (10) business days of the first day of employment, with a written notice of their rate(s) of pay and the basis thereof; each allowance, if any, claimed by the employer(s); their regular pay day; the name of each employer and "doing business as" name used by each employer; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number;

G.   Subclass No. B7 consists of all PCAs/HHAs employed by IHR who were not furnished, together with each wage payment, with a written statement listing the dates of the corresponding pay period for which each payment of wages was made; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowance, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked;

H.   Subclass No. B8 consists of all PCAs/HHAs employed by IHR who were required to work one or more split shifts; and

I.   Subclass No. B9 consists of all PCAs/HHAs employed by IHR who were required to work one or more workdays in which the spread of hours exceeded ten (10) hours.

40.   Class A, each Subclass thereof, Class B and each Subclass thereof are each so numerous that joinder of all members thereof is impracticable.  There are at least one thousand individuals in Class A and at least several hundred in each Subclass thereof, in Class B and in each Subclass thereof, respectively.

41.   There are questions of fact and of law that are common to Class A and to each Subclass thereof and questions of fact and law that are common to Class B and to each Subclass

thereof.  Those questions predominate over any questions that may affect only individual members of either Class or of any Subclass of either Class.  Such questions include but are not limited to:

A.  Were PCAs/HHAs employed by CCC or by IHR who were required to travel between the respective residences of two clients of their respective employers in the course of a workday been compensated for that travel time?  Were such home care workers employed by CCC or by IHR who were required to wait at the residence of a second client of their respective employers before entering therein and beginning performance of services for that client been compensated for their waiting time?  Were such home care workers employed by CCC or by IHR who were required to perform additional work at the residence of a client of their respective employers after conclusion of a regularly-scheduled shift at that residence been compensated for that additional work?  Were PCAs/HHAs employed by CCC or by IHR compensated for their required laundering of their uniforms or parts thereof?  Were PCAs/HHAs employed by CCC or by IHR compensated for their mandatory participation in training sessions?

B.  Were PCAs/HHAs employed by CCC or by IHR entitled by law to be compensated for performance of each of the tasks or activities described in Paragraphs 20, 24, 25, 27 and 31?  Were they compensated for the performance of each such task or activity?

C.  Were PCAs/HHAs employed by CCC or by IHR who were made to incur expenses in the performance of activities described in Paragraphs 22, 29 and/or 34 entitled to be reimbursed or otherwise paid for such expenses?  Were they reimbursed or otherwise paid for such expenses?

D.  In ascertaining the number of hours PCAs/HHAs employed by CCC or by IHR worked in each workweek for the purpose of determining whether they worked in excess of

forty (40) hours in a workweek (and were thereby entitled to overtime compensation), did their respective employers include (i) time expended on travel between the respective residences of clients of the employers, (ii) time expended on waiting at the residence of a second client before commencing performance of services for that client, (iii) time expended on additional work performed at a client's residence after conclusion of a regularly-scheduled shift at that residence, (iv) time expended on laundering uniforms or parts thereof and/or (v) time expended on mandatory training sessions?

E.  Were CCC and IHR each required by law to include time expended on the activities described in Paragraphs 20, 24, 25, 27 and/or 31 when determining whether PCAs/HHAs employed by it worked more than forty (40) hours in a workweek for the purpose of determining whether they were entitled to overtime compensation?

F.  Did PCAs/HHAs employed by CCC or by IHR perform work for CCC or by IHR in excess of forty (40) hours in one or more workweeks?

G.  Were PCAs/HHAs employed by CCC or by IHR compensated for work they performed in excess of forty (40) hours in a workweek at 1.5 times their respective regular rates of pay?

H.  Did 29 U.S.C. § 206(a)(1) and/or NYLL § 652(1) require that the expenses that CCC or IHR required PCAs/HHAs employed by it to incur be taken into account when determining whether they were compensated at not less than the minimum wage rate established by § 206(a)(1) and/or the applicable minimum wage rates established by § 652(1)?

I.  Were PCAs/HHAs employed by CCC or by IHR compensated for work they performed at not less than the minimum wage rate established by 29 U.S.C. § 206(a)(1) ($7.25 per hour)?

J.  Were PCAs/HHAs employed by CCC or by IHR compensated for work they performed at not less than the applicable minimum wage rates established by NYLL § 652(1)?

