UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ORETHA BEH, RUBY CASON, BRIANA
KINCANNON and KIMBERLY BALKUM,
individually and on behalf of all persons
similarly situated,

                Plaintiffs,

      -versus-                    No. 1:19-CV-01417 LJV

COMMUNITY CARE COMPANIONS INC.,
ALEXANDER J. CARO, MARK GATIEN,
INTERIM HEALTHCARE OF ROCHESTER,
INC., and JAMES WATSON,

                Defendants.
-------------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO DISTRIBUTE NOTICE TO POTENTIAL "OPT-INS" AND FOR RELATED RELIEF

James Reif (*pro hac vice*)
GLADSTEIN, REIF & MEGINNISS, LLP
817 Broadway, 6th Floor
New York, New York 10003
212-228-7727
jreif@grmny.com

Ian Hayes
Creighton, Johnsen & Giroux
1103 Delaware Avenue
Buffalo, New York 14209
716-854-0007
ihayes@cpjglaborlaw.com

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................3

    I.   THIS COURT SHOULD AUTHORIZE PLAINTIFFS' DISTRIBUTION OF
        A COURT-ORDERED NOTICE OF THE FLSA CLAIMS IN THIS ACTION
        AND OF THE RIGHT TO OPT IN ON SUCH CLAIMS, TOGETHER WITH
        A CONSENT-TO-BECOME-PARTY-PLAINTIFF FORM, TO WORKERS
        WHO ARE AND/OR WERE EMPLOYED BY COMMUNITY CARE
        COMPANIONS AND WHO ARE POTENTIAL "OPT-INS" ..........................................3

    II.  THE CCC DEFENDANTS SHOULD BE ORDERED TO PRODUCE IN
        ELECTRONIC AND PAPER FORM, WITHIN 10 DAYS OF THE COURT'S
        ORDER OF PRODUCTION, THE NAMES, LAST KNOWN STREET AND
        EMAIL ADDRESSES, TELEPHONE NUMBERS AND DATES OF
        EMPLOYMENT OF ALL HOME CARE WORKERS EMPLOYED BY CCC
        IN NEW YORK ON ANY DATE(S) ON OR AFTER OCTOBER 22, 2016
        AND TO POST THE NOTICE AND CONSENT FORM CONSPICUOUSLY
        AT EACH OFFICE WHERE SUCH WORKERS DELIVER THEIR TIME
        RECORDS AND/OR RECEIVE WAGE PAYMENTS ......................................................9

    III. THE COURT SHOULD APPROVE THE FORM OF NOTICE PROPOSED
        BY PLAINTIFFS...........................................................................................................11

    IV. THE COURT SHOULD AFFORD EACH POTENTIAL OPT-IN AT LEAST
        75 DAYS FOLLOWING THE DATE OF PLAINTIFFS' DISTRIBUTION TO
        HIM/HER OF THE NOTICE AND CONSENT FORM IN WHICH TO SIGN
        SAID FORM AND CAUSE IT TO BE FILED WITH THIS COURT............................16

CONCLUSION.....................................................................................................................17

CASES:

*Acevedo v. WorkFit Medical LLC*, No. 14-CV-06221 EAW, 2014 WL 4659366
(W.D.N.Y. Sept. 17, 2014) ......................................................................... *passim*

*Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335
(2d Cir. 1979)......................................................................................................4

*Cardenas v. A.J. Piedmonte Agricultural Development, LLC*,
No. 18-CV-881 EAW-MJR, 2018 WL 6177271 (W.D.N.Y. Nov. 26, 2018) .........8, 10, 11, 17

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) .......................................2 n. 2

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996)...........................................5

*Heitzenrater v. Officemax, Inc.*, No. 12-CV-9008, 2014 WL 448502
(W.D.N.Y. Feb. 4, 2014) ..............................................................6, 9, 10, 11

*Hens v. ClientLogic Operating Corp.*, No. 05-CV-3818, 2006 WL 2795620
(W.D.N.Y. Sept. 26, 2006) ........................................................................5, 6

*Hinckley v. Seagate Hospitality Group, LLC*, No. 16-CV-6118 CJS,
2016 WL 6524314 (W.D.N.Y. Nov. 3, 2016) .............................................8, 10, 17

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ..........................................6

*Hoffmann-LaRoche v. Sperling*, 493 U.S. 165 (1989)............................................ *passim*

*Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995) .......................................5

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)................................................4, 5

