**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
ORETHA BEH, RUBY CASON, BRIANA
KINCANNON and KIMBERLY BALKUM,
individually and on behalf of all persons
similarly situated,

Plaintiffs,

-versus-

**COMMUNITY CARE COMPANIONS INC.,**
**ALEXANDER J. CARO, MARK GATIEN,**
**INTERIM HEALTHCARE OF ROCHESTER,**
**INC., and JAMES WATSON,**

Defendants,

----------------------------------------------------------------x

No. 19-CV-01417 LJV

JURY TRIAL DEMANDED

AMENDED COLLECTIVE
AND CLASS ACTION
COMPLAINT

ORETHA BEH, RUBY CASON, BRIANA KINCANNON and KIMBERLEY

BALKUM (hereinafter collectively "Named Plaintiffs"), by their attorneys, Creighton, Johnsen

& Giroux and Gladstein, Reif & Meginniss LLP, allege upon knowledge to themselves and upon

information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1. This action is brought by the Named Plaintiffs, on their own behalves and on behalf of

all persons similarly situated, to redress

(a) Defendants' failures to pay to Named Plaintiffs and to other Personal Care

Assistants ("PCAs") and/or Home Health Aides ("HHAs") (sometimes collectively "home care

workers") employed by one or more Defendants (i) contractual wages for work performed, (ii)

wages at not less than the applicable minimum wage rate(s) for work performed, (iii) wages at

not less than 1.5 times said employees' regular rate(s) of pay for work performed in each

workweek in excess of 40 hours, (iv) reimbursements for expenses incurred in traveling between

respective residences of two or more of Defendants' clients, for purchases of uniforms or parts thereof, and for expenses incurred in laundering said uniforms or parts thereof, (v) uniform maintenance payments for laundering/maintenance of uniforms or parts thereof, (vi) one hour's pay at the applicable minimum hourly wage rate for each workday in which the spread of hours for work performed exceeds ten (10) hours, and (vii) one hour's pay at the applicable minimum hourly wage rate for each day in which an employee is subjected to a split shift, if any;

(b) Defendants' causing Named Plaintiffs and other PCAs/HHAs employed by one or more of them to make payments by separate transactions that would not be permitted as deductions from wages;

(c) Defendants' failures to provide to each of the aforesaid persons, at the time of his/her hiring or within 10 business days of his/her first day of employment, a written notice of his/her rate(s) of pay and the basis thereof; each allowance, if any, claimed by Defendant(s); the regular pay day; the name of each employer and any "doing business as" name used by it/him; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number; and

(d) Defendants' failures to furnish to each of the aforesaid persons, with each payment of wages, a written statement listing the dates of each pay period corresponding to each such payment of wages; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked.

2.  Said failures by Defendants are and/or were violative of 29 U.S.C. § 207(a)(1) (failures to pay overtime compensation required by federal law), 12 NYCRR § 142-2.2 (failures

2

to pay overtime compensation required by state law), N.Y. Labor Law § 652(1) (failures to pay wages at the applicable state-mandated minimum wage rate(s)), NYLL § 198(3) and the New York law of contracts (failures to pay wages at agreed-upon rates), NYLL § 195(1) (failures to timely provide written notice of required information), NYLL § 195(3) (failures to furnish required wage statement together with each wage payment), NYLL § 193 (failures to reimburse employees for payments employer required employees to make by separate transactions), 12 NYCRR § 142-2.5(c) (failures to timely reimburse employees for purchase(s) of uniform(s) and failures to provide employees with maintenance pay for laundering/maintenance of uniforms), and 12 NYCRR § 142-2.4(b) (failures to compensate for spreads of hours exceeding ten (10) hours and/or for split shifts). Plaintiffs' claims for redress for Defendants' violations of federal law are made pursuant to Title 29 U.S.C. § 216(b). Their claims for redress for Defendants' violations of state law are made pursuant to Labor Law § 663 and § 198(1-a), (1-b) and (1-d).

## JURISDICTION and VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1332(d)(2) and 1337(a) and over their state claims pursuant to 28 U.S.C. § 1367. Plaintiffs' federal claims and their state claims arise from a common nucleus of operative facts.

4. The Western District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b).

## JURY TRIAL

5. Plaintiffs demand a trial by jury on any and all issues triable as of right by a jury.

**PARTIES**

**Defendants**

6. Defendant Community Care Companions, Inc. ("CCC") is a domestic business corporation organized and existing under the laws of the State of New York. Its principal place of business is located at 300 West Main Street, Smithtown, New York 11787. At least since October 13, 2017, CCC has owned and operated franchised home care businesses and employed individuals as PCAs or HHAs in those businesses.[1] As such, it provides and has provided home care services to individual clients. At all relevant times, CCC was and is engaged in commerce and operated and operates an enterprise engaged in commerce. It has several offices and employs and employed hundreds of home care workers in counties within the Western District of New York.

7. Defendant Alexander J. Caro is an individual residing at 132 Oakside Drive, Smithtown, New York 11787. On information and belief, at least since October 13, 2017, Caro has been the owner of CCC and has had operational control of said company. He has and has had substantial control over the wages, hours and working conditions as well as the hiring and discharge of individuals employed by CCC, including those employed as PCAs or HHAs. At least since October 13, 2017, pursuant to 29 U.S.C. § 203(d), Caro has employed the individuals employed by CCC as home care workers.

8. Defendant Mark Gatien is an individual residing at 18 Arthur Avenue, Patchogue, New York 11722. On information and belief, at least since October 13, 2017, Gatien has been the Chief Executive Officer of CCC and has had operational control of said company. He has

---

[1]     Unless otherwise noted, the term "PCA" includes, but is not limited to, each Named Plaintiff who works and/or worked as a PCA, and the term "HHA" includes, but is not limited to, each Named Plaintiff who works and/or worked as an HHA.

4

and has had substantial control over the wages, hours and working conditions as well as the hiring and discharge of individuals employed by CCC, including those employed as PCAs/HHAs. At least since October 13, 2017, pursuant to 29 U.S.C. § 203(d), Gatien has employed the individuals employed by CCC as home care workers.

9. Defendant Interim Healthcare of Rochester, Inc. ("Interim") is a domestic business organized and existing under the laws of the State of New York. It has places of business located at 1 South Washington Street, Suite 200, Rochester, New York 14614 and 360 Delaware Avenue, Suite 3 North, Buffalo, New York 14202. Said company does and/or did business in the name of Interim Healthcare of Western New York and in its own name. Interim owns and/or has owned and operated home care businesses and employed individuals as PCAs or HHAs in those businesses. As such, it provides and/or has provided home care services to individual clients. At all relevant times, Interim is and/or was engaged in commerce and operates and/or operated an enterprise in commerce. Among its home care businesses, through October 13, 2017, Interim operated one or more home care businesses franchised by Interim Healthcare, Inc. The latter company is and was a Florida corporation with its principal place of business located at 1601 Sawgrass Corporate Parkway Suite 220, Sunrise, Florida 33323. Interim employs and/or employed hundreds of individuals as PCAs or HHAs whose work for Interim is and/or was performed in counties within the Western District of New York.

10. Through October 13, 2017, Defendant James Watson was the sole shareholder and operator of Interim, whether doing business as Interim Healthcare of Western New York or in its own name. Watson possessed operational control over said company and, specifically, had substantial control over the wages, hours and working conditions as well as the hiring and discharge of PCAs/HHAs employed by Interim. Through October 13, 2017, pursuant to 29

U.S.C. § 203(d), Watson employed the home care workers employed by Interim, whether doing business as Interim Healthcare of Western New York or in its own name.