K.  Did CCC or IHR fail to provide PCAs/HHAs employed by it, at the time of their respective hirings or within ten (10) business days of their respective first days of employment, with a written notice of their respective rate(s) of pay and the basis thereof; each allowance, if any, claimed by CCC or by IHR; the regular pay day; the name of each employer and any "doing business as" name used by it/him; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number?

L.  Did CCC or IHR fail to furnish to PCAs/HHAs employed by it, with each payment of wages, a written statement listing the dates of the pay period corresponding to each such payment of wages; name of employee; name of each employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked?

M.  Where the spread of hours in days worked by PCAs/HHAs employed by CCC or by IHR exceeded ten (10) hours, were they entitled to be paid for such spread of hours pursuant to 12 NYCRR § 142-2.4?

N.  Where PCAs and/or HHAs employed by CCC or by IHR  were entitled to be paid for a spread of hours pursuant to § 142-2.4, were they paid in accordance with § 142-2.4?

O.  If PCAs/HHAs employed by CCC or by IHR worked split shifts, were they entitled to be paid for such split shifts pursuant to § 142-2.4?

P.  Where PCAs and/or HHAs employed by CCC or by IHR were entitled to be paid for working split shifts pursuant to § 142-2.4, were they paid in accordance with § 142-2.4?

42.  The claims of Named Plaintiffs are typical of the claims of the other members of Class A and of each Subclass thereof and typical of the claims of the other members of Class B and of each Subclass thereof.  Named Plaintiffs and the other members of Class A and of each Subclass thereof were and/or are subject to the same relevant policies and practices of CCC and suffered and/or are suffering the same kinds of injuries as a consequence of said policies and practices.  Named Plaintiffs and the other members of Class B and of each Subclass thereof were and/or are subject to the same relevant policies and practices of IHR and suffered and/or are suffering the same kinds of injuries as a consequence of said policies and practices.

43.  Named Plaintiffs will fairly and adequately protect the interests of the members of each Class and each Subclass they seek to represent.  There are no conflicts between Named Plaintiffs and the other members of either Class or of any Subclass thereof.  Counsel for Named Plaintiffs are experienced in litigating and settling wage and hour claims under federal and New York law and in litigating and settling class and collective actions, including those involving wage and hour claims.

44.  A class action is superior to other available methods for the fair and efficient adjudication of the claims herein.  The individual Named Plaintiffs and the other putative members of each Class and of each Subclass thereof lack the financial resources necessary to adequately prosecute separate individual lawsuits against CCC and/or IHR.  The prospective damages for each individual Named Plaintiff and each other member of either Class or of any Subclass thereof are small in comparison to the expenses and burdens of an individual prosecution of the claims herein.  A class action will avoid duplicative litigation and the

possibility of inconsistent judgments concerning the relevant policies and practices of CCC and of IHR.

45.  The conduct of CCC and of IHR set forth above directed at PCAs/HHAs currently employed by CCC and by IHR respectively is continuing.

## FIRST CAUSE OF ACTION: OVERTIME COMPENSATION
## (29 U.S.C. § 207(a)(1))

46.  Plaintiffs repeat and incorporate herein Paragraphs 1-45 above.

47.  At all times relevant hereto, each Defendant was and/or will be required pursuant to 29 U.S.C. § 207(a)(1) to compensate each PCA/HHA employed by it/him for each hour worked in excess of forty (40) hours in a workweek at 1.5 times his/her regular rate of pay.

48.  Named Plaintiffs Beh, Kincannon and Balkum and other PCAs/HHAs employed by the CCC Defendants worked and/or will work for said Defendants for more than forty (40) hours in a workweek.  Named Plaintiffs Beh and Balkum and other PCAs/HHAs employed by the IHR Defendants worked for said Defendants for more than forty (40) hours in a workweek.  In those weeks in which Beh worked or will work more than forty (40) hours, she worked or will work approximately 9.5 hours on average in excess of forty (40) hours.  In those weeks in which Kincannon worked or will work more than forty (40) hours, she worked or will work approximately 4.4 hours on average in excess of forty (40) hours.  In those weeks in which Balkum worked or will work more than forty (40) hours, she worked or will work approximately 7.7 hours on average in excess of forty (40) hours.