*Robbins v. Blazon Wings, Inc.*, No. 15-CV-6340 CJS, 2016 WL 1068201
(W.D.N.Y. Mar. 18, 2016)...................................................................................6

*Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334 (W.D.N.Y. 2008) ......................5, 10, 17

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) .............................5, 6, 11

*Sherrill v. Sutherland Global Services, Inc.*, 487 F. Supp.2d 344 (W.D.N.Y. 2007)........10, 11, 17

*Tornatore v. GCI Communications, Inc.*, No. 14-CV-6049 CJS,
2014 WL 1404934 (W.D.N.Y. Apr. 10, 2014) ............................................................11

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp.2d 445 (S.D.N.Y. 2011) ..................... 8-9

*Winfield v. Citibank, N.A.*, 843 F. Supp.2d 397 (S.D.N.Y. 2012) ...................................................8


STATUTES:

Fair Labor Standards Act, Act of June 25, 1938, c. 676:

Section 6, 29 U.S.C. § 206 ............................................................................................1, 7

Section 7, 29 U.S.C. § 207 ............................................................................................1, 7

Section 16(b), 29 U.S.C. § 216(b) ......................................................................1, 3, 12, 14

New York Labor Law § 652 .................................................................................................1

Portal-to-Portal Act, Act of May 14, 1947, c. 52:

Section 6, 29 U.S.C. § 255 ...................................................................................................8

Section 7, 29 U.S.C. § 256 ............................................................................................5 n. 3

Section 7(b), 29 U.S.C. § 256(b) ................................................................................2 and n. 2

Section 8, 29 U.S.C. § 257 ............................................................................................5 n. 3


RULES & REGULATIONS:

Federal Rules of Civil Procedure:

Rule 16(c)(10) ......................................................................................................................3

Rule 23 ..........................................................................................................................2 n. 2

Rule 83 ...................................................................................................................................3

New York Code, Rules & Regulations, Vol.12, § 142-2.2 .....................................................1

## INTRODUCTION

This is an action by home care workers against Community Care Companions, Inc. ("CCC") and Interim Healthcare of Rochester, Inc. d/b/a Interim Healthcare of Western New York ("Interim") and related individuals to redress violations of the workers' rights under the minimum wage and overtime compensation guarantees set forth in Sections 6 and 7 of the Fair Labor Standards Act of 1938 ("FLSA"), Act of June 25, 1938, c. 676, §§ 6 and 7, 52 Stat. 1060, codified at 29 U.S.C. §§ 206 and 207, the minimum wage and overtime compensation guarantees in New York Labor Law ("NYLL") § 652 and 12 NYCRR § 142-2.2 and guarantees under other provisions of the NYLL and regulations promulgated thereunder.

The named Plaintiffs assert claims on their own behalf and on behalf of other home care workers. Their ability to assert FLSA claims on behalf of others is governed by FLSA Section 16(b), 29 U.S.C. § 216(b), which provides in relevant part that an action to recover monetary relief to redress violations of §§ 206 and/or 207

> may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

To facilitate this FLSA opt-in procedure, Plaintiffs now move for entry of an order (a) authorizing them to distribute a court-approved notice of the FLSA claims in this action and of the legal right to opt in on such claims, together with a consent-to-become-party-plaintiff form, to all persons who are and/or were employed by CCC in the State of New York on and/or after October 22, 2016 who provide(d) home care services to clients of CCC at the clients' respective places of residence, (b) directing defendants CCC, Caro and Gatien (collectively "CCC

Defendants") (i) to provide to Plaintiffs, within ten (10) days of the date of this Court's order, the names, last known street and email addresses, telephone numbers and dates of employment of the foregoing CCC employees and (ii) to post the court-approved notice and the consent-to-become-party-plaintiff form conspicuously at each office where one or more home care workers currently employed by CCC delivers time records or picks up wage payments, (c) approving the form of notice attached as Exhibit B to the Declaration of James Reif ("Reif Decl.") submitted herewith, and (d) affording potential opt-ins at least seventy-five (75) days from the date the court-approved notice and consent form are distributed to them to sign a consent form and cause it to be filed with this Court.[1]

Plaintiffs sought to obviate the need for the instant motion by requesting that the CCC Defendants consent to distribution of the aforesaid notice, together with a consent form, to those persons employed by CCC as home care workers in New York since on or before October 22, 2016. However, Defendants refused to consent. *See* Reif Decl., para. 3. The statute of limitations applicable to FLSA claims of each potential opt-in continues to run unless and until that worker signs a consent form and it is filed with the court. *See* Portal-to-Portal Act ("PPA"), Act of May 14, 1947, c.52, 29 U.S.C. § 256(b).[2] Thus, by refusing to consent to written notification of potential opt-ins, the CCC Defendants are delaying CCC home care workers' receipt of such information and their potential resultant opting in, thereby threatening the timeliness of their FLSA claims. For this reason, Plaintiffs respectfully request that this Court

---

[1]     This motion is not directed to Interim or its owner-operator Watson (collectively "Interim Defendants") because the latter have not as yet appeared in this action.