**Named Plaintiffs**

11. Plaintiff Oretha Beh ("Beh") is a resident of the State of New York residing in the City of Buffalo and County of Erie. She was employed as a PCA within the meaning of 29 U.S.C. § 203(g) and N.Y. Labor Law § 2(7) by Defendants Interim and Watson (collectively "Interim Defendants") from approximately June, 2016 through approximately October 13, 2017 and then, without interruption, has been employed by Defendants CCC, Caro and Gatien (collectively "CCC Defendants") from approximately October 13, 2017 through the present.

12. Plaintiff Ruby Cason ("Cason") is a resident of the State of New York residing in the City of Buffalo and County of Erie. She was employed as a PCA within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by Interim Defendants from approximately January, 2013 through approximately October 13, 2017 and then, without interruption, has been employed by CCC Defendants from approximately October 13, 2017 through the present.

13. Plaintiff Briana Kincannon ("Kincannon") is a resident of the State of New York residing in the City of Buffalo and County of Erie. She has been employed as a PCA within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by CCC Defendants from approximately May 2018 through the present.

14. Plaintiff Kimberley Balkum ("Balkum") is a resident of the State of New York residing in the City of Rochester and County of Monroe. She was employed as an HHA within the meaning of 29 U.S.C. § 203(g) and NYLL § 2(7) by Interim Defendants in approximately October, 2017 through approximately October 13, 2017 and then, without interruption, has been employed by CCC Defendants from approximately October 13, 2017 through January, 2019.

6

15. At all times when employed by the CCC Defendants and/or when employed by the Interim Defendants, each Named Plaintiff is and/or was employed in commerce within the meaning of 29 U.S.C. § 203(b) and/or in an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(r)(1) and (s)(1).

## FACTS

16. On or about October 13, 2017, pursuant to written agreements with Interim Healthcare Inc. and with companies operating home care businesses franchised by Interim Healthcare, CCC acquired several such franchised home care businesses as well as the right to operate those businesses as franchises within Interim Healthcare's franchise system including its trademark and proprietary information. Among the franchises acquired by CCC were franchises that had been operated by Interim. Those home care workers who had been employed by Interim immediately prior to the aforesaid acquisition by CCC thereupon became employed by CCC as home care workers performing the same tasks for the same clients as when they were employed by Interim.

17. Thus, at the time of the transfer of Interim Healthcare franchises from Interim to CCC, Named Plaintiffs Beh, Cason and Balkum, who had been employed as home care workers by Interim, became home care workers employed by CCC and performed the same tasks with the same clients. Additional home care workers were hired by CCC to service its clients after the foregoing transfer of franchises to CCC. Among these additional hires was Named Plaintiff Kincannon.

18. Each Named Plaintiff, whether as an employee of CCC Defendants or of Interim Defendants, is providing and/or provided care to Defendants' clients at the clients' respective residences. Individuals designated as PCAs perform and/or performed duties including without

limitation cleaning and bathing clients, doing their laundry and preparing clients' meals, among other duties. Duties performed by individuals designated as HHAs include ensuring clients take their medications properly and assisting them in the taking of their medications, helping clients get out of and into bed, assisting in preparation of clients' meals, helping them to eat, maintaining their hygiene, taking clients to medical or other appointments, and related tasks. PCAs and HHAs perform a mixture of the duties associated with the other title and, in practice, there is no meaningful distinction that is relevant here. Each PCA or HHA, including each Named Plaintiff, devotes more than 80% of his/her time with each client and in each workweek to the provision of care.

19. As employed by CCC Defendants and/or by Interim Defendants, Named Plaintiffs performed and, if still employed, continue to perform both "on-the-clock" and "off-the-clock" work. As used herein, "on-the-clock" work is work that has been formally assigned to a home care worker and must be performed within a specified frame of hours. CCC Defendants and Interim Defendants require and/or required performance of such work and its performance within the specified frame of hours. Such work is and was performed primarily for the benefit of the respective employers requiring its performance. CCC Defendants and Interim Defendants know and have reason to know and/or knew and had reason to know of Named Plaintiffs' performance of such work. Said Defendants compensate and/or compensated each Named Plaintiff for such work on an hourly basis (and effectively concede such work is compensable under the FLSA and the NYLL). Such an hourly rate of pay constitutes and/or constituted the worker's regular rate of pay for purposes of the FLSA and the NYLL. "Off-the-clock" work is work that has not been formally assigned to a home care worker or need not be performed within a specified frame of hours. "Off-the-clock" work performed by Named Plaintiffs, whether employed by CCC

Defendants and/or by Interim Defendants, includes and included: (a) travel between the respective residences of CCC clients or of Interim clients whom a Named Plaintiff is or was assigned and scheduled to care for in a single workday; (b) time waiting at the residence of the second (or third) client in the same workday for the Named Plaintiff's scheduled shift at that residence to begin; (c) washing and drying scrubs that CCC Defendants or Interim Defendants require or required Named Plaintiffs to wear while caring for clients and to launder; (d) participation in mandatory training activities; and (e) provision of home care services to a client at his/her residence after completion of a scheduled shift caring for that client. Such "off-the-clock" activities are and were compensable under the FLSA and the NYLL, and the time expended on the performance of such activities is and was part of Named Plaintiffs' respective workweeks for purposes of the FLSA and the NYLL. CCC Defendants and Interim Defendants require and/or required home care workers to perform such work, and it is and was performed primarily for the benefit of the respective employers requiring its performance. CCC Defendants and Interim Defendants know and have reason to know and/or knew and had reason to know of the performance of such work for their benefit. However, neither CCC Defendants nor Interim Defendants compensate or compensated their respective home care workers for such work.

20. Named Plaintiffs are and/or were required by CCC Defendants and by Interim Defendants to provide home care services for more than one client in the same workday. Thus, each such Plaintiff is and/or was required to travel from one client's residence to the next client's residence in the same workday. Such travel is and/or was primarily for the benefit of such Defendant(s). The identities, locations and sequence of clients each Named Plaintiff is and/or was assigned to care for in any given workday and the times each Plaintiff is and/or was scheduled to begin and to conclude each shift at each client's residence is and/or was determined

by that Plaintiff's employers. Thus the distance between two consecutive clients to be traveled by each Named Plaintiff is and/or was determined by CCC Defendants or by Interim Defendants.

21. Neither CCC Defendants nor Interim Defendants compensate or compensated Named Plaintiffs for the time expended by them on travel between client residences in a single workday.

22. For example, Beh was required to travel from one client's residence to another's in at least seventy-seven (77) weeks from December 2017 through the filing of this action, while employed by CCC Defendants. Cason was required to travel from one client's residence to another's in at least eighteen (18) weeks from December 2017 through the filing of this action, while employed by CCC Defendants. Kincannon was required to travel from one client's residence to another's in at least seventeen (17) weeks from December 2017 through the filing of this action, while employed by CCC Defendants. Balkum was required to travel from one client's residence to another's in at least forty-three (43) weeks between December 2017 and January 2019, while employed by CCC Defendants. Nevertheless neither CCC Defendants nor Interim Defendants compensated any of the Named Plaintiffs for the time any of them expended on that travel.