49.  Almost all of those weeks in which a Named Plaintiff or other home care worker employed by the CCC Defendants or by the IHR Defendants worked or will work for more than forty (40) hours were or will be  weeks in which the employee provided or provides services for

two clients on one or more workdays, expended or expends time on laundering his/her uniform and/or attended or attends a mandatory training session.

50.   None of the Named Plaintiffs and none of the other PCAs/HHAs employed by the CCC Defendants and/or by the IHR Defendants for more than forty (40) hours in a week were and/or will be compensated for their overtime hours at 1.5 times their regular rates of pay as required by §207(a)(1).

51.   The failures of the CCC Defendants and of the IHR Defendants to compensate each home care worker working overtime hours for them at 1.5 times his/her regular rate of pay for each hour of overtime resulted or will result primarily from those Defendants' failures to include in their calculations of the number of hours worked each week by each PCA/HHA all time expended by each such home care worker in each week (a) on travel on one or more workdays between the respective residences of those Defendants' clients, (b) on waiting at the residence of the second client to begin the provision of services for that client, (c) on work performed for each client at his/her residence after completion of a scheduled shift at that residence, (d) on laundering his/her uniform or parts thereof and/or (e) on attendance at mandatory training sessions.  The aforesaid failures also resulted or will result in part from those Defendants' failures to take into account PCAs/HHAs' entitlements to be paid *inter alia* (a) for one additional hour at the applicable minimum wage rate under New York law for each workday in which his/her spread of hours exceeded ten (10) hours and (b) for one additional hour at the applicable minimum wage rate under New York law for each split shift, when calculating home care workers' respective regular rates of pay.

52.   Defendants' violations of § 207(a)(1) were and/or will be committed with knowledge that, and reckless disregard for whether, their conduct was and/or will be violative of § 207(a)(1).

On information and belief, Defendants failed and/or will fail to make and maintain accurate records of the hours worked by their PCAs/HHAs.

## SECOND CAUSE OF ACTION: OVERTIME COMPENSATION
## (12 NYCRR § 142-2.2)

53.   Plaintiffs repeat and incorporate herein Paragraphs 1-52 above.

54.   At all times relevant hereto, each Defendant was and/or will be required pursuant to 12 NYCRR § 142-2.2 to compensate each PCA and HHA employed by it/him for each hour worked in excess of forty (40) hours in a workweek at 1.5 times his/her regular rate of pay.

55.   None of the Named Plaintiffs and none of the other PCAs/HHAs employed by the CCC Defendants or by the IHR Defendants for more than forty (40) hours in a week were and/or will be compensated for their overtime work at 1.5 times their regular rates of pay as required by § 142-2.2.

56.   Such failures of the CCC Defendants and of the IHR Defendants to so compensate each home care worker working overtime hours for them resulted and/or will result primarily from those Defendants' failures to include in their calculations of the number of hours worked each week by each PCA/HHA all time expended by each such home care worker in each week (a) on travel on one or more workdays between the respective residences of multiple clients of those Defendants,  (b) on waiting at the residence of a second client to begin the provision of services for that client, (c) on work performed for each client at his/her residence after completion of scheduled shifts at that residence, (d) on laundering a uniform or parts thereof and/or (e) on attendance at mandatory training sessions.  The aforesaid failures also resulted and/or will result in part from those Defendants' failures to take into account PCAs/HHAs' entitlements to be paid *inter alia* (a) for one additional hour at the applicable minimum wage rate under New York law for each workday in which his/her spread of hours exceeded ten (10) hours

and (b) for one additional hour at the applicable minimum wage rate under New York law for each split shift., when calculating those home care workers' respective regular rates of pay.

### THIRD CAUSE OF ACTION: MINIMUM WAGE
#### (29 U.S.C. § 206(a)(1))

57.  Plaintiffs repeat and incorporate herein Paragraphs 1-56 above.

58.  At all times relevant hereto, each Defendant was and/or will be required pursuant to 29 U.S.C.§ 206(a)(1) to compensate each PCA/HHA employed by it/him at not less than the minimum wage rate established by § 206(a)(1) ($7.25 per hour) for each hour worked.

59.  Each Defendant failed and/or will fail to compensate Named Plaintiffs and all other PCAs/HHAs for each hour worked at not less than the applicable minimum wage rate(s) established by § 206(a)(1).