[2]     This rule under § 256(b) applicable to an opt-in's FLSA claims contrasts with the tolling rule that governs an absent class member's claim under Fed. R. Civ. P. 23. *Compare Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).  The latter governs the claims herein of absent class members under the NYLL.

determine their motion as soon as is reasonably possible consistent with its docket. *See* Plaintiffs' Motion For Expedited Consideration And Determination Of Motion For Notification filed contemporaneously herewith. Plaintiffs also request that the Court order prompt production to Plaintiffs' counsel of contact information for potential opt-ins in order that the latter may learn of the pendency of this action and of their opportunity to opt in as soon as possible, so that their potential loss of FLSA claims arising from the running of the statute of limitations will be minimized. Finally, Plaintiffs request that the Court approve their proposed notice and afford the recipients thereof seventy-five (75) days from the first date of its distribution to sign the consent form and cause it to be filed with this Court.

## ARGUMENT

**I. THIS COURT SHOULD AUTHORIZE PLAINTIFFS' DISTRIBUTION OF A COURT-APPROVED NOTICE OF THE FLSA CLAIMS IN THIS ACTION AND OF THE RIGHT TO OPT IN ON SUCH CLAIMS, TOGETHER WITH A CONSENT-TO-BECOME-PARTY-PLAINTIFF FORM, TO WORKERS WHO ARE AND/OR WERE EMPLOYED BY COMMUNITY CARE COMPANIONS AND WHO ARE POTENTIAL "OPT-INS."**

In *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989), relying upon § 216(b) and Fed. R. Civ. P. 16(c)(10) and 83, the Supreme Court held that district courts may in appropriate FLSA cases implement § 216(b) by facilitating notice to potential opt-in plaintiffs, that is, to persons who may exercise their right under § 216(b) to consent in writing to become party plaintiffs. The Court noted Congress has expressly stated its policy that FLSA claimants "should have the right to proceed collectively," that a collective action under § 216(b) affords wage and hour claimants "the advantage of lower individual costs to vindicate rights by the pooling of resources," and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity."

*Id*. at 170. But the Court pointed out: "Those benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. The receipt of such notice is generally dependent upon distribution of such a notice by the plaintiffs.

Even prior to the Supreme Court's opinion in *Hoffmann-LaRoche*, the Second Circuit held that

> a district court has the power to order that notice be given to other potential members of the plaintiff class under the "opt-in" provision of the Fair Labor Standards Act dealing with actions for nonpayment of statutorily required minimum wages and overtime compensation…. [T]his holding comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits.

*Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 335-336 (2d Cir. 1979).

In *Myers v. Hertz Corp.*, 624 F.3d 537, 554-555 (2d Cir. 2010), the Court of Appeals observed that district courts within the Second Circuit had "coalesced" around a two-stage approach that distinguishes, temporally and substantively, a determination whether to grant leave to plaintiffs to distribute to potential opt-ins a court-approved notice of pending FLSA claims from a determination whether to grant leave to maintain a collective action. Finding it "sensible," the Court approved this two-stage approach. A motion for leave to distribute the notice should be determined at an FLSA case's "initial" stage. Notice should be authorized so long as there are other employees who "may" be similarly situated to named plaintiffs. The latter are entitled to distribute the notice based upon a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" While a court should not authorize a notice based only on "unsupported" assertions, nevertheless "it should remain a low standard of proof." *Id*. at 555. "At the second stage," after

4

"a fuller record" is available because discovery has been conducted by then, the court should "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.*[3] At this later stage, named plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

This approach is firmly-established in this District. *See Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp.2d 334, 336 (W.D.N.Y. 2008) ("Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA."). At the first stage, prior to discovery, when plaintiffs are only seeking leave to send a notice to prospective opt-in plaintiffs, "the evidentiary standard is lenient." *Id.* A plaintiff need only make "a modest factual showing sufficient to demonstrate that [(s)he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005). "[N]othing more than substantial *allegations* that the putative class members were together the victims of a single decision, policy or plan" is required. *Rubery*, 569 F. Supp.2d at 336 (emphasis added), quoting *Scholtisek*, 229 F.R.D. at 387, quoting *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). This first-stage determination is "based on the pleadings, affidavits and declarations." *Hens v. ClientLogic Operating Corp.*, No. 05-CV-3818, 2006 WL 2795620, at * 3 (W.D.N.Y. Sept. 26, 2006). In other words, at the initial stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Acevedo v. WorkFit Medical LLC*, No. 14-CV-