23. Named Plaintiffs incur and/or incurred out-of-pocket expenses for the cost of transportation when required to travel from one client's residence to another's in the same workday. However, neither CCC Defendants nor Interim Defendants reimburse and/or reimbursed or otherwise compensates and/or compensated any Named Plaintiff for such expenditures.

24. When a Named Plaintiff arrives and/or arrived at a second (or third) client's residence after traveling from another client's residence but before the scheduled time for

servicing the later client begins and/or began, that Plaintiff is and/or was required to wait until that scheduled time before entering the residence and providing services to that second (or third) client. Neither CCC Defendants nor Interim Defendants compensate or compensated Named Plaintiffs for that waiting time. The amount of time between the servicing of clients in a single workday and the locations of such work is and was such that Named Plaintiffs are and were unable to use that time for personal benefit. CCC Defendants and Interim Defendants know and have reason to know and/or knew and had reason to know of such waiting by their Named Plaintiffs.

25. After the conclusion of Named Plaintiffs' regularly-scheduled shifts providing services for a client, each is and/or was required to perform additional work for that client at that client's residence, primarily for the benefit of that Plaintiff's employers. CCC Defendants and Interim Defendants know and have reason to know and/or knew and had reason to know of the performance of such additional work by their respective Plaintiffs. This additional work, which generally consists and/or consisted of regular home care duties often performed during a regularly-scheduled shift, constitutes and/or constituted Named Plaintiffs' principal duties or is and/or was integral and indispensable to performance of their principal duties. Performance of this additional work normally takes and/or took approximately thirty (30) minutes. Neither CCC Defendants nor Interim Defendants compensate or compensated Named Plaintiffs for their performance of this additional work.

26. For example, in at least seventy-eight (78) weeks beginning in or about December 2017 through the filing of this action, CCC Defendants failed to compensate Plaintiff Cason for time she expended on work performed at clients' residences after the end of a scheduled shift, which work consisted of one or more of her regular duties or was integral and indispensable to

11

performance of those principal duties. In at least fifty-two (52) weeks beginning in or about December 2017 through the filing of this action, said Defendants failed to compensate Plaintiff Kincannon for time she expended on work performed at clients' residences after the end of a scheduled shift, which work consisted of one or more of her regular duties or was integral and indispensable to performance of those principal duties. In at least forty-three (43) weeks between December 2017 and January 2019, said Defendants failed to compensate Plaintiff Balkum for time she expended on work performed at clients' residences after the end of a scheduled shift, which work consisted of one or more of her regular duties or was integral and indispensable to the performance of those principal duties.

27. Named Plaintiffs are and/or were required by CCC Defendants and by Interim Defendants to launder the scrubs they are and/or were required to wear. Plaintiffs normally wash and dry and/or washed and dried their scrubs approximately once per week and, due to the filth of those items, normally launder and/or laundered them separately from personal clothing. Such washing and drying of scrubs is and/or was usually performed at a laundromat. Each such laundering ordinarily takes and/or took approximately 1 ½ hours, and related travel to and from the laundromat ordinarily takes and/or took another hour. Such activities are and/or were integral and indispensable to performance of Named Plaintiffs' principal activities. CCC Defendants and Interim Defendants know and have reason to know and/or knew and had reason to know of this laundering by their Plaintiffs. Neither CCC Defendants nor Interim Defendants compensate or compensated their Plaintiffs for the time they expended on laundering their scrubs.

28. Named Plaintiffs, while employed by CCC Defendants and/or by Interim Defendants, are and/or were forced to incur out-of-pocket expenses in order to wash and dry

their scrubs. These expenses include and/or included the purchase of detergent, the purchase of the use of washing machines and dryers and the costs of transportation to and from the laundromat. Neither CCC Defendants nor Interim Defendants reimburse or reimbursed nor otherwise pay or paid Named Plaintiffs for said expenses.

29. Named Plaintiffs, while employed by CCC Defendants and/or by Interim Defendants, are and/or were also required to purchase their scrubs. A single set of scrubs costs approximately $20. Neither CCC Defendants nor Interim Defendants reimburse or reimbursed nor otherwise compensate or compensated Named Plaintiffs for such out-of-pocket expenditures. Named Plaintiffs purchase and/or purchased between four and twenty-four sets of scrubs annually.

30. Prior to 2019, on approximately four occasions per year, CCC Defendants and Interim Defendants required Named Plaintiffs to undergo home care training activities. Such training was integral and indispensable to performance of their principal duties. On each such occasion, Named Plaintiffs were required to read materials provided to them, which reading took approximately one hour. Then they were required to write answers to examination questions, which took approximately one additional hour. CCC Defendants and Interim Defendants knew and had reason to know of these training activities.

31. Neither CCC Defendants nor Interim Defendants compensated Named Plaintiffs for the time said employees were required to expend on these training activities.

32. Defendants Caro and Gatien, CCC's owner and CEO, respectively, control and controlled the CCC policies and practices complained of herein. On information and belief each suffers and permits and suffered and permitted CCC's policy and practice of not compensating CCC home care workers for their time expended on travel between residences of CCC clients, its

13

policy and practice of not compensating them for their time expended on performance of washing and drying of scrubs, its policy and practice prior to 2019 of not compensating them for their time participating in mandatory training activities conducted by or for CCC, its policy and practice of not compensating them for their time expended on caring for CCC clients after the end of assigned shifts, and its policy and practice of not compensating them for their time waiting at the residences of a second or third CCC client in a workday prior to the beginning of the next scheduled shifts. Caro and Gatien also suffer and permit and suffered and permitted CCC's policy and practice of not reimbursing home care workers or otherwise paying them for the out-of-pocket expenses incurred by them in their performance of tasks required by CCC, including the traveling between residences of CCC clients, the purchases of scrubs, the washing and drying of scrubs and the traveling to and from laundromats. Caro and Gatien each knows and knew of the foregoing policies and practices yet is failing and failed to cause CCC to abandon said policies and practices despite having the power and authority to do so.

33. Defendant Watson controlled the Interim policies and practices complained of herein. On information and belief, he suffered and permitted Interim's policy and practice of not compensating its home care workers for their time expended on travel between residences of Interim clients, its policy and practice of not compensating them for their time expended on performance of washing and drying of scrubs, its policy and practice of not compensating them for their time participating in mandatory training activities conducted by or for Interim, its policy and practice of not compensating them for their time expended on caring for Interim clients after the end of assigned shifts, and its policy and practice of not compensating them for their time waiting at the residences of a second or third Interim client in a workday for the beginning of the next scheduled shift. Watson also suffered and permitted Interim's policy and practice of not

14

reimbursing home care workers or otherwise paying them for the out-of-pocket expenses incurred by them in their performance of tasks required by Interim, including the traveling between residences of Interim clients, the purchases of scrubs, the washing and drying of scrubs and the traveling to and from laundromats. Watson knew of the foregoing Interim policies and practices yet failed to cause Interim to abandon them despite having the power and authority to do so.

34. The conduct of CCC Defendants pertaining to Named Plaintiffs (except Balkum) described above is continuing.

## COLLECTIVE ACTION

35. Named Plaintiffs bring this action on their own behalves and on behalf of all persons similarly situated within the meaning of 29 U.S.C. § 216(b) who consent in writing to become a party to this action and whose consent is filed with the court in which this action is brought.