60.  Such failures resulted and/or will result primarily from Defendants' failures to compensate PCAs/HHAs for (a) time expended on travel between the respective residences of multiple clients of Defendants, (b) time expended waiting to begin the provision of services for a second client on a given workday, (c) time expended on work performed for a client at his/her residence after completion of a scheduled shift at that residence, (d) time expended on laundering a uniform or parts thereof and/or (e) time expended on attendance at mandatory training sessions.

61.  The aforesaid failures by Defendants also resulted and/or will result in part from their failures to reimburse or otherwise pay PCAs/HHAs employed by them for expenses they caused and/or will cause the health care workers to incur (a) for traveling between clients' respective residences on a workday, (b) for laundering their uniforms or parts thereof and/or (c) for purchasing their uniforms, as required by § 206(a)(1).

62.  Defendants' violations of § 206(a)(1) were and/or will be committed with knowledge that and reckless disregard for whether their conduct is and/or will be violative of § 206(a)(1).

On information and belief, Defendants failed, are failing and/or will fail to make and maintain accurate records of the hours worked by their respective PCAs/HHAs.

## FOURTH CAUSE OF ACTION: MINIMUM WAGE
### (New York Labor Law § 652(1); 12 NYCRR § 142-2.10(b))

63.   Plaintiffs repeat and incorporate herein Paragraphs 1-62 above.

64.   At all times relevant hereto, each Defendant was and/or will be required pursuant to NYLL § 652(1) to compensate each PCA/HHA employed by it/him at not less than the applicable minimum wage rate(s) established by § 652(1) for each hour worked.  Each Defendant was, is and/or will be required by 12 NYCRR § 142-2.1(b) to compensate each PCA/HHA employed by it/him for all time spent on traveling, to the extent such traveling was, is and/or will be part of the duties of a PCA/HHA, at not less than the applicable minimum wage rate(s) established by NYLL § 652(1).

65.   Each Defendant failed and/or will fail to compensate Named Plaintiffs and all other PCAs/HHAs employed by it/him for each hour worked, including all time spent on traveling, to the extent such traveling was, is and/or will be part of the duties of a PCA/HHA, at not less than the applicable minimum wage rate(s) established by § 652(1).

66.   Such failures resulted and/or will result at least in part from Defendants' failures to compensate PCAs/HHAs for (a) time expended on travel between the respective residences of multiple clients of Defendants, (b) time expended waiting to begin the provision of services for a second client on a given workday, (c) time expended on work performed for a client at his/her residence after completion of a scheduled shift at that residence, (d) time expended on laundering a uniform or parts thereof and/or (e) time expended on attendance at mandatory training sessions.

67.   The aforesaid failures by Defendants also resulted and/or will result in part from their failures to reimburse or otherwise pay PCAs/HHAs employed by them for expenses they caused

and/or will cause the PCAs/HHAs to incur (a) for traveling between clients' respective residences in a workday, (b) for laundering their uniforms or parts thereof and/or (c) for purchasing their uniforms, as required by § 652(1) and/or 12 NYCRR § 142-2.10(b).

### FIFTH CAUSE OF ACTION:  UNPAID WAGES
### (New York Labor Law § 198(3); NY contract law)

68.  Plaintiffs repeat and incorporate herein Paragraphs 1-67 above.

69.  At all times relevant hereto, each Defendant was and/or will be required pursuant to NYLL § 198(3) and New York contract law to compensate PCAs/HHAs employed by it/him for each hour of work performed by each home care worker at the applicable agreed-upon contractual wage rate(s).

70.  Each PCA/HHA and each Defendant employing her/him agreed and/or will agree that said Defendant would and/or will compensate said home care worker for all work performed by him/her at the agreed-upon hourly rate(s).  Nevertheless, each Defendant regularly failed and/or will fail to compensate each such home care worker for the work performed by him/her at the agreed-upon rate(s).  In particular, Defendants failed and/or will fail to compensate PCAs/HHAs for (a) travel between clients' respective residences in a workday, (b) time waiting at a second client's residence until the scheduled start of the shift at that residence, (c) work performed at a client's residence after the conclusion of a scheduled shift at that residence, (d) laundering uniforms or parts thereof and/or (e) attendance at mandatory training sessions.  Each PCA/HHA suffered and/or will suffer monetary injury as a consequence.