---

[3] The term "collective action" is taken from 29 U.S.C. §§ 256 and 257 (enacted in 1947 as part of the Portal-to-Portal Act, Act of May 14, 1947, c. 52 §§ 7 and 8, 61 Stat. 88, amending the FLSA).

06221 EAW, 2014 WL 4659366, at * 2 (W.D.N.Y. Sept. 17, 2014 (quotation omitted); *Robbins v. Blazon Wings, Inc.*, No. 15-CV-6340 CJS, 2016 WL 1068201, at * 6 (W.D.N.Y. Mar. 18, 2016). "[C]ourts in this Circuit regularly refuse to rely on [opposing] declarations when plaintiffs have not yet had an opportunity to depose the declarants." *Heitzenrater v. Officemax, Inc.*, No. 12-CV-9008, 2014 WL 448502, at * 4 (W.D.N.Y. Feb. 4, 2014). "[B]alancing of the competing affidavits would require credibility determinations and the resolution of legal contentions, and such conclusions are inappropriate at this stage of the proceeding." *Id.*

In this regard, it should be borne in mind that the determination to send a notice to potential opt-ins "is merely a preliminary one," *Acevedo*, 2014 WL 4659366, at * 4 (quotation omitted); *accord*: *Hoffman v. Sbarro Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.). It is in the second stage, which occurs after discovery, that "the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Hens*, 2006 WL 2795620, at * 4. Thus, if discovery discloses that a person who received a notice is not similarly situated to a named plaintiff, the FLSA collective can be defined accordingly at that second step. *Acevedo*, 2014 WL 4659366, at * 10; *Scholtisek*, 229 F.R.D. at 390. As then-District Judge Sonia Sotomayor observed: "Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at [the initial] stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in [an FLSA] case." *Hoffman*, 982 F. Supp. at 262.

The declarations submitted in support of Plaintiffs' motion for notification show that CCC's home care workers regularly perform(ed) the following activities for that company's benefit and at its direction:  travel between the separate residences of the company's clients to

6

whom a home care worker is/was assigned to care for in the same workday;[4] cleaning uniforms the CCC Defendants require(d) such workers to wear while at work and to clean; and participation in mandatory training sessions. *See* respective Declarations of Ian Hayes, Briana Kincannon and Avis Brown. Were such activities treated as compensable work, the time worked per workweek would frequently exceed forty (40) hours. However, the submitted declarations show that pursuant to a common policy and practice, the CCC Defendants fail(ed) to compensate their home care workers for performance of the foregoing activities, that is, they fail(ed) to treat any of the foregoing activities as work compensable under the FLSA. Thus, pursuant to said Defendants' common policy and practice, they do not/did not include time expended on performance of such activities when determining whether home care workers work(ed) in excess of forty hours in a workweek. As a result, the CCC Defendants fail(ed) to compensate those workers at 1.5 times their regular rates of pay for each hour worked in excess of forty hours and violate(d) such workers' § 207 rights to overtime compensation. Said failures by CCC to compensate home care workers at all for such activities also results/resulted in CCC's violations of its obligation to compensate those workers for each hour worked at no less than the minimum wage rate mandated by § 206.

The foregoing demonstrates that the Named Plaintiffs have made the "modest showing" that entitles them to notify in writing the potential opt-ins of the pendency of their FLSA claims and the opportunity those persons have to opt in on the FLSA claims. Accordingly, the Court should authorize Plaintiffs to distribute such a notice, together with a consent form, to all home care workers employed by the CCC Defendants or any of them within

---

[4]    In other words, after concluding the provision of care for one client at his/her place of residence, a worker is/was required to travel to the residence of another client whereupon (s)he provides/provided care for that client as well.

the State of New York on any date(s) on or after October 22, 2016. The foregoing date is three

years prior to the October 22, 2019 commencement of this action, and that three-year period

corresponds to the period of Defendants' potential liability under the statute of limitations

applicable to willful violations of Plaintiffs' FLSA rights. *See* 29 U.S.C. § 255(a), and

Complaint, paras. 52 and 62 (alleging that Defendants' violations of home care workers' rights

under the FLSA are/were willful).