## CLASS ACTION

36. Named Plaintiffs also bring this action on behalf of the class of persons who were, are and/or will be employed as PCAs or HHAs by CCC Defendants in the State of New York on or after October 13, 2017 ("Class A") and on behalf of the class of persons who were employed as PCAs or HHAs by Interim Defendants in the State of New York on or before October 13, 2017, whether in Interim's own name or as Interim Healthcare of Western New York ("Class B").

37. Pursuant to Fed. R. Civ. P. 23(c)(4), Class A includes the following Subclasses:

A. Subclass No. A1 consists of all PCAs/HHAs employed by CCC Defendants who performed, are performing and/or will perform activities required by or otherwise benefiting said Defendants for which they were not, are not and/or will not be compensated. These

15

uncompensated activities include (i) travel in the course of a workday between the respective residences of two or more CCC clients, (ii) waiting at the residence of a second (or third) CCC client before being allowed to enter said residence and provide services for that client, (iii) activities performed at the residence of a CCC client after conclusion of a regularly-scheduled shift at that residence, (iv) laundering their uniforms or parts thereof and/or (v) participating in mandatory training sessions conducted by or for CCC Defendants.

   B. Subclass No. A2 consists of all PCAs/HHAs employed by CCC Defendants who were, are and/or will be required by CCC Defendants to expend personal monies on the performance of activities required by said Defendants but who were not, are not and/or will not be reimbursed for those expenditures. This includes PCAs/HHAs required to expend personal monies (i) on travel in the course of a workday between the residences of two or more CCC clients as required by CCC Defendants, (ii) on laundering their uniforms or parts thereof as required by CCC Defendants and/or (iii) on the purchase of uniforms or parts thereof that CCC Defendants required, require or will require them to wear;

   C. Subclass No. A3 consists of all PCAs/HHAs employed by CCC Defendants whose activities required by or otherwise benefiting CCC Defendants, including those identified in Subparagraph A, occupy more than forty (40) hours in one or more workweeks;

   D. Subclass No. A5 consists of all PCAs/HHAs employed by CCC Defendants who were not, are not and/or will not be paid in one or more workweeks at not less than the applicable minimum wage rate(s) set forth in NYLL § 652(1) for activities required by or otherwise benefiting CCC Defendants, including those set forth in Subparagraph A;

   E. Subclass No. A6 consists of all PCAs/HHAs employed by CCC Defendants who were not, are not and/or will not be provided, at the time of hiring or within ten (10)

business days of the first day of employment, with a written notice of their rate(s) of pay and the basis thereof; each allowance, if any, claimed by the employer(s); their regular pay day; the name of each employer and each "doing business as" name used by each employer; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number;

F. Subclass No. A7 consists of all PCAs/HHAs employed by CCC Defendants who were not, are not and/or will not be furnished, together with each wage payment, with a written statement listing the dates of the corresponding pay period for which each payment of wages is made; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked;

G. Subclass No. A8 consists of all PCAs/HHAs employed by CCC Defendants who were, are and/or will be required to work one or more split shifts; and

H. Subclass No. A9 consists of all PCAs/HHAs employed by CCC Defendants who were, are and/or will be required to work one or more workdays in which the spread of hours exceeds ten (10) hours.

38. Pursuant to Fed. R. Civ. P. 23(c)(4), Class B includes the following Subclasses:

A. Subclass No. B1 consists of all PCAs/HHAs employed by Interim Defendants who performed activities required by or otherwise benefiting said Defendants for which they were not compensated. These uncompensated activities included (i) travel in the course of a workday between the respective residences of two or more Interim clients, (ii) waiting at the residence of a second (or third) Interim client before being allowed to enter said residence and

17

provide services for that client, (iii) activities performed at the residence of an Interim client after conclusion of a regularly-scheduled shift at that residence, (iv) laundering their uniforms or parts thereof and/or (v) attending mandatory training sessions conducted by or for Interim Defendants.

B. Subclass No. B2 consists of all PCAs/HHAs employed by Interim Defendants who were required by said Defendants to expend personal monies on the performance of activities required by said Defendants but who were not reimbursed or otherwise compensated for those expenditures. This includes PCAs/HHAs required to expend personal monies (i) on travel in the course of a workday between the residences of two or more Interim clients as required by Interim Defendants, (ii) on laundering their uniforms or parts thereof as required by Interim Defendants and/or (iii) on the purchase of uniforms or parts thereof that Interim Defendants required them to wear;

C. Subclass No. B3 consists of all PCAs/HHAs employed by Interim Defendants whose activities required by or otherwise benefiting Interim Defendants, including those identified in Subparagraph A, occupied more than forty (40) hours in one or more workweeks;

D. Subclass No. B5 consists of all PCAs/HHAs employed by Interim Defendants who were not paid in one or more workweeks at not less than the applicable minimum wage rate(s) set forth in NYLL § 652(1) for activities required by or otherwise benefiting Interim Defendants, including those set forth in Subparagraph A;

E. Subclass No. B6 consists of PCAs/HHAs employed by Interim Defendants who were not provided, at the time of hiring or within ten (10) business days of the first day of employment, with a written notice of their rate(s) of pay and the basis thereof; each allowance, if any, claimed by the employer(s); their regular pay day; the name of each employer and "doing business as" name used by each employer; the physical address of each employer's main office

or principal place of business (and mailing address, if different); and each employer's telephone number;

F. Subclass No. B7 consists of all PCAs/HHAs employed by Interim Defendants who were not furnished, together with each wage payment, with a written statement listing the dates of the corresponding pay period for which each payment of wages was made; name of employee; name of employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowance, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked;

G. Subclass No. B8 consists of all PCAs/HHAs employed by Interim Defendants who were required to work one or more split shifts; and

H. Subclass No. B9 consists of all PCAs/HHAs employed by Interim Defendants who were required to work one or more workdays in which the spread of hours exceeded ten (10) hours.

39. Class A, each Subclass thereof, Class B and each Subclass thereof are each so numerous that joinder of all members thereof is impracticable. There are at least one thousand individuals in Class A and at least several hundred in each Subclass thereof, in Class B and in each Subclass thereof, respectively.

40. There are questions of fact and of law that are common to Class A and to each Subclass thereof and questions of fact and law that are common to Class B and to each Subclass thereof. Those questions predominate over any questions that may affect only individual members of either Class or of any Subclass of either Class. Such questions include but are not limited to:

A. Were PCAs/HHAs employed by CCC Defendants or by Interim Defendants who were required to travel between the respective residences of two clients of their respective employers in the course of a workday been compensated for that travel time? Were such home care workers employed by such Defendants who were required to wait at the residence of a second client of their respective employers before entering therein and beginning performance of services for that client been compensated for their waiting time? Were such home care workers employed by CCC Defendants or by Interim Defendants who were required to perform additional work at the residence of a client of their respective employers after conclusion of a regularly-scheduled shift at that residence been compensated for that additional work? Were PCAs/HHAs employed by such Defendants compensated for their required laundering of their uniforms or parts thereof? Were PCAs/HHAs employed by such Defendants compensated for their mandatory participation in training sessions?

B. Were PCAs/HHAs employed by CCC Defendants or by Interim Defendants entitled by law to be compensated for performance of each of the tasks or activities described in Paragraphs 20, 24, 25, 27 and/or 30? Were they compensated for the performance of each such task or activity?