71.  Defendants thereby violated and/or will violate § 198(3) and New York contract law.

## SIXTH CAUSE OF ACTION:  FAILURE TO PROVIDE REQUIRED NOTICE
### (New York Labor Law § 195(1))

72.  Plaintiffs repeat and incorporate herein Paragraphs 1-71 above.

73.  Pursuant to NYLL §§ 195(1)(a) and 198(1-b), Defendants were and/or will be required to provide to each PCA/HHA employed by them at the time of hiring or within ten (10) business days of the employee's first day or employment, a written notice in English and in the employee's primary language containing the following information:  the rate(s) of pay and the basis(es) thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer, the name of the employer; any "doing business as" name(s) used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the employer's telephone number; such other information as the Commissioner of Labor of the State of New York deems material and necessary; and, where an employer is not exempt from overtime compensation as established in the Commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the regular hourly rate and overtime rate of pay.

74.  Also pursuant to NYLL § 195(1)(a), whenever a Defendant was and/or will be required to provide to an employee such notice as is described in Paragraph 73, the Defendant was and/or will be required to obtain from the employee a signed and dated written acknowledgement, in English and in the employee's primary language, of his/her receipt of such notice.

75.  Nevertheless, on information and belief,

(a)  when CCC Defendants hired and/or will hire Named Plaintiffs and other PCAs/HHAs employed by them, said Defendants failed and/or will fail to provide any Named Plaintiff or any other home care worker, within ten (10) business days of the first day of that

PCA's/HHA's employment, with a written notice containing the information described in Paragraph 73, nor did and/or will said Defendants obtain a signed and dated written acknowledgement from that home care worker of his/her receipt of such a notice; and

(b)   when IHR Defendants hired and/or will hire any Named Plaintiffs and other PCAs/HHAs employed by them, whether in IHR's name or in the name of Interim Healthcare of Western New York, said Defendants failed and/or will fail to provide any such Named Plaintiff or any other home care worker, within ten (10) business days of the first day of that PCA's/HHA's employment, with a written notice containing the information described in Paragraph 73, nor did and/or will said Defendants obtain a signed and dated written acknowledgement from that home care worker of his/her receipt of such notice.

76.  By failing to provide each Named Plaintiff and each other such PCA/HHA employed by them, within ten (10) business days of the first day of his/her employment, with a written notice containing the information described in Paragraph 73 and by failing to obtain from each such employee a signed and dated written acknowledgement of his/her receipt of such notice, Defendants violated  and/or will violate § 195(1)(a).

**SEVENTH CAUSE OF ACTION:  FAILURE TO FURNISH REQUIRED WAGE STATEMENT (N.Y. Labor Law § 195(3) AND 12 NYCRR § 142-2.7)**

77.  Plaintiffs repeat and incorporate herein Paragraphs 1-76 above.

78.  Pursuant to NYLL § 195(3) and 12 NYCRR § 142-2.7, Defendants were and/or will be required to furnish to each PCA and HHA employed by them a wage statement, with every payment of wages, listing the following:  the dates of work covered by that payment; name of employee; name of employer; address and phone number of employer; hours worked; rate(s) of pay and basis(es) thereof; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

79.  § 195(3) also provides that for all employees not exempt from the right under New York law to receive overtime compensation, each such wage statement shall also include the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked.

80.  Each Named Plaintiff and each other PCA/HHA employed by one or more Defendants was not and/or will not be exempt from the right under New York law to receive overtime compensation.  Nevertheless, on information and belief:

(a)  the CCC Defendants failed and/or will fail to furnish to each Named Plaintiff and each other PCA/HHA employed by them the aforesaid statement with the information set forth in Paragraphs 78-79 above, together with each payment of wages to each such person; and

(b)  the IHR Defendants likewise failed to furnish to each Named Plaintiff and each other PCA/HHA employed by them the aforesaid statement with the information set forth in Paragraphs 78-79 above, with each payment of wages to each such person.

81.  In failing to furnish such a statement with each payment of wages, Defendants violated and/or will violate § 195(3).