Numerous courts in this District handling actions that include FLSA claims have

authorized plaintiffs to distribute a written notification to all employees allegedly subject to the

employer policy or practice complained of who are/were employed by the defendant(s) on or

after the date that is three years prior to commencement of such an action. *E.g.*, *Cardenas v. A.J.*

*Piedimonte Agricultural Development, LLC*, No. 18-CV-881 EAW-MJR, 2018 WL 6177271, at

\*6 (W.D.N.Y. Nov. 26, 2018); *Hinckley v. Seagate Hospitality Group, LLC*, No. 16-CV-6118

CJS, 2016 WL 6524314, at \* 16 (W.D.N.Y. Nov. 3, 2016) (describing this as "a routine practice

within this Circuit"). Moreover, courts have affirmatively rejected the contention that

notification should only be given to those persons employed within three years of the date of the

order authorizing notification or of the sending of the notice.

> [B]ecause the three-year statute of limitations period for willful
> FLSA violations runs for each individual plaintiff until that
> plaintiff consents to join the action, notice should generally be
> directed to those employed within three years of the date of the
> mailing of the notice. However, because equitable tolling issues
> often arise for prospective plaintiffs, courts frequently permit
> notice to be keyed to the three-year period prior to the filing of the
> complaint, with the understanding that challenges to the timeliness
> of individual plaintiffs' actions will be entertained at a later date.'

*Acevedo*, 2014 WL 4659366, at \* 10, quoting *Winfield v. Citibank, N.A.*, 843 F. Supp.2d 397,

410 (S.D.N.Y. 2012) (citations and quotations omitted) (collecting cases); *see also Whitehorn v.*

*Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("Plaintiffs allege that equitable tolling may extend the statute of limitations for certain prospective plaintiffs. Therefore, it is appropriate for notice to be sent to the larger class of prospective members…").

As the *Acevedo* court concluded:

> Considerations of judicial economy and fairness support permitting notice to individuals who may have a colorable argument that the statute of limitations should be equitably tolled. *See, e.g. Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) (equitable tolling of FLSA claims may be available where employees were unaware of their claims and employer failed to apprise them of their rights). The merits of the employees' claims can be reserved for a later date. *See Whitehorn*, 767 F. Supp. 2d at 451.

2014 WL 4659366, at * 10.

In sum, the CCC Defendants should be required to produce at this initial stage contact information for all home care workers employed by that company in New York on and/or after October 22, 2016.

## II. THE CCC DEFENDANTS SHOULD BE ORDERED TO PRODUCE IN ELECTRONIC AND PAPER FORM, WITHIN 10 DAYS OF THE COURT'S ORDER OF PRODUCTION, THE NAMES, LAST KNOWN STREET AND EMAIL ADDRESSES, TELEPHONE NUMBERS AND DATES OF EMPLOYMENT OF ALL HOME CARE WORKERS EMPLOYED BY CCC IN NEW YORK ON ANY DATE(S) ON OR AFTER OCTOBER 22, 2016 AND TO POST THE NOTICE AND CONSENT FORM CONSPICUOUSLY AT EACH OFFICE WHERE SUCH WORKERS DELIVER THEIR TIME RECORDS AND/OR RECEIVE WAGE PAYMENTS.

Plaintiffs request that the contact information described above be produced by Defendants in electronic and paper form. *See Heitzenrater*, 2014 WL 448502, at * 5-* 6; *Acevedo*, 2014 WL 4659366, at * 11-* 12, * 16.

As the persons who should receive written notification of this action include all those employed by CCC as home care workers within the State of New York on or after October 22, 2016, *see* Point I above, the CCC Defendants should be directed to produce contact information for all such persons. *Hoffmann-LaRoche*, 493 U.S. at 170 (district court "was correct" to permit production of contact information for all potential opt-ins).