C. Were PCAs/HHAs employed by CCC Defendants or by Interim Defendants who were made to incur expenses in the performance of activities described in Paragraphs 23, 28 and/or 29 entitled to be reimbursed or otherwise paid for such expenses? Were they reimbursed or otherwise paid for such expenses?

D. In ascertaining the number of hours PCAs/HHAs employed by CCC Defendants or by Interim Defendants worked in each workweek for the purpose of determining whether they worked in excess of forty (40) hours in a workweek (and were thereby entitled to

overtime compensation), did their respective employers include (i) time expended on travel between the respective residences of clients of the employers, (ii) time expended on waiting at the residence of a second client before commencing performance of services for that client, (iii) time expended on additional work performed at a client's residence after conclusion of a regularly-scheduled shift at that residence, (iv) time expended on laundering uniforms or parts thereof and/or (v) time expended on mandatory training sessions?

E. Were CCC Defendants and Interim Defendants each required by law to include time expended on the activities described in Paragraphs 20, 24, 25, 27 and/or 30 when determining whether PCAs/HHAs employed by it worked more than forty (40) hours in a workweek for the purpose of determining whether they were entitled to overtime compensation?

F. Did PCAs/HHAs employed by CCC Defendants or by Interim Defendants perform work for such Defendants in excess of forty (40) hours in one or more workweeks?

G. Were PCAs/HHAs employed by CCC Defendants or by Interim Defendants compensated for work they performed in excess of forty (40) hours in a workweek at 1.5 times their respective regular rates of pay?

H. Did NYLL § 652(1) require that the expenses that CCC Defendants or Interim Defendants required PCAs/HHAs employed by it to incur be taken into account when determining whether they were compensated at not less than the applicable minimum wage rates established by § 652(1)?

I. Were PCAs/HHAs employed by CCC Defendants or by Interim Defendants compensated for work they performed at not less than the applicable minimum wage rates established by NYLL § 652(1)?

J. Did CCC Defendants or Interim Defendants fail to provide PCAs/HHAs employed by them, at the time of their respective hirings or within ten (10) business days of their respective first days of employment, with a written notice of their respective rate(s) of pay and the basis thereof; each allowance, if any, claimed by CCC Defendants or by Interim Defendants; the regular pay day; the name of each employer and any "doing business as" name used by it/him; the physical address of each employer's main office or principal place of business (and mailing address, if different); and each employer's telephone number?

K. Did CCC Defendants or Interim Defendants fail to furnish to PCAs/HHAs employed by them, with each payment of wages, a written statement listing the dates of the pay period corresponding to each such payment of wages; name of employee; name of each employer; address and telephone number of each employer; rate(s) of pay and basis thereof; gross wages; deductions; claimed allowances, if any; net wages; the regular hourly rate(s) of pay; the overtime rate(s) of pay; the number of regular hours worked; and the number of overtime hours worked?

L. Where the spread of hours in days worked by PCAs/HHAs employed by CCC Defendants or by Interim Defendants exceeded ten (10) hours, were they entitled to be paid for such spread of hours pursuant to 12 NYCRR § 142-2.4?

M. Where PCAs and/or HHAs employed by CCC Defendants or by Interim Defendants were entitled to be paid for a spread of hours pursuant to § 142-2.4, were they paid in accordance with § 142-2.4?

N. If PCAs/HHAs employed by CCC Defendants or by Interim Defendants worked split shifts, were they entitled to be paid for such split shifts pursuant to § 142-2.4?

O. Where PCAs and/or HHAs employed by CCC Defendants or by Interim Defendants were entitled to be paid for working split shifts pursuant to § 142-2.4, were they paid in accordance with § 142-2.4?

41. The claims of Named Plaintiffs are typical of the claims of the other members of Class A and of each Subclass thereof and typical of the claims of the other members of Class B and of each Subclass thereof. Named Plaintiffs and the other members of Class A and of each Subclass thereof were and/or are subject to the same relevant policies and practices of CCC Defendants and suffered and/or are suffering the same kinds of injuries as a consequence of said policies and practices. Named Plaintiffs and the other members of Class B and of each Subclass thereof were and/or are subject to the same relevant policies and practices of Interim Defendants and suffered and/or are suffering the same kinds of injuries as a consequence of said policies and practices.

42. Named Plaintiffs will fairly and adequately protect the interests of the members of each Class and each Subclass they seek to represent. There are no conflicts between Named Plaintiffs and the other members of either Class or of any Subclass thereof. Counsel for Named Plaintiffs are experienced in litigating and settling wage and hour claims under federal and New York law and in litigating and settling class and collective actions, including those involving wage and hour claims.

43. A class action is superior to other available methods for the fair and efficient adjudication of the claims herein. The individual Named Plaintiffs and the other putative members of each Class and of each Subclass thereof lack the financial resources necessary to adequately prosecute separate individual lawsuits against CCC Defendants and/or Interim Defendants. The prospective damages for each individual Named Plaintiff and each other

23

member of either Class or of any Subclass thereof are small in comparison to the expenses and burdens of an individual prosecution of the claims herein. A class action will avoid duplicative litigation and the possibility of inconsistent judgments concerning the relevant policies and practices of CCC Defendants and of Interim Defendants.

## FIRST CAUSE OF ACTION: OVERTIME COMPENSATION
### (29 U.S.C. § 207(a)(1))

44. Plaintiffs repeat and incorporate herein Paragraphs 1-43 above.

45. At all times relevant hereto, CCC Defendants and Interim Defendants are and/or were required pursuant to 29 U.S.C. § 207(a)(1) to compensate each of their Named Plaintiffs for each hour worked in excess of forty (40) hours in a workweek at 1.5 times his/her regular rate of pay.

46. The number of hours worked on the clock in a given week by each Named Plaintiff depends and depended upon the number of clients to whom that worker is or was assigned in that week as well as the number and length of those assignments. The number of hours worked on the clock in a given week by Named Plaintiffs, whether employed by CCC Defendants or by Interim Defendants, varies and/or varied from week to week or from month to month, because the number of clients to whom each is or was assigned and the number and length of those assignments is and/or was varied irregularly by CCC Defendants and by Interim Defendants, respectively. The average number of hours worked on the clock by Named Plaintiffs per week is and/or was approximately thirty-five hours. The average number of compensable hours worked off the clock by Named Plaintiff per week is and/or was approximately seven hours.

47. On information and belief: (a) until a few months before the filing of this action, Plaintiff Beh worked approximately thirty-five hours per week on the clock plus approximately nine compensable hours per week off the clock, for a weekly total of forty-four hours; (b) for

several months until approximately December 7, 2019, Plaintiff Kincannon worked at least thirty-five hours per week on the clock and seven to nine hours per week off-the-clock, for a weekly total of at least forty-two hours; and (c) through October 2018, Plaintiff Balkum worked approximately forty hours per week on the clock and approximately nine compensable hours per week off the clock, for a weekly total of forty-nine hours. The off-the-clock work included travel between client residences, washing and drying of scrubs and, four times per year, mandatory home care training activities.

48. CCC Defendants and Interim Defendants compensate and/or compensated each of the foregoing Plaintiffs at her regular hourly rate of pay for her on-the-clock work, which said Defendants treat and/or treated as compensable. However, CCC Defendants and Interim Defendants do not and/or did not compensate them at all for their off-the-clock work, all of which is and was compensable. The total hours worked for CCC Defendants and for Interim Defendants per week by each of the foregoing Plaintiffs employed by them exceeds and/or exceeded forty hours. Consequently, CCC Defendants and Interim Defendants are failing and/or failed to compensate each of them for each hour worked by her in each workweek in excess of forty hours at 1.5 times her regular rate of pay. Accordingly, CCC Defendants are violating and violated § 207(a)(1).