## EIGHTH CAUSE OF ACTION:  UNIFORM MAINTENANCE PAY
## (12 NYCRR § 142-2.5(c))

82.  Plaintiffs repeat and incorporate herein Paragraphs 1-81 above.

83.  At all times relevant hereto, each Defendant employed and/or will employ eleven or more employees.  At all times relevant hereto, each Defendant required and/or will require each Named Plaintiff and every other PCA/HHA employed by said Defendant to wear a clean uniform.  However, none of the Defendants laundered and/or will launder or otherwise maintained and/or will maintain home care workers' uniforms.  Accordingly, such employees were and/or will be effectively required to launder their uniforms and to use their own time to do

so.  None of the Defendants provided and/or will provide machines or facilities that such

employees may use to launder said uniforms.  Thus, Defendants effectively required and/or will

require such home care workers to expend their own monies on laundering their uniforms.

84.  In these circumstances, pursuant to 12 NYCRR § 142-2.5(c), Defendants were and/or

will be required to pay weekly to each such PCA/HHA so-called uniform maintenance pay for

that home care worker's laundering of his/her uniform in addition to the minimum wage

prescribed in 12 NYCRR § 142-2.1, in the applicable amount according to § 142-2.5(c)(1)-(3).

85.  Defendants did not make and/or will not make any such uniform maintenance

payments to Named Plaintiffs or other PCAs/HHAs employed by one or more of them.

86.  Defendants thereby violated and/or will violate § 142-2.5(c).

### NINTH CAUSE OF ACTION:  UNLAWFUL PAYMENTS/DEDUCTIONS
#### (New York Labor Law § 193; 12 NYCRR § 142-2.5(c))

87.  Plaintiffs repeat and incorporate herein Paragraphs 1-86 above.

88.  Pursuant to NYLL 193, a Defendant may not make any deduction from the wages of

a Named Plaintiff or other PCA/HHA employed by that Defendant, except if such deduction (a)

is made in accordance with the provisions of a law or a rule or regulation issued by a

governmental agency or (b) is expressly and voluntarily authorized in writing by such employee,

is for the benefit of that employee and is made for a purpose authorized by § 193.  NYLL § 193

further prohibits any Defendant from making any charge against the wages of a Named Plaintiff

or other home care worker employed by it/him or from requiring any such employee to make any

payment by separate transaction unless the charge or payment would be permitted as a deduction

from wages under § 193.  Pursuant to 12 NYCRR § 142-2.5(c), where a Defendant requires a

home care worker to purchase a uniform, the Defendant is required to reimburse the home care

worker for the cost of the purchase thereof and to do so not later than the date of the next payment of wages.

89.   Defendants required and/or will require Named Plaintiffs and other PCAs/HHAs employed by them to make payments for, *inter alia*, the costs of travel in a workday between clients' respective residences and the costs associated with laundering their uniforms.  Such compelled expenditures were not and/or will not be made in accordance with a law, rule or regulation, were not and/or will not be voluntary, expressly authorized in writing by the home care worker, for the benefit of that employee nor made for a purpose authorized by § 193 and, therefore, were not and/or will not be permitted as a deduction from wages.

90.   Defendants also either made and/or will make deductions from such PCAs'/HHAs' wages for the purchase of uniforms employees are required to wear or else required and/or will require such employees to purchase those uniforms directly without reimbursement.

91.   The foregoing deductions were and/or will be made, or the foregoing expenditures by PCAs/HHAs were and/or will be compelled, by Defendants in violation of § 193 and/or § 142-2.5(c).

**TENTH CAUSE OF ACTION: SPREADS OF HOURS
(12 NYCRR § 142-2.4)**

92.   Plaintiffs repeat and incorporate herein Paragraphs 1-91 above.

93.   Pursuant to 12 NYCRR §142-2.4(a), each Defendant must pay each Named Plaintiff and every other PCA/HHA employed by it/him one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by 12 NYCRR § 142-2.1, for any day in which the spread of hours for that employee exceeds ten (10) hours within the meaning of 12 NYCRR § 142-2.18.

94.   The spread of hours for each Named Plaintiff and for many other PCAs/HHAs employed by one or more Defendants exceeded and/or will exceed ten (10) hours on one or more workdays.  This most commonly occurred and/or will occur when the employee is assigned to work shifts for at least two clients on the same workday.

95.   No Defendant paid and/or will pay a Named Plaintiff or other PCA/HHA employed by it/him one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by § 142-2.1, for any day in which the spread of hours for that employee exceeded or will exceed ten (10) hours.