Courts within this District regularly direct employers that are defending FLSA claims to provide for each person for whom each employer is providing contact information that person's last known street and email addresses, telephone number and dates of employment. *E.g.*, *Cardenas*, 2018 WL 6177271, at * 6; *Hinckley*, 2016 WL 6524314, at * 17; *Acevedo*, 2014 WL 4659366, at * 11-* 12; *Heitzenrater*, 2014 WL 448502, at * 5-* 6; *Sherrill v. Sutherland Global Services, Inc.*, 487 F. Supp.2d 344, 350 (W.D.N.Y. 2007). Email addresses and telephone numbers are particularly important where, as here, employee turnover is high and the persons to whom notification is to be provided are low-wage workers whose residences change frequently. *Id.* (production of telephone numbers "essential"); *see also Cardenas*, 2018 WL 6177271, at * 5.[5]

Courts in this District also regularly direct such employers defending potential collective actions to post the court-approved notice conspicuously at each employer facility visited by one or more persons to whom the notice is to be sent. *E.g.*, *id.* at * 5; *Hinckley*, 2016 WL 6524314, at * 16; *Rubery*, 569 F. Supp. 2d at 338. Such posting "is a routine practice in this Circuit," *Hinckley*, 2016 WL 6524314, at * 16, and is not "unduly burdensome." *Id.*; *Cardenas*, 2018 WL 6177271, at * 5; *Rubery*, 569 F. Supp. 2d at 338. Where, as here, there is some risk

---

[5]     Counsel have actually learned of specific persons within the proposed collective action definition who were and/or are homeless.

10

that distribution by first class mail and/or email may not lead to receipt of such notice by some home care workers, such posting will provide greater assurance that those persons will receive timely notice of the pendency here of the FLSA claims.

Plaintiffs request that the CCC Defendants be directed to furnish Plaintiffs' counsel with the foregoing contact information and to post the notice and consent form within ten (10) days of the date of this Court's Order requiring said production. Recognizing the problem of the continuing running of the statute of limitations for potential opt-ins on FLSA claims, numerous courts in this District have required prompt production by defendants to plaintiffs' counsel of contact information for potential opt-ins. *See Cardenas*, 2018 WL 6177271, at * 6 (within 10 days of order); *Acevedo*, 2014 WL 4659366, at * 12 (within 20 days of order); *Tornatore v. GCI Communications, Inc.*, No. 14-CV-6049 CJS, 2014 WL 1404934, at * 5 (W.D.N.Y. Apr. 10, 2014) (within 15 days of order); *Heitzenrater*, 2014 WL 448502, at * 7 (within 7 days of order approving notice); *Sherrill*, 487 F. Supp. 2d at 350 (within 14 days of order); *Scholtisek*, 229 F.R.D. at 395 (within 15 days of order). The shortest possible time frame for such production is warranted given the substantial need to distribute the notice as soon as possible in order to promptly counteract an unauthorized and misleading notice previously distributed by a law firm uninvolved in this case. *See* pages 12-15 below.

### III. THE COURT SHOULD APPROVE THE FORM OF NOTICE PROPOSED BY PLAINTIFFS.

In *Hoffmann-LaRoche*, the Supreme Court made clear that district courts have the authority to require prior judicial approval of a notice to be sent to potential opt-ins informing them of the pendency of FLSA claims and of the opportunity to participate on those claims by signing and having filed a consent-to-become-party-plaintiff form. *See* 493 U.S. at 171 (approving "court-authorized" notice). "By monitoring preparation" of a notice, a court can

ensure it is accurate and informative. *Id.* at 172. A district court's settling of disputes about the content of the notice "before it is distributed" benefits both the parties and the court. *Id.* Plaintiffs' proposed notice is attached to the Reif Decl. as Exhibit B.

Plaintiffs are impelled to bring to the Court's attention a recent development that we believe warrants curative action by the Court at least with respect to what information should be included in the notice.

Unfortunately, any notice to potential opt-ins concerning the FLSA claims in this case approved by this Court and distributed by Plaintiffs will not be the first written communication received by some, if not all, of those potential opt-ins concerning their participation in litigation involving FLSA claims against their employer(s) and their execution of such a consent form. This action was begun by the filing of the Complaint (Doc. #1) by the four named Plaintiffs on October 22, 2019. That pleading made clear that those Plaintiffs seek to maintain a collective action pursuant to 29 U.S.C. § 216(b). *See* Complaint, paras. 1, 36, 46-52, 57-62. However, on or after November 15, 2019, approximately 3 ½ weeks after Plaintiffs commenced this action, a law firm in Rochester, New York that neither has nor has had any involvement in the present action distributed by mail to home care workers in this District, including such workers employed by defendant CCC and/or defendant Interim, a three-page solicitation of such workers' consent to participate in potential FLSA overtime compensation litigation. Counsel for Plaintiffs here learned of that solicitation when Ruby Cason, one of the named Plaintiffs herein, received that solicitation in mid-November. Thereafter, Plaintiffs' counsel learned that other home care workers who were not named Plaintiffs had received this same solicitation.