49. CCC Defendants' violations of § 207(a)(1) and Interim Defendants' violations of § 207(a)(1) are being and/or were committed with knowledge that, and with reckless disregard for whether, their conduct is and/or was violative of § 207(a)(1). On information and belief, CCC Defendants and Interim Defendants failed and CCC Defendants are failing to make and maintain accurate records of the total compensable hours worked by Named Plaintiffs.

## SECOND CAUSE OF ACTION: OVERTIME COMPENSATION
## (12 NYCRR § 142-2.2)

50. Plaintiffs repeat and incorporate herein Paragraphs 1-49 above.

51. At all times relevant hereto, CCC Defendants and Interim Defendants are and/or were required pursuant to 12 NYCRR § 142-2.2 to compensate each Named Plaintiff employed by them for each hour worked in excess of forty (40) hours in a workweek at 1.5 times her regular rate of pay.

52. For the same reasons CCC Defendants and Interim Defendants are violating and/or violated § 207(a)(1) by failing to compensate Named Plaintiffs at 1.5 times their respective regular rates of pay for each hour worked in each week in excess of forty hours, they likewise are violating and/or violated 12 NYCRR § 142-2.2.

## THIRD CAUSE OF ACTION: MINIMUM WAGE
## (New York Labor Law § 652(1); 12 NYCRR § 142-2.10(b))

53. Plaintiffs repeat and incorporate herein Paragraphs 1-52 above.

54. At all times relevant hereto, CCC Defendants and Interim Defendants are and/or were required pursuant to NYLL § 652(1) to compensate each Named Plaintiff employed by them at not less than the applicable minimum wage rate(s) established by § 652(1) for each hour worked on or off the clock. Said Defendants are and/or were also required pursuant to 12 NYCRR § 142-2.10(b) to compensate each Named Plaintiff employed by them at not less than the applicable minimum wage rate(s) established by NYLL § 652(1) for all time expended on travel between the respective residences of clients the Named Plaintiff cares and/or cared for.

55. Pursuant to NYLL § 652(1), the minimum hourly rate for, *inter alia*, home care workers employed in the State of New York was:

$7.15 on and after January 1, 2007,

$8.00 on and after December 31, 2013,

$8.75 on and after December 31, 2014,

$9.00 on and after December 31, 2015 and until December 31, 2016.

Thereafter, the minimum hourly rate for home care workers employed in the State of New York outside New York City and the counties of Nassau, Suffolk and Westchester was and/or is:

$9.70 on and after December 31, 2016,

$10.40 on and after December 31, 2017,

$11.10 on and after December 31, 2018, and

$11.80 on and after December 31, 2019.

56. CCC Defendants and Interim Defendants compensate and/or compensated Named Plaintiffs for on-the-clock work at or above the New York minimum wage rate in effect when the work is/was performed. However, neither CCC Defendants nor Interim Defendants compensate or compensated Named Plaintiffs at all for off-the-clock work performed by them for CCC Defendants or for Interim Defendants.

57. Further, CCC Defendants and Interim Defendants required and CCC Defendants require Named Plaintiffs to incur out-of-pocket expenses for tasks they require and/or required Named Plaintiffs to perform without reimbursing Named Plaintiffs or otherwise compensating them for such expenses. For example, said Defendants require and/or required Named Plaintiffs to travel between client residences when assigned to care for more than one client in a workday, and they compel and/or compelled them to pay for the costs of such travel. Said Defendants also require and/or required Named Plaintiffs to clean their scrubs, and they compel and/or compelled them to pay the costs associated with such cleaning.

58. When Named Plaintiffs' off-the-clock hours, which are uncompensated, are taken into account and treated as compensable hours under the NYLL, as they should be, and when Plaintiffs' uncompensated out-of-pocket expenditures for travel and/or cleaning scrubs are taken into account, as they should be, when determining the actual weekly wage rate for each Plaintiff, the consequence is that CCC Defendants and Interim Defendants fail and/or failed to compensate Named Plaintiffs at or above the applicable New York minimum wage rate.

59. For example, in one week in February 2018, Plaintiff Beh worked 39 hours on the clock for which she was paid $444.40. If that were all the compensable work performed by Beh in that week, her hourly rate of pay for that workweek would have been $444.40 / 39 = $11.39 per hour. That would have been above the New York minimum wage rate applicable in that week, which was $10.40 per hour. However, Beh also worked approximately 9.5 hours off-the-clock in that same week, but CCC Defendants failed to compensate her at all for that off-the-clock work, even though those 9.5 hours were compensable under the NYLL. Thus, under NYLL 652(1), Beh was entitled to be paid for her work in that week at least $514.80 (49.5 hours x $10.40), even before taking into account the additional compensation she was owed for her out-of-pocket expenditures in that week for travel between clients' residences and for cleaning her scrubs. When CCC Defendants paid Beh only $444.40 for her compensable work and failed to compensate her for her out-of-pocket expenditures, they violated § 652(1) and 12 NYCRR § 142-2.10(b).

60. For a second example: in one week in October 2018, Plaintiff Balkum worked 40 hours on the clock for which she was paid $501.60. If that had been all the compensable work performed by Balkum in that week, her hourly rate of pay for that workweek would have been $501.60 / 40 = $12.54 per hour. That would have been above the then-applicable minimum

wage rate of $10.40 per hour. However, Balkum also worked approximately 9 hours off-the-clock in that same week traveling between clients residences and cleaning her scrubs. CCC Defendants failed to compensate her at all for this additional work notwithstanding that it was compensable under the NYLL. Thus, under NYLL § 652(1), Balkum was entitled to be paid for her work in that week at least $509.60 (49 hours x $10.40), even before taking into account the additional compensation she was due for her out-of-pocket expenditures in that week for travel between client residences and cleaning scrubs. When CCC Defendants paid Balkum only $501.60 for her compensable work and failed to compensate her for her out-of-pocket expenditures, they violated § 652(1) and 12 NYCRR § 142-2.10(b).

61. For a third example: in one week in September 2018, Plaintiff Kincannon worked 34 hours on the clock for which she was paid $372.90. If that had been all the compensable work performed by her in that week, her hourly rate of pay for that workweek would have been $372.90 / 34 = $10.97 per hour. That would have been above the then-applicable minimum wage rate of $10.40 per hour. However, Kincannon also worked approximately 2.5 compensable hours off-the-clock in that same week. Nevertheless, even though that work (cleaning her scrubs) was compensable under the NYLL, CCC failed to compensate her at all for that additional work. Thus, under § 652(1), Kincannon was entitled to be paid for her work in that week at least $379.60 (36.5 hours x $10.40), even before taking into account the additional compensation she was due for her out-of-pocket expenditures in that week for cleaning her scrubs. When CCC Defendants paid Kincannon only $372.90 and failed to compensate her for her out-of-pocket expenditures, they violated § 652(1).

### FOURTH CAUSE OF ACTION: UNPAID WAGES
### (New York Labor Law § 198(3); NY contract law)

62. Plaintiffs repeat and incorporate herein Paragraphs 1-61 above.

63. Pursuant to NYLL § 198(3) and New York contract law, an employer is required to compensate his/her/its employees for each hour of work performed by him/her for the employer's benefit at the wage rate agreed upon by the employer and employee for performance of that work.