96.   In failing to make such payments, each Defendant has violated and/or will violate § 142-2.4.

### ELEVENTH CAUSE OF ACTION: SPLIT SHIFT
### (12 NYCRR § 142-2.4)

97.   Plaintiffs repeat and incorporate herein Paragraphs 1-96 above.

98.   Pursuant to 12 NYCRR § 142-2.4(b), each Defendant must pay each Named Plaintiff and every other PCA/HHA employed by it/him one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by § 142-2.1, for any day in which such an employee is subjected to a split shift within the meaning of 12 NYCRR § 142-2.17.

99.   On numerous workdays, each Named Plaintiff and many other PCAs/HHAs employed by one or more Defendants was and/or will be assigned to work a shift at one client's residence and, then, a separate, non-consecutive shift at a second client's residence.  Each such employee was and/or will be required to travel between the two residences on each day when so assigned and often, after arriving at the second client's residence, was and/or will be required to wait a period of time before entering the residence and beginning to provide services for the second client.  If, contrary to the allegations above, any of the activity(ies) of the employee

between the completion of the assignment at the first client's residence and the commencement of the assignment at the second client's residence was not and/or will not be compensable work, the employee was and/or will be subjected to a split shift.

100.  No Defendant paid and/or will pay a Named Plaintiff or other PCA/HHA employed by it/him one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by § 142-2.1, for any day on which such employee was and/or will be required to work such a split shift.

101.  In failing to make any such payments, each Defendant violated and/or will violate § 142-2.4 if, contrary to the allegations above, any of the activity(ies) of a home care worker after completion of his/her first assignment and prior to commencement of his/her second assignment was not and/or will not be compensable work.

102.  The violations of law by CCC Defendants described in Paragraphs 1-101 are continuing.

## **RELIEF**

WHEREFORE each Named Plaintiff requests the following relief on her/his own behalf and on behalf of each other PCA/HHA employed by one or more Defendants:

A.  Damages in the amount of the overtime compensation owed and/or that will be owed to each such employee;

B.  Damages for the failures to compensate each such employee at not less than the applicable minimum wage rates for work (s)he performed and/or will perform;

C.  Damages for the failures to compensate each such employee at the applicable agreed-upon contractual rate(s) for work (s)he performed and/or will perform;

D.  Damages for each workday following the first ten (10) business days each such employee was and/or will be employed on which Defendants or any of them failed and/or will fail to provide the written notice required by NYLL § 195(1)(a);

E.  Damages for each workday on which Defendants or any of them failed and/or will fail to furnish a wage statement as required by NYLL § 195(3);

F.  Uniform maintenance pay pursuant to 12 NYCRR § 142-2.5(c) based upon the weeks when each such employee worked and/or will work, the number of hours worked in each such week and the location within the State of New York where the work was and/or will be performed;

G.  Compensatory damages in the amount of each deduction made and/or that will be made from each employee's wages and each expenditure each such employee was and/or will be required to make in connection with her/his employment;

H.  One hour's pay at the applicable basic minimum wage rate for each day each such employee's spread of hours exceeded and/or will exceed ten (10) hours;

I.  One hour's pay at the applicable basic minimum wage rate for each day each such employee was and/or will be subjected to a split shift;

J.  Liquidated damages pursuant to 29 U.S.C. § 260 and/or NYLL § 198(1-a) or § 663(1);

K.  Declaratory and injunctive relief pursuant to NYLL § 198(1-b) for violations of NYLL § 195(1) and pursuant to NYLL § 198(1-d) for violations of NYLL § 195(3);

L.  Prejudgment interest, costs and reasonable attorney's fees; and

M.  Such other and further relief that the Court deems necessary or appropriate.

Dated:      October 22, 2019
            Buffalo, New York

                                    Yours, etc.,


                                    CREIGHTON, JOHNSEN & GIROUX
                                        Attorneys for Plaintiffs


                                    By:  /s/ Ian Hayes
                                        Ian Hayes
                                        1103 Delaware Avenue
                                        Buffalo, New York 14209
                                        716-854-0007
                                        ihayes@cpjglaborlaw.com
                                        cmorrison@cpjglaborlaw.com


                                    GLADSTEIN, REIF & MEGINNISS LLP

                                    /s/ James Reif
                                        James Reif
                                        817 Broadway, 6th Floor
                                        New York, New York 10003
                                        212-228-7727
                                        jreif@grmny.com