The full written communication from the Rochester firm is attached to the Reif Decl. as Exhibit A. The facts concerning that solicitation discussed below are set forth in Reif Decl., paras. 4-10.

The solicitation by the Rochester firm begins with a one-page letter, the top of which bears its name, followed by a titling of the firm as "The Employment Attorneys." The letter is dated November 15, 2019 and, as received by Ms. Cason, is addressed "Dear Ruby Cason." The firm asserts that it obtained the names of the persons to whom it sent its solicitation "from publicly available information on the internet." The firm also asserts that it is investigating a "potential" lawsuit that would claim a failure of Ms. Cason's employer(s) to pay her proper wages (referring to a "potential" lawsuit for "unpaid wages"). The letter demonstrates that any such lawsuit will include a claim for overtime compensation: it notes that "home health aide employees are not often compensated at one and one-half times their regular hourly rate of pay for all hours worked in excess of forty hours in a workweek" and states that if the recipient was "not paid time and a half of your regular rate of pay for the hours worked over forty in a week," (s)he "may qualify to participate in … any potential class action." Thus the Rochester law firm's "potential" lawsuit would duplicate at least the overtime compensation claims asserted by Plaintiffs herein on their own behalves and on behalf of individuals similarly situated. *See* Complaint, paras. 1, 36, 46-52 and 53-56. The law firm's letter bears the signature of a partner in that firm who is a member of the bar of this Court. The correspondence makes clear that the firm's solicitation is not approved by any court ("THIS IS NOT A NOTICE FROM A COURT.").

The third page of the law firm's mailing is entitled "Consent To Become A Party Plaintiff." The firm seeks the recipient's consent to participate in "any Fair Labor Standards Act

action for unpaid wages and related relief against [the recipient's] employer(s) and any related entity or person, on behalf of [the recipient] and other former and current employees of the [the recipient's] employer(s)." The form's reference to "any related...person" encompasses the individuals named as defendants in the present action. *See* Complaint, paras. 7-8, 10. Notably, while the title of the third page follows the language of the opt-in provision of § 216(b), the consent form actually seeks each recipient's participation as a "*named or a representative plaintiff*" (emphasis added) and not solely as an opt-in plaintiff.

For several years through on or about October 13, 2017, Ms. Cason was employed as a home care worker by Interim. Continuing on the following date without interruption and through the present time, she was and has been employed as a home care worker by CCC. *See* Complaint, para. 12. Thus, the Rochester firm sent its solicitation to one or more persons who are and/or were employed by CCC and/or by Interim, the two companies who are defendants in this action. The law firm's solicitation of an unknown number of home care workers to participate in FLSA litigation, including home care workers employed by CCC and/or Interim, is not a solicitation to participate in an existing lawsuit. The firm's three-page correspondence does not cite to an existing action nor does it state that the firm is involved in an existing FLSA action on behalf of home care workers. To the contrary, the firm's letter repeatedly speaks only of a "potential" lawsuit and states: "There will be no cost to you to participate in a class action lawsuit *if we file one*." (Emphasis added).

By the foregoing correspondence, the Rochester firm has created a substantial likelihood, if not certainty, that recipients of a notice authorized by this Court who also received that firm's solicitation will be confused and perhaps misled by the combination of the two mailings. For example, recipients of a notice authorized by this Court may discard it without

14

careful reading because (a) they assume it is another version of the prior solicitation, (b) they assume it is another solicitation to be a named (representative) plaintiff but in a separate lawsuit where the recipient may not wish to be such a representative; or (c) they think that an affirmative response to the law firm's solicitation or a failure to respond to that solicitation precludes their signing the consent form for the instant case. Such confusing and misleading correspondence is precisely the sort of correspondence that the Supreme Court has emphasized district courts have "managerial responsibility" to address. *Hoffmann-LaRoche*, 493 U.S. at 170-171; *see also id.* at 171 (court authorized to "counter" "misleading communications").