64. CCC Defendants and each of the Named Plaintiffs and Interim Defendants and each of the Named Plaintiffs employed by them agreed that each such Plaintiff would be and/or will be compensated for all work performed by her for her employers' benefit at an agreed-upon hourly rate. Depending upon the duration of each Named Plaintiff's employment for CCC Defendants and/or for Interim Defendants, the agreed-upon rate increased over time. *See* Paragraphs 57-60 above.

65. CCC Defendants and Interim Defendants fail and/or failed to compensate each Named Plaintiff employed by them at all for work that said Defendants treated as off-the-clock, including: (a) travel between clients' respective residences in a workday, (b) time waiting at a second (or third) client's residence until the scheduled start of the shift at that residence, (c) work performed at a client's residence after the conclusion of a scheduled shift at that residence, (d) laundering uniforms or parts thereof and/or (e) attendance at mandatory training sessions. Said Defendants also fail and/or failed to reimburse or otherwise compensate Named Plaintiffs for the out-of-pocket expenditures they forced the Named Plaintiffs to make.

66. Due to said Defendants' failures to compensate Named Plaintiffs for their off-the-clock work and their failures to reimburse or otherwise compensate them for their compelled out-of-pocket expenditures, CCC Defendants and Interim Defendants actually fail and/or failed to compensate Named Plaintiffs at the agreed-upon rates for the work they perform and/or

performed for those Defendants. CCC Defendants and Interim Defendants thereby violate and/or violated § 198(3) and New York contract law.

## FIFTH CAUSE OF ACTION: FAILURE TO PROVIDE REQUIRED NOTICE
### (New York Labor Law § 195(1))

67. Plaintiffs repeat and incorporate herein Paragraphs 1-66 above.

68. Pursuant to NYLL §§ 195(1)(a) and 198(1-b), CCC Defendants and Interim Defendants were required to provide to each Named Plaintiff employed by them, at the time of hiring or within ten (10) business days of each Plaintiff's first day or employment, a written notice in English and in the Plaintiff's primary language containing the following information: the rate(s) of pay and the basis(es) thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer, the name of the employer; any "doing business as" name(s) used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the employer's telephone number; such other information as the Commissioner of Labor of the State of New York deems material and necessary; and, whereas CCC Defendants and Interim Defendants were not exempt from overtime compensation as established in the Commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the regular hourly rate and overtime rate of pay.

69. Also pursuant to NYLL § 195(1)(a), whenever CCC Defendants and/or Interim Defendants were required to provide to a Named Plaintiff such notice as is described in Paragraph 69, said Defendants were required to obtain from the Named Plaintiff a signed and dated written acknowledgement, in English and in the Plaintiff's primary language, of her receipt of such notice.

70. Nevertheless, on information and belief,

31

(a) when CCC Defendants hired each Named Plaintiff, said Defendants failed to provide her, within ten (10) business days of the first day of that Plaintiff's employment, with a written notice containing the information described in Paragraph 69, nor did said Defendants obtain a signed and dated written acknowledgement from that Plaintiff of her receipt of such a notice; and

(b) when Interim Defendants hired each Named Plaintiff employed by them, whether in Interim's name or in the name of Interim Healthcare of Western New York, said Defendants failed to provide her, within ten (10) business days of the first day of that Plaintiff's employment, with a written notice containing the information described in Paragraph 69, nor did said Defendants obtain a signed and dated written acknowledgement from that Plaintiff of her receipt of such notice.

71. By failing to provide each Named Plaintiff employed by them, within ten (10) business days of the first day of her employment, with a written notice containing the information described in Paragraph 69 and by failing to obtain from each such Plaintiff a signed and dated written acknowledgement of her receipt of such notice, CCC Defendants and Interim Defendants violated § 195(1)(a).

## SIXTH CAUSE OF ACTION:  FAILURE TO FURNISH REQUIRED WAGE STATEMENT (N.Y. Labor Law § 195(3) AND 12 NYCRR § 142-2.7)

72. Plaintiffs repeat and incorporate herein Paragraphs 1-71 above.

73. Pursuant to NYLL § 195(3) and 12 NYCRR § 142-2.7, CCC Defendants and Interim Defendants are and/or were required to furnish to each Named Plaintiff employed by them a wage statement, with every payment of wages, listing the following:  the dates of work covered by that payment; name of employee; name of employer; address and phone number of employer;

hours worked; rate(s) of pay and basis(es) thereof; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

74. Whereas CCC Defendants and Interim Defendants are not and/or were not exempt from the obligation under New York law to compensate Named Plaintiffs at 1.5 times their regular rates of pay for work performed for said Defendants in a workweek in excess of forty hours, § 195(3) also required said Defendants to include in each wage statement they are and/or were required to furnish to each Named Plaintiff, her regular hourly rate of pay; the overtime rate of pay; the number of regular hours worked; and the number of overtime hours worked.

75. Nevertheless, on information and belief:

(a) CCC Defendants are failing and failed to furnish to each Named Plaintiff employed by them the aforesaid statement with the information set forth in Paragraphs 74-75 above, together with each payment of wages to each such person; and

(b) Interim Defendants likewise failed to furnish to each Named Plaintiff employed by them the aforesaid statement with the information set forth in Paragraphs 74-75 above, with each payment of wages to each such person.

76. In failing to furnish such a statement with each payment of wages, CCC Defendants and Interim Defendants are violating and/or violated § 195(3).

### SEVENTH CAUSE OF ACTION: UNIFORM MAINTENANCE PAY
### (12 NYCRR § 142-2.5(c))

77. Plaintiffs repeat and incorporate herein Paragraphs 1-76 above.

78. At all times relevant hereto, CCC Defendants and Interim Defendants employ and/or employed eleven or more employees. At all times relevant hereto, such Defendants require and/or required each Named Plaintiff employed by said Defendants to wear clean scrubs. Such Defendants also require and/or required said Plaintiffs to launder their scrubs while off the clock.

CCC Defendants and Interim Defendants further require and/or required Named Plaintiffs to expend their own monies on the laundering of their scrubs.

79. In these circumstances, pursuant to 12 NYCRR § 142-2.5(c), CCC Defendants and Interim Defendants are and/or were required to pay weekly to each such Named Plaintiff so-called uniform maintenance pay for that Plaintiff's laundering of her scrubs in addition to the minimum wage prescribed in 12 NYCRR § 142-2.1, in the applicable amount according to § 142-2.5(c)(1)-(3).

80. CCC Defendants and Interim Defendants are failing and/or failed to make any such uniform maintenance payments to Named Plaintiffs employed by them.

81. Said Defendants thereby are violating and/or violated § 142-2.5(c).

**EIGHTH CAUSE OF ACTION: UNLAWFUL PAYMENTS/DEDUCTIONS**
**(New York Labor Law § 193; 12 NYCRR § 142-2.5(c))**

82. Plaintiffs repeat and incorporate herein Paragraphs 1-81 above.

83. Pursuant to NYLL § 193, neither CCC Defendants nor Interim Defendants may make any deduction from the wages of any Named Plaintiff employed by them, except if such deduction (a) is made in accordance with the provisions of a law or a rule or regulation issued by a governmental agency or (b) is expressly and voluntarily authorized in writing by such Named Plaintiff, is for the benefit of that Plaintiff and is made for a purpose authorized by § 193. NYLL § 193 further prohibits CCC Defendants and Interim Defendants from making any charge against the wages of any Named Plaintiff employed by them or from requiring any such Plaintiff to make any payment by separate transaction unless the charge or payment would be permitted as a deduction from wages under § 193. Whereas CCC Defendants and Interim Defendants require and/or required Named Plaintiffs to purchase their scrubs, pursuant to 12 NYCRR § 142-2.5(c),

said Defendants are and/or were required to reimburse the Named Plaintiffs for the cost of each purchase thereof and to do so not later than the date of the next payment of wages.