To minimize, at least to the extent possible, the interference in the instant case with the statutory opt-in procedure wrought by the law firm's solicitation, Plaintiffs request that the Court approve inclusion of the following in bold type in any notice to be distributed to potential opt-ins in this action:

**PLEASE NOTE THE FOLLOWING:**

**Some of you previously may have received a solicitation on or about November 15, 2019 from a Rochester law firm that sought your consent to participate in an unspecified, potential lawsuit as a named (representative) plaintiff or as a plaintiff represented by other plaintiffs. If so, in order to help you decide whether to sign the enclosed form consenting to participate in the *Beh* lawsuit that is the subject of this Notice, it is important that you be aware of the following:**

**A. This Notice has been approved by the Hon. Lawrence J. Vilardo, United States District Judge, U.S. District Court for the Western District of New York. The solicitation by the Rochester law firm was not approved by any court.**

**B. This Notice and the enclosed consent form are for an actual lawsuit, specifically, the *Beh* case, which was filed on October 22, 2019 in the U.S. District Court for the Western District of New York and the caption for which appears at the beginning of this Notice. The mailing by the Rochester firm did not concern an existing lawsuit.**

**C. This Notice does not seek your consent to be a "named" plaintiff. This means that you will not have any responsibility to represent the interests of other home care workers who join this case by opting in and your name will not appear in the caption. If you consent to participate in this case, you will be what is called an "opt-in" plaintiff, and**

your interests will be represented by the named plaintiffs and the attorneys of record for those plaintiffs (unless you choose to retain your own legal counsel). The mailing from the Rochester firm seeks your consent to be a "named" plaintiff representing the interests of other home care workers.

**D.** Nothing you did or did not do in response to the solicitation from the Rochester firm affects your ability to participate in the *Beh* case. Whether you provided or did not provide that firm with any information or consent form, you are free to sign the Consent To Become Party Plaintiff form in the *Beh* case and to file or have it filed with the Court.

(*See* Reif Decl., paras. 10-11).

On an unrelated issue concerning the content of a notice, the Supreme Court has cautioned that a district court should avoid the appearance that it is endorsing (or disapproving) the merits of an action for which notification to potential opt-ins is being authorized. *See Hoffmann-LaRoche*, 493 U.S. at 174. With that in mind, immediately following a statement that the notice herein has been approved by this Court, the notice proposed by Plaintiffs states expressly in capitalized letters and bold print: **"THE COURT HAS TAKEN NO POSITION ON THE MERITS OF PLAINTIFFS' CLAIMS OR ANY DEFENDANT'S DEFENSES."** (Reif Decl., Exhibit B at 1). This statement is essentially identical to that approved by the district court in *Hoffmann-LaRoche*. *See id*. at 169. The proposed notice otherwise meets the objective that such a notice be "accurate and informative." *Id*. at 172. For those reasons, it should be approved.

    **IV. THE COURT SHOULD AFFORD EACH POTENTIAL OPT-IN AT LEAST 75 DAYS FOLLOWING THE DATE OF PLAINTIFFS' DISTRIBUTION TO HIM/HER OF THE NOTICE AND CONSENT FORM IN WHICH TO SIGN SAID FORM AND CAUSE IT TO BE FILED WITH THIS COURT.**

In *Hoffmann-LaRoche*, the Supreme Court specifically affirmed the district court's setting of a cutoff date for the filing of consent forms by potential opt-ins, noting that such a date serves to "expedite disposition of the action" and helps assure that a lawsuit subject

16

to the opt-in procedure will proceed "in diligent fashion." *Id.* Courts in this district have

established a variety of cutoff dates for the filing of consent forms by potential opt-ins. *See*

*Cardenas*, 2018 WL 6177271, at * 6 (6 months from date notice is first distributed); *Hinckley*,

2016 WL 6524314, at * 17 (60 days following sending of notice); *Rubery*, 569 F. Supp.2d at 339

(within 60 days of sending of notice); *Sherrill*, 487 F. Supp.2d at 351 and n. 5 (within 90 days of

order authorizing notice).  Assuming this Court authorizes distribution of a notice of the FLSA

claims and a consent form, Plaintiffs request that it afford potential opt-ins seventy-five (75)

days following the first date of such distribution to sign said form and cause it to be filed with

this Court.  Such a cutoff represents a fair balance between the interest of CCC home care

workers in having a meaningful opportunity to opt in and the interest in the FLSA claims

proceeding in diligent fashion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted and Plaintiffs

awarded the relief sought therein.  A proposed form of order is annexed to the Reif Decl. as

Exhibit C.

Dated:  December 20, 2019

Respectfully submitted,

James Reif

James Reif (*pro hac vice*)
GLADSTEIN, REIF & MEGINNISS, LLP
817 Broadway, 6th Floor
New York, New York 10003
212-228-7727
jreif@grmny.com

Ian Hayes

17

CREIGHTON, JOHNSEN & GIROUX
1103 Delaware Avenue
Buffalo, New York 14209
716-854-0007
ihayes@cpjglaborlaw.com

Attorneys for Plaintiffs