84. CCC Defendants and Interim Defendants require and/or required Named Plaintiffs employed by them to make payments for, *inter alia*, the costs of travel in a workday between clients' respective residences and the costs associated with laundering their uniforms. Such compelled expenditures are not and were not in accordance with a law, rule or regulation, are not and were not voluntary, expressly authorized in writing by any Named Plaintiff and for the benefit of that Plaintiff nor made for a purpose authorized by § 193. Therefore, such expenditures are not and/or were not permitted as a deduction from wages.

85. CCC Defendants and Interim Defendants also make and/or made deductions from such Named Plaintiffs' wages for the purchase of scrubs Plaintiffs are and/or were required to wear or else require and/or required such Named Plaintiffs to purchase those scrubs directly without reimbursement.

86. The foregoing deductions are and/or were made, or the foregoing expenditures by Named Plaintiffs are and/or were compelled, by CCC Defendants and Interim Defendants in violation of § 193 and/or § 142-2.5(c).

### NINTH CAUSE OF ACTION: SPREADS OF HOURS (12 NYCRR § 142-2.4)

87. Plaintiffs repeat and incorporate herein Paragraphs 1-86 above.

88. Pursuant to 12 NYCRR §142-2.4(a), CCC Defendants and Interim Defendants are and/or were required to pay each Named Plaintiff employed by them one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by 12 NYCRR § 142-2.1, for each day in which the spread of hours for that Named Plaintiff exceeds or exceeded ten (10) hours within the meaning of 12 NYCRR § 142-2.18.

35

89. The spread of hours for each Named Plaintiff employed by CCC Defendants and/or Interim Defendants exceeds and/or exceeded ten (10) hours on one or more workdays. This most commonly occurs and/or occurred when a Named Plaintiff is and/or was assigned to work shifts for at least two clients on the same workday.

90. Neither CCC Defendants nor Interim Defendants pay and/or paid any Named Plaintiff employed by them one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by § 142-2.1, for any day in which the spread of hours for that Plaintiff exceeded or will exceed ten (10) hours.

91. In failing to make such payments, CCC Defendants and Interim Defendants are violating and/or violated § 142-2.4.

## TENTH CAUSE OF ACTION: SPLIT SHIFT
## (12 NYCRR § 142-2.4)

92. Plaintiffs repeat and incorporate herein Paragraphs 1-91 above.

93. Pursuant to 12 NYCRR § 142-2.4(b), CCC Defendants and Interim Defendants are and/or were required to pay each Named Plaintiff employed by them one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by § 142-2.1, for each day in which such Plaintiff is or was subjected to a split shift within the meaning of 12 NYCRR § 142-2.17.

94. On numerous workdays, each Named Plaintiff employed by CCC Defendants or by Interim Defendants is and/or was assigned to work a shift at one client's residence and, then, a separate, non-consecutive shift at a second client's residence. Each such Plaintiff is and/or was required to travel between the two residences on each day when so assigned and often, after arriving at the second client's residence, is and/or was required to wait a period of time before entering the residence and beginning to provide services for the second client. If, contrary to the

allegations above, any of the activity(ies) of any Named Plaintiff between the completion of the assignment at the first client's residence and the commencement of the assignment at the second client's residence is not and/or was not compensable work, the Plaintiff is and/or was subjected to a split shift.

95. Neither CCC Defendants nor Interim Defendants pays and/or paid any Named Plaintiff employed by them one hour's pay at the applicable basic minimum hourly wage rate, in addition to the minimum wage required by § 142-2.1, for any day on which such Plaintiff is and/or was required to work such a split shift.

96. By failing to make any such payments, CCC Defendants and Interim Defendants are violating and/or violated § 142-2.4 if, contrary to the allegations above, any of the activity(ies) of a Named Plaintiff after completion of his/her first assignment and prior to commencement of his/her second assignment is not and/or was not compensable work.

97. The violations of law by CCC Defendants described in Paragraphs 1-96 are continuing.

## **RELIEF**

WHEREFORE each Named Plaintiff requests the following relief on her/his own behalf and on behalf of each other PCA/HHA employed by one or more Defendants:

A. Damages in the amount of the overtime compensation owed and/or that will be owed to each such employee;

B. Damages for the failures to compensate each such employee at not less than the applicable minimum wage rates for work (s)he performed and/or will perform;

C. Damages for the failures to compensate each such employee at the applicable agreed-upon contractual rate(s) for work (s)he performed and/or will perform;

37

D. Damages for each workday following the first ten (10) business days each such employee was and/or will be employed on which Defendants or any of them failed and/or will fail to provide the written notice required by NYLL § 195(1)(a);

E. Damages for each workday on which Defendants or any of them failed and/or will fail to furnish a wage statement as required by NYLL § 195(3);

F. Uniform maintenance pay pursuant to 12 NYCRR § 142-2.5(c) based upon the weeks when each such employee worked and/or will work, the number of hours worked in each such week and the location within the State of New York where the work was and/or will be performed;

G. Compensatory damages in the amount of each deduction made and/or that will be made from each employee's wages and each expenditure each such employee was and/or will be required to make in connection with her/his employment;

H. One hour's pay at the applicable basic minimum wage rate for each day each such employee's spread of hours exceeded and/or will exceed ten (10) hours;

I. One hour's pay at the applicable basic minimum wage rate for each day each such employee was and/or will be subjected to a split shift;

J. Liquidated damages pursuant to 29 U.S.C. § 260 and/or NYLL § 198(1-a) and/or § 663(1);

K. Declaratory and injunctive relief pursuant to NYLL § 198(1-b) for violations of NYLL § 195(1) and pursuant to NYLL § 198(1-d) for violations of NYLL § 195(3);

L. Prejudgment interest, costs and reasonable attorney's fees;

M. Postjudgment interest;

N.  Inclusion in the judgment of a provision to the effect that if any amount(s) payable under any portion of the judgment pursuant to NYLL §§ 198 and/or 663 remain unpaid upon the expiration of ninety days following issuance thereof, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of that portion of the judgment shall automatically increase by fifteen percent; and

O.  Such other and further relief as the Court deems necessary or appropriate.


Dated:      January 3, 2020


                                     Yours, etc.,

                                     *James Reif*

                                     James Reif
                                     GLADSTEIN, REIF & MEGINNISS LLP
                                     817 Broadway, 6th Floor
                                     New York, New York 10003
                                     212-228-7727
                                     jreif@grmny.com

                                     Ian Hayes
                                     Candace Morrison
                                     CREIGHTON, JOHNSEN & GIROUX
                                     1103 Delaware Avenue
                                     Buffalo, New York 14209
                                     716-854-0007
                                     ihayes@cpjglaborlaw.com
                                     cmorrison@cpjglaborlaw.com


                                     Attorneys for Plaintiffs