**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**ORETHA BEH, RUBY CASON, BRIANA**
**KINCANNON and KIMBERLY BALKUM,**
**individually and on behalf of all persons**
**similarly situated,**

                        **Plaintiffs,**

            -versus-                              No. 1:19-CV-01417 JLS  MJR

**COMMUNITY CARE COMPANIONS INC.,**
**ALEXANDER J. CARO, MARK GATIEN,**
**INTERIM HEALTHCARE OF ROCHESTER,**
**INC., and JAMES WATSON,**

                        **Defendants.**
------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION


James Reif (*pro hac vice*)
GLADSTEIN, REIF & MEGINNISS, LLP
39 Broadway, Suite 2430
New York, New York 10006
212-228-7727

Ian Hayes
Candace Morrison
Creighton, Johnsen & Giroux
1103 Delaware Avenue
Buffalo, New York 14209
716-854-0007

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

INTRODUCTORY STATEMENT .................................................................1

ARGUMENT .............................................................................................2

   PLAINTIFFS' PROPOSED SUBCLASSES SHOULD BE CERTIFIED
   PURSUANT TO FRCP 23 ......................................................................2

     I.  THE CRITERIA FOR CLASS CERTIFICATION .........................4

       A.  FRCP 23(a)(1) ("Numerosity")...........................................4

       B.  FRCP 23(a)(2) and (3) ("Commonality" and "Typicality") ............5

       C.  FRCP 23(a)(4) ("Adequacy of Representation").................8

       D.  The Implied Requirement of Ascertainability .................8

       E.  FRCP 23(b)(3) ("Predominance"/"Superiority")................9

     II.  EACH SUBCLASS SHOULD BE CERTIFIED PURSUANT TO
       FRCP 23..........................................................................10

       A.  Subclass I (Overtime Compensation/Failure to Compensate For
         Travel Between Residences of CCC Clients at Regular Rates of Pay) ...........10

       B.  Subclass II (Overtime Compensation/Failure to Reimburse For
         Expenses Incurred For Travel Between Residences of CCC Clients)............13

       C.  Subclass III (Failure to Compensate at Agreed-Upon Rates of Pay For
         Travel Between Residences of CCC Clients) ..................15

       D.  Subclass IV (Failure to Reimburse for Expenses Incurred For Travel
         Between Residences of CCC Clients).........................16

       E.  Subclass V (Failure to Provide Plaintiffs With CCC Hiring Notice) .............17

       F.  Subclass VI (Failure to Pay Wages Within Seven Calendar Days of
         Workweek in Which Wages Earned)..........................19

     III.  THE REQUEST FOR APPOINTMENT OF CLASS COUNSEL
       SHOULD BE GRANTED ....................................................20

CONCLUSION..........................................................................................................................21

# TABLE OF AUTHORITIES

Page

CASES:

*Abdi v. Duke*, 323 F.R.D. 131 (W.D.N.Y. 2017), *class decertified on other ground*, *Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019)........................................7

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ................................8

*Atakhanova v. Home Family Care, Inc.*, No. 16-CV-6707 (KAM) (RML), 2020 WL 4207347 (E.D.N.Y. July 22, 2020)............................................................. *passim*

*Brecher v. Republic of Argentina*, 806 F.3d 22 (2d Cir. 2015)....................................................8, 9

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)..............................................................................10

*Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415 (W.D.N.Y. 2014)................................3, 4

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................................4

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)....................................................5

*Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100 (E.D.N.Y. 2011) .......................................................................................................................................7

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) .....................................7

*Gulino v. Bd. of Education of the City School Dist.*, 907 F. Supp. 2d 492 (S.D.N.Y. 2012)......................................................................................................................4

*Johnson v. Nextel Communications Inc.*, 780 F.3d 128 (2d Cir. 2015) ..........................................5

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ..........................................................3, 5, 6, 8

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .....................................4, 8

*Onosamba-Ohindo v. Barr*, 483 F. Supp. 3d 159 (W.D.N.Y. 2020), *reconsid. den.*, *Onosamba-Ohindo v. Searls*, No. 1:20-CV-00290 (EAW), 2021 WL 1169193 (W.D.N.Y. Mar. 29, 2021)...........................................................................7, 12 n.1

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014)..................................................................................................4

*In re Petrobas Sec. Lit.*, 862 F.3d 250 (2d Cir. 2017) ...................................................................8

*Roach v. T.L. Cannon Corp.*, 778 F.3d 481 (2d Cir. 2015) ............................................9

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ................................................. *passim*

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2011),
    *abrogated on other grounds by Wal-Mart Stores v. Dukes*, 564 U.S. 338
    (2011) .............................................................................................................................4

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ....................................7

*Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005)..................................6

*Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 831 N.Y.S.2d 760 (2007) ..........................19

*Velez v. 111 Atlas Restaurant Corp.*, No. 14-cv-6956, 2016 WL 9307471
    (E.D.N.Y. Aug. 11, 2016) ..............................................................................................6

*Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011) ...........................................................5

*Zivkovic v. Laura Christy LLC*, 339 F.R.D. 61 (S.D.N.Y. 2018) ...................................6

STATUTES:

United States Code:

    28 U.S.C. § 636(b)(1)(B) ..............................................................................................1

    28 U.S.C. § 636(b)(1)(C) ..............................................................................................1

    29 U.S.C. § 207(a)(1).....................................................................................................1

New York Civil Practice Law & Rules:

    § 901(a) .........................................................................................................................18

    § 901(b).........................................................................................................................19

New York Labor Law:

    § 191(1)(a) .............................................................................................................1, 3, 20

    § 193.................................................................................................................. *passim*

    § 195(1)............................................................................................................. *passim*

iv

§ 198(1-b)...............................................................................................................................19

§ 198(3)........................................................................................................................... *passim*

REGULATIONS:

12 NYCRR § 142-2.2 ...........................................................................................1, 3, 11, 14

RULES:

Federal Rules of Civil Procedure:

Rule 12(b)(6)...........................................................................................................................12

Rule 23 .......................................................................................................................... *passim*

Rule 23(a)(1) ................................................................................................................. *passim*

Rule 23(a)(2) ...........................................................................................................................5

Rule 23(a)(3) ...................................................................................................................5, 6, 7

Rule 23(a)(4) ....................................................................................................8, 11, 12 n.1, 20

Rule 23(b)(3) .....................................................................................................................9, 10

Rule 23(b)(3)(A)-(D) ...............................................................................................................9

Rule 23(c)(4) ...........................................................................................................................4

Rule 23(c)(5) ...........................................................................................................................3

Rule 23(g) ....................................................................................................................... 12, 20

## **INTRODUCTORY STATEMENT**

This is an action by home care workers employed by Community Care Companions, Inc. ("CCC") against CCC and its owners, defendants Caro and Gatien, (collectively "Defendants") to redress violations of 29 U.S.C. § 207(a)(1) (federal overtime compensation guarantee) and provisions of New York law, including (but not limited to) 12 NYCRR § 142-2.2 (overtime compensation guarantee), New York Labor Law ("LL") § 198(3) (guarantee of wage payment at agreed-upon rate), LL § 193 (guarantee of reimbursement of expenses incurred in performance of job requirement), LL § 195(1) (requirement of provision by employer to employee of written notice of employer contact information and wage and wage payment information) and LL § 191(1)(a) (guarantee of payment of wages within seven calendar days of workweek in which wages earned).

Plaintiffs move pursuant to FRCP 23 for certification of certain subclasses pertaining to their claims for redress for violations of § 142-2.2 and LL §§ 198(3), 193, 195(1) and 191(1)(a) and for appointment of class counsel.  They submit this Memorandum of Law in support of their motion.  This MoL should be read in conjunction with the Declaration of Alex Ritz, the Declaration of James Reif and Second Declaration of James Reif, the Declaration of Ian Hayes and the Declarations of Oretha Beh and Kimberley Balkum, all submitted herewith.

All pre-trial matters in this action were referred to the Magistrate Judge assigned to this action, pursuant to the Court's February 24, 2020 Order.  (Doc. 128).  Accordingly, Plaintiffs submit their Rule 23 motion to Hon. Michael J. Roemer for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).

# ARGUMENT

## PLAINTIFFS' PROPOSED SUBCLASSES SHOULD BE CERTIFIED PURSUANT TO FRCP 23.

CCC employed 1,380 persons as home care workers in the Western District of New York in one or more weeks between October 14, 2017 and January 3, 2020.  (Declaration of James Reif dated October 20, 2021 ("Reif Decl."), para. 6.  Plaintiffs seek certification pursuant to FRCP 23 of the following subclasses drawn from that universe of home care workers:

SUBCLASS I:  All persons employed by CCC as home care workers in the Western District of New York ("Relevant Area") on or after October 14, 2017 but on or before January 3, 2020 ("Relevant Period") (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who worked more than forty (40) hours in one or more workweeks but who were not compensated for the hours worked in each such week in excess of 40 hours at 1 ½ times their respective regular rates of pay, arising from CCC's failure to pay such persons for travel between residences of CCC clients at their respective regular rates of pay;

SUBCLASS II:  All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who worked more than forty (40) hours in one or more workweeks but who were not compensated for the hours worked in each week in excess of 40 hours at 1 ½ times their respective regular rates of pay, arising from CCC's failure to reimburse such persons for out-of-pocket expenses incurred as a result of travel between residences of CCC clients;

SUBCLASS III:  All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who traveled in the course of one or more workdays between the respective residences of two or more CCC clients being cared for by them but who were not compensated for such travel at their respective agreed-upon rates of pay;

SUBCLASS IV:  All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who traveled in the course of one or more workdays between the respective residences of two or more CCC clients being cared for by them but who were not reimbursed nor otherwise compensated for the expenses they incurred on account of such travel;

2

SUBCLASS V:  All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who were not provided, within ten (10) business days of their first day of employment by CCC, with a written notice containing the following information:  the rate at which (s)he was to be paid by CCC and the basis thereof; each allowance, if any, claimed by CCC as part of the minimum wage; the regular pay day designated by CCC; the frequency of CCC's payments of wages; identification of CCC as the person's employer and the "doing business as" name, if any, used by CCC; the physical address of CCC's main office or principal place of business and its mailing address, if different; CCC's telephone number; the person's regular hourly rate of pay by CCC and her/his overtime rate of pay by CCC;

SUBCLASS VI:  All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who were not paid wages by CCC within seven (7) calendar days of the end of each workweek in which the wages were earned;

(Reif Decl., para. 7).  Each of the foregoing subclass definitions relates to a particular New York cause of action:

| | | |
|---|---|---|
| Subclass I: | Overtime compensation (12 NYCRR § 142-2.2) | |
| Subclass II: | Overtime compensation (12 NYCRR § 142-2.2) | |
| Subclass III: | Compensation for travel time (Labor Law ("LL") § 198(3) and law of contracts) | |
| Subclass IV: | Failure to reimburse for on-the-job expenses (LL § 193) | |
| Subclass V: | Hiring notice (LL § 195(1)) | |
| Subclass VI: | Late payment of wages (LL § 191(1)(a)) | |

The putative membership of each subclass does not fully correspond to the membership of any other subclass, thereby making certification of separate subclasses necessary and appropriate. *See* FRCP 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 378-79 (2d Cir. 1997); *Chambery v. Tuxedo Junction Inc*., 10 F. Supp. 3d 415, 421 (W.D.N.Y. 2014).

FRCP 23 authorizes certification of two different kinds of classes.  The more frequent kind involves certification with respect to a cause of action.  But there is an important alternative kind of certification, which is certification with respect to one or more particular

*issues*.  *See* FRCP 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").  The Second Circuit has stressed the importance of issue certification and expressly encourage its use.

> District courts "should take full advantage of [Rule 23(c)(4)]'" to certify separate issues "in order … 'to reduce the range of disputed issues' in complex litigation" and achieve judicial efficiencies.

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2011) (citations omitted), *abrogated on other grounds by Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011); *accord*:  *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226-27 (2d Cir. 2006).  The Court of Appeals has specifically agreed that "courts may use subsection (c)(4) to single out issues for class treatment when the action as a whole does not satisfy Rule 23(b)(3)."  *Id*. at 227.  *See also Gulino v. Bd. of Education of the City School Dist.*, 907 F. Supp. 2d 492, 505 (S.D.N.Y. 2012) ("In the Second Circuit, district courts are directed to 'take full advantage of [subsection (c)(4)] to certify separate issues,'" quoting *Robinson*, *supra*).  This Court may grant Plaintiffs' motion on the basis of claim certification or issue certification.

## I. THE CRITERIA FOR CLASS CERTIFICATION

### A. FRCP 23(a)(1) ("Numerosity")

A precondition to class certification under FRCP 23 is that "the class is so numerous that joinder of all members is impracticable."  (FRCP 23(a)(1)).  Impractical does not mean impossible but only difficult or inconvenient.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  "[N[umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  *Accord*:  *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *Chambery*, 10 F. Supp. 3d at 420.  The larger a class or subclass, the greater the difficulty or inconvenience of joinder.

Other considerations that a court may take into account in evaluating such difficulty or inconvenience include, for example, financial resources of class members, the ability of putative class members to prosecute individual claims, geographic dispersion of class members and the interest in judicial economy. *Robidoux*, 937 F.2d at 936. Each putative subclass here is composed of *substantially more* than 40 members. *See* Declaration of Alex Ritz, paras. 4-6, 12-23; Reif Decl., paras. 8-12.

### B. FRCP 23(a)(2) and (3) ("Commonality" and "Typicality")

Numerous courts have observed that the requirements of commonality and typicality in Rule 23 "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A.*, 126 F.3d at 376 (citing authorities). The commonality requirement is met where even a single issue of law or fact is common to a class and a class-wide proceeding is capable of "generat[ing] common answers apt to drive the resolution of the" issue presented. *Wal-Mart Stores*, 564 U.S. at 349-50.

> The claims for relief need not be identical for them to be common; rather Rule 23(a)(2) simply requires that there be issues where resolution will affect all or a significant number of the putative class members.

*Johnson v. Nextel Communications Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

In *Atakhanova v. Home Family Care, Inc.*, No. 16-CV-6707 (KAM)(RML), 2020 WL 4207347, at *3 (E.D.N.Y. July 22, 2020), in granting a home care worker's motion for class certification of her New York overtime compensation and LL § 195(1) hiring notice claims, the court stated: "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that the defendants had a common policy or practice of unlawful labor practices." (Citation omitted). *See also Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("[C]laims by workers that their employers have unlawfully denied them wages

to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.").

Speaking to the overtime compensation claims, the *Atakhanova* court stated: "Even where 'there are some differences among employees,' such as responsibilities, hours worked, and salaries,' if '[a]ll potential class members are alleged to have been harmed by a common practice,' i.e., 'defendant's failure to adequate compensate employees for overtime hours,' the commonality requirement is met."  2020 WL 420737, at *4 (citation omitted).  The court likewise found commonality on the wage notice claims.  *Id*. at *5, quoting *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) ("The issues here," including "whether the class members received wage notices…that were in compliance with the law – will produce answers that apply to all plaintiffs within each subclass and drive the resolution of this litigation.") and citing *Velez v. 111 Atlas Restaurant Corp*., No. 14-cv-6956, 2016 WL 9307471, at *22 (E.D.N.Y. Aug. 11, 2016) (finding wage notice claims involved issues of fact and law common to every member of the proposed class).

The typicality requirement is satisfied where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented[.]"  *Robidoux*, 987 F.2d at 936-37.  *See also Marisol A*., 126 F.3d at 376 (Rule 23(a)(3) satisfied where putative representative's claim and claims of class members arise from same course of events and representative makes arguments in support of our claim similar to arguments (s)he would make on behalf of class to establish defendant's liability); *Scholtisek v. The Eldre Corp*., 229 F.R.D. 381, 392 (W.D.N.Y. 2005) (same).  Typicality does not require an identical course of conduct: the typicality requirement is satisfied where an employer violates the same law "in the same general fashion" vis-à-vis class members as vis-à-vis the class

representative.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986), quoting

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 159 n. 15 (1982).  *Accord:*

*Robidoux*, 987 F.2d at 937; *Onosamba-Ohindo v. Barr*, 483 F. Supp. 3d 159, 188 (W.D.N.Y.

2020), *reconsid. den.*, *Onosamba-Ohindo v. Searls*, No. 1:20-CV-00290 (EAW), 2021 WL

1169193 (W.D.N.Y. Mar. 29, 2021); *Abdi v. Duke*, 323 F.R.D. 131, 141 (W.D.N.Y. 2017), *class*

*decertified on other ground*, *Abdi v. McAleenan*, 405 F. Supp. 3d 467, 483 (W.D.N.Y. 2019).  In

*Ogilvy & Mather*, the district court had held Rule 23(a)(3) was not satisfied because the

representative was claiming sex discrimination in her employer's denial of a transfer from one

department to another whereas the claims of the class members concerned sex discrimination by

the employer in training activities and promotions.  The Second Circuit held the lower court had

abused its discretion in decertifying the class on that basis.  Because the representative and the

class members were discriminated against "in the same general fashion," Rule 23(a)(3) was

satisfied notwithstanding that the representative suffered discrimination on an attempted transfer

whereas the class members suffered discrimination in training activities and promotions.

              This standard governs and has been applied in wage-and-hour cases.  "In a wage

case, the typicality requirement is satisfied where the named plaintiff and proposed class

members 'were subject to the same employment scheme' and their claims are based on 'the same

course of events and legal theory.'"  *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281

F.R.D. 100, 105 (E.D.N.Y. 2011) (quotations omitted).  "Typicality is present even if there are

factual differences among the claims if the named plaintiff alleges that defendants engaged in the

same unlawful conduct to toward them."  *Atakhanova*, 2020 WL 4207437, at *5.  Thus, in

*Atakhanova*, that the overtime violations suffered by the home care plaintiff did not occur in the

same period as those suffered by class members, that the amount of the underpayment differed,

and that the named plaintiff worked only day-shifts whereas class members worked 24-hour shifts or as live-in aides did not defeat typicality.  The failure to pay proper overtime was "the core" of the plaintiff's complaint and that core failure was typical of the claims of the potential class members notwithstanding the difference in the period when the violations occurred, the difference in the amount of the underpayment and the difference in the types of shifts class members normally worked.  *Id.* at * 5-6.

### C.  <u>FRCP 23(a)(4) ("Adequacy of Representation")</u>

To show that named plaintiffs are adequate representatives of the class they would represent within the meaning of FRCP 23(a)(4),

> the named plaintiffs must "demonstrate that 'class counsel is qualified, experienced and generally able to conduct the litigation,'" and…that "'there is no conflict of interest between the named plaintiffs and other members of the plaintiff's class.'"

*Atakhanova*, 2020 WL 4207437, at *6, quoting *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001), quoting *Marisol A.*, 126 F.3d at 378.

### D.  <u>The Implied Requirement Of Ascertainability</u>

Courts have implied from the express terms of FRCP 23 a requirement of ascertainability, that is, the persons who are included in a class must be ascertainable:  absent the ability to make such a determination, a court will not be able to determine who is and who is not bound by a judgment on a class claim.  *In re Petrobas Sec. Lit.*, 862 F.3d 250, 260 (2d Cir. 2017); *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).  "'A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case.'"  *Brecher*, 806 F.3d at 24-25 (citation omitted).  That the boundaries of a class should be readily identifiable

8

> does not mean "identified"; ascertainability does not require a complete list of class members at the certification stage.  See 1 McLaughlin on Class Actions § 4:2 (11th ed. 2014) ("The class need not be so finely described, however, that every potential member can be specifically identified at the commencement of the action; it is sufficient that the general parameters of membership are determinable at the outset.").

*Id*. at 25 n. 2.  In short, "[t]he standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *Atakhanova*, 2020 WL 4207407, at * 7 (quotations omitted).

### E. FRCP 23(b)(3) ("Predominance"/"Superiority")

FRCP 23(b)(3) authorizes class certification where questions of law or fact common to class members predominate over question(s), if any, affecting only individual members, and a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.  The circumstances bearing on those standards are set forth in FRCP 23(b)(3)(A)-(D).

The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted).  "Typically, common issues predominate when liability is determinable on a class-wide basis, even where class members have individualized damages." *Atakhanova*, 2020 WL 4207437, at *8 (quotation omitted).  "Although 'a defense may arise and may affect different class members differently [this] does not compel that individual issues predominate over common ones.  As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not

automatically foreclose class certification under Rule 23(b)(3).'" *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (citations omitted).

## II.  EACH SUBCLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23

### A.  Subclass I (Overtime Compensation/Failure to Compensate For Travel Between Residences of CCC Clients at Regular Rates of Pay)

Subclass I consists of those CCC home care workers who in the Relevant Area and Relevant Period worked more than forty (40) hours in a workweek, including time for travel between the residences of separate CCC clients, but were not compensated for time worked in excess of 40 hours at 1 ½ times their respective regular rates of pay because CCC failed to compensate the worker for her/his time expended on travel between the residences of separate CCC clients at the worker's regular rate of pay.  There are approximately 379 persons in this Subclass, far exceeding the minimum of 40 that warrants a presumption that FRCP 23(a)(1)'s numerosity requirement is satisfied.  *See* Ritz Decl., paras. 4-5, 6(b), 8, 17-18.

Subclass I, like each of the other subclasses, is geographically diffuse, with large parts spread throughout both Erie and Monroe Counties.  Unlike employees in most industries, who work regularly with many other co-workers at the same location, CCC home care workers work by themselves in an isolated setting, each in the separate residence of the person they care for, with little contact with other CCC home care workers.  As a consequence of their limited level of formal education, most home care workers are relatively unsophisticated as to their legal rights.  The relatively modest potential recovery on an individual wage-and-hour claim operates to discourage low wage workers, such as home care workers, from pursuing a claim individually. Home care workers are financially disadvantaged in their ability to retain individual counsel, due to the low wages they are paid.  *See Atakhanova*, 2020 WL 4207347, at *1 (downstate home care

workers paid $10 per hour in 2014-2018).  And the relatively modest potential recovery not only discourages a home care worker from pursuing a wage-and-hour claim individually, it also operates as a disincentive for an attorney to take on such a lawsuit.  Particularly in the aggregate, these circumstances amply corroborate the presumption that joinder is impracticable.  *Robidoux*, 987 F.2d at 936.

The issues of fact and law common to all Subclass I members include:  (a) Whether CCC home care workers in the Relevant Area and Relevant Period who worked more than 40 hours in a workweek, including time expended on travel between the residences of separate CCC clients, and were not compensated for such travel time at their respective regular rates of pay were paid for their work in excess of 40 hours at 1 ½ times their regular rates of pay, and (b) if not, whether CCC violated 12 NYCRR § 142-2.2?  Also: (c) Whether such travel is compensable under New York law?  It is clear there will be a common answer to each of those questions.

Beh's and Balkum's circumstances relative to the aforesaid questions are typical of those of the members of Subclass I.  *See* Ritz Decl., para. 24(b) and *id*., para. 6(b).

As to FRCP 23(a)(4), Beh and Balkum are willing and able to represent the interests of members of Subclass I in pursuit of monetary redress for CCC's alleged violations of New York's overtime compensation requirement, LL § 198(3) and New York contract law.  Each was one of the Plaintiffs to whom CCC made an offer of judgment but who declined such offer.  *See* Declaration of Oretha Beh ("Beh Decl.") paras. 8-9; Declaration of Kimberley Balkum ("Balkum Decl."), para. 4.  There is no known conflict between the interests of the putative subclass representatives and those of putative subclass members.  Proposed class

11

counsel are qualified, experienced and able to conduct this litigation.[1]  Prior to commencement

of this litigation, Attorney Hayes interviewed approximately 35 CCC home care workers.  In the

course of the litigation, each proposed class counsel has spoken to dozens of Plaintiffs about the

facts and circumstances pertaining to the claims in this action.  They have represented several

Plaintiffs in depositions conducted by Defendants.  *See* Second Declaration of James Reif ("2d

Reif Decl.") and Declaration of Ian Hayes ("Hayes Decl.").  They have successfully defeated

Defendants' attempt to obtain dismissal of this action pursuant to FRCP 12(b)(6), *see* Docs. 114,

118, 139, 185 and 235, and have successfully litigated Plaintiffs' motion for leave to disseminate

a notice of this action to prospective plaintiffs, *see* Docs. 94-99 and 137, and Plaintiffs' motion

for leave to amend their pleading to include late-payment-of-wages claims.  *See* Docs. 226-228,

234, 241, 248 and 259.  There does not appear to be any serious question as to the adequacy of

representation in this matter.

   As to ascertainability, Subclass I is defined by employment by CCC in the

performance of home care duties within a specified District and within a specified time period.

Indeed, CCC's home care employees are identified by CCC itself by the job titles of "Personal

Care Assistant" and "Home Health Aide."  *See* Second Amended Collective And Class Action

Complaint, para. 1 (Doc. 242).  Subclass I is further defined pursuant to a set of readily

identifiable facts pertaining to the claim to which class certification pertains.  We say 'readily

identifiable facts' because membership in Subclass I is readily determinable by reference to

*CCC's own time and pay records.  See* Ritz Decl., paras. 4-5, 6b.  Thus the relevant criteria are

objective and administratively feasible, and no mini-hearing as described in *Brecher* will be

---

[1] While technically this consideration is now examined pursuant to FRCP 23(g), rather than under FRCP 23(a)(4) as formerly, "the analysis remains the same."  *Onosamba-Ohindo*, 483 F. Supp. 3d at 189 n. 7 (citations omitted).

necessary in order to determine whether a person is or is not in Subclass I and thus is or is not

bound by any resultant judgment concerning the claim to which that Subclass relates.

Accordingly, membership in Subclass I is ascertainable.

Finally, the questions of fact and law common to Subclass I predominate over

questions, if any, affecting only individual members with respect to the overtime compensation

claims underlying Subclass I. Moreover, there does not appear to be an alternative mechanism

available for adjudicating the overtime compensation and other claims of Subclass I members

that would allow for a fairer and more efficient adjudication of those claims of class members.

Putative class members have not indicated an interest in individually controlling prosecution of

their claims. To the contrary, more than 190 CCC home care workers joined this case by opting

in on Plaintiffs' federal claims, thereby choosing to be represented by the Named Plaintiffs on

those claims. *See* 29 U.S.C. § 216(b) (action to redress violation of FLSA overtime and/or

minimum wage guarantee may be maintained by one or more employees "for and in behalf of

himself or themselves *and other employees similarly situated*" (emphasis added)). To the

knowledge of Plaintiffs' counsel, no CCC home care worker has individually asserted in any

forum any of the claims that are the bases of the class claims herein. The Subclass I claims

parallel the federal claims in this action. There does not appear to be any difficulties in

managing any of the proposed class claims.

### B. Subclass II (Overtime Compensation/Failure to Reimburse For Expenses Incurred For Travel Between Residences of CCC Clients)

Subclass II consists of CCC home care workers who in the Relevant Area and

Relevant Period worked more than forty (40) hours in a workweek, including time for travel

between the residences of separate CCC clients they were caring for, but who were not

reimbursed for the expenses they incurred for that travel.  Subclass II includes approximately 392 CCC home care workers.  *See* Ritz Decl., paras. 4, 5, 6d, 10, 17 and 19.  This too substantially exceeds the minimum of 40 that creates a prescription of numerosity.  The same additional circumstances that demonstrate joinder would be difficult or inconvenient for members of Subclass I, *see* pages 10-11 above, confirm that joinder similarly would be difficult or inconvenient for members of Subclass II.

The issues of fact and law common to all Subclass II members include: (a) Whether CCC home care workers in the Relevant Area and Relevant Period who worked more than 40 hours in a workweek, including time expended on travel between the residences of separate CCC clients, and were not reimbursed for expenses incurred in such travel were compensated at 1 ½ times their regular rates of pay for work performed in excess of 40 hours, and (b) if not, whether CCC violated 12 NYCRR § 142-2.2?  Also (c): Whether CCC's failure to reimburse members of Subclass II for the expenses they incurred for such travel violated LL § 193?  Here too, there will be a common answer to each of these questions.

Beh's and Balkum's circumstances relative to these questions are typical of those of the members of Subclass II.  *See* Ritz Declaration, para. 24d and *id.*, para. 6d.

Beh and Balkum are willing and able to represent the interests of members of Subclass II in pursuit of monetary redress for CCC's alleged violations of New York's overtime compensation requirement and LL § 193.  *See* Beh Decl., paras. 8-9 and Balkum Decl., para. 4. Each of the other circumstances demonstrates their adequacy as representatives of Subclass II. *See* 2d Reif Decl. and Hayes Decl.

The same circumstances that demonstrate membership in Subclass I is readily ascertainable show that membership in Subclass II is readily ascertainable.

The questions of fact and law common to Subclass II members, which are analogous and similar to the questions of fact and law common to Subclass I members, predominate over questions, if any, affecting only individual members with respect to the overtime compensation and § 193 claims underlying Subclass II.  Here too, a class action would be superior to alternative mechanisms with respect to the fair and efficient adjudication of class members' claims.  The circumstances relative to Subclass I that support a predominance and superiority determination with respect to that Subclass, *see* page 13 above, similarly support such a determination with respect to Subclass II.

### C.  Subclass III (Failure to Compensate at Agreed-Upon Rates of Pay for Travel Between Residences of CCC Clients)

Subclass III consists of CCC home care workers who in the Relevant Area and Relevant Period traveled in the course of one or more workdays between the respective residences of two or more CCC clients being cared for by them but were not compensated for such travel at their respective agreed-upon rates of pay.  This Subclass includes approximately 704 home care workers.  *See* Ritz Decl., paras. 4-5, 6a, 7, 17 and 20.  It is self-evident that Subclass III satisfies Rule 23(a)(1).  *See also* pages 10-11 above.

The questions of fact and law common to all members of Subclass III include: (a) Whether CCC home care workers in the Relevant Area and Relevant Period were reimbursed for expenses they incurred in traveling from the residence of one CCC client to the residence of another and (b) if not, was this a violation of LL § 193 and/or § 198(3)?  Plainly, these questions will have common answers for members of Subclass III.

Beh's and Balkum's circumstances relative to those questions are typical of those of members of Subclass III.  *See* Ritz Declaration, para. 24a and *id.*, para. 6a.

Beh and Balkum are willing and able to represent the interests of members of Subclass III, just as they are willing and able to represent the interests of members of Subclass I and members of Subclass II. *See* Beh Decl., paras. 8-9; Balkum Decl., para. 4. And their counsel are qualified, experienced and able to prosecute the Rule 23 claims of this Subclass. *See* 2d Reif Decl. and Hayes Decl.

The membership of Subclass III is readily ascertainable for the same reasons the memberships of Subclass I and of Subclass II are readily ascertainable.

Given the definition of Subclass III, it is difficult to see how there could be an issue affecting only individual members of this Subclass much less that such an issue could predominate over the common issues. It is also difficult to see how some alternative available mechanism would be superior to a class action here in fairly and efficiently adjudicating the claims of members of Subclass III. The considerations that support a predominance and superiority determination for Subclasses I and II, *see* page 13 above, likewise support such a determination for Subclass III.

### D.  Subclass IV (Failure to Reimburse For Expenses Incurred For Travel Between Residences of CCC Clients)

Subclass IV consists of CCC home care workers who in the Relevant Area and Relevant Period traveled in the course of one or more workdays between the respective residences of separate CCC clients being cared for by them but were not reimbursed for the expenses they incurred in connection with such travel. Subclass IV includes approximately 690 CCC home care workers. *See* Ritz Decl., paras. 4-5, 6c, 17 and 21; *see also* pages 10-11 above. Subclass IV plainly satisfies the numerosity requirement.

The questions of fact and law common to all members of Subclass IV include: (a) Whether CCC home care workers in the Relevant Area and Relevant Period who traveled

between the respective residences of CCC clients being cared for by them incurred expenses arising from such travel, (b) whether they were reimbursed for such expenses and (c) whether CCC's failure to reimburse them for such expenses violated LL § 193 and/or § 198(3)? Members of Subclass IV will have common answers to these questions.

Here too, Beh's and Balkum's circumstances relative to these questions are typical of those of members of Subclass IV.  *See* Ritz Decl., paras. 4-5, 6c and 24c.

Beh and Balkum are willing and able to represent the interests of the members of Subclass IV.  *See* Beh Decl., paras. 8-9 and Balkum Decl., para. 4.  Their attorneys are qualified, experienced and able to pursue the claims of members of this Subclass.  *See* 2d Reif Decl. and Hayes Decl.

The membership of Subclass IV is readily ascertainable.  *See* pages 12-13 above.

The questions of fact and law common to Subclass IV, as defined, predominate over any question bearing on the claims being asserted by that Subclass that might arise with respect to an individual Subclass member.  For the same reasons as certification of Subclasses I, II and III is superior to any other ascertainable method for adjudicating the claims of members of those Subclasses, certification of Subclass IV is superior to any other available method for adjudicating the claims of members of Subclass IV.

**E.  Subclass V (Failure by CCC to Provide CCC Hiring Notice Within Ten Business Days of First Day of Employment by CCC)**

Subclass V is comprised of CCC home care workers in the Relevant Area and Relevant Period who were not provided by CCC with a written notice within ten (10) business days of the first day of employment by CCC that identified CCC as their employer and provided certain contact information for CCC and certain information pertaining to the worker's wage rate

and to payments of wages to that worker.  There are approximately 1,123 members of this Subclass.  *See* Ritz Decl., paras. 12-17 and 22.  No serious contention can be made that this Subclass does not satisfy FRCP 23(a)(1).

The questions of fact and law common to all members of Subclass V include: (a) Whether CCC provided Subclass members with a written notice within ten (10) business days of the home care worker's first day of employment by CCC that identified CCC as her/his employer and provided the CCC contact information and CCC wage rate and wage payment information identified in § 195(1), and (b) if not, did CCC violate § 195(1)?  The answer to each of these questions will be the same for all members of Subclass V.

CCC failed to provide Beh and Balkum with the aforesaid notice.  Their respective circumstances are thus typical of those of all members of Subclass V.  *See* Ritz Decl., paras. 12-16, 24e and Exs. F and G.

Beh and Ritz are willing and able to represent members of Subclass V and they and their attorneys are otherwise qualified to do so.  *See* Beh Decl., paras. 8-9, Balkum Decl., para. 4; *see also* Second Declaration of James Reif and Declaration of Ian Hayes.

The membership of Subclass V is demonstrably ascertainable.

There do not appear to be any issues pertaining to individual members of the Subclass that would predominate over the issues that are common to the entire Subclass.  As is the case with the other Subclasses, certification of Subclass V is superior to any other available method for litigating the claims of all members of Subclass V.

There is a circumstance which is unique to Subclass V that warrants mention. The claims of Subclasses I, II, III, IV (and VI) could as a theoretical matter be litigated as class claims in state court.  *See* New York CPLR § 901(a).  That is to say, a class action in state court

on those claims would at least as a theoretical matter be available as a means of adjudicating the claims of members of these Subclasses.  However, the same cannot be said for the claims of members of Subclass V.  The statutory damages available to redress a violation of § 195(1), *see* LL § 198 (1-b), have been viewed as a penalty for violation of § 195(1), rather than as compensation to remedy such a violation.  In the express terms of CPLR § 901(b), "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."  *See*, *e.g.*, *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 831 N.Y.S.2d 760 (2007).  Thus, it is reasonably apparent that the Named Plaintiffs (or other CCC home care workers) could not maintain an action in the New York courts on behalf of the members of Subclass V in order to obtain the monetary redress for them that is available in this Court.  This circumstance highlights the importance of certification of Subclass V here, else the employer effectively escape financial responsibility for its violation of the rights under § 195(1) of more than a thousand home care workers.

### F.  Subclass VI (Failure to Pay Wages Within Seven Calendar Days of Workweek in Which Wages Earned)

Subclass VI consists of CCC home care workers in the Relevant Area and Relevant Period who were not paid wages earned on one or more occasions within seven (7) calendar days of the workweek in which the wages were earned.  There are 1,123 persons in this Subclass.  *See* Ritz Decl., paras. 4-5, 6e, 17 and 23; *see also* pages 10-11 above.  Here too, satisfaction of FRCP 23(a)(1) is beyond debate.

The issues of fact and law common to all members of Subclass VI include: (a) whether, on one or more occasions, each Subclass member was not paid wages earned within seven (7) calendar days of the conclusion of the workweek in which the wages were earned, and

(b) if so, did CCC violate LL § 191(1)(a)?  Here, the answer is common to the Subclass membership.

Beh's and Balkum's circumstances relative to these questions are typical of those of Subclass members.  *See* Ritz Decl., paras. 4-5, 6e and 24f.

Beh and Balkum are willing and able to represent members of Subclass VI, *see* Beh. Decl., paras. 8-9 and Balkum Decl., para. 4, and their counsel are qualified, experienced and able to represent this Subclass.  *See* 2d Reif Decl. and Hayes Decl.

The membership of Subclass VI is readily ascertainable in the same way the memberships of Subclasses I, II, III and IV are ascertainable.

The issues common to members of Subclass VI on their claims under § 191(1)(a) predominate over issues, if any, pertaining to individual members.  And the proposed class action by Subclass VI is superior to any available alternative method for adjudicating the § 191(1)(a) claims of members of Subclass VI.

## III.  THE REQUEST FOR APPOINTMENT OF CLASS COUNSEL SHOULD BE GRANTED.

Under the rubric of FRCP 23(a)(4), Plaintiffs have already demonstrated that proposed class counsel are amply qualified, experienced and able to serve as counsel for the proposed Subclasses.  There is no need to repeat that discussion here.  Pursuant to FRCP 23(g), the proposed class counsel should be appointed.

## CONCLUSION

For the foregoing reasons, the Court should make an Order pursuant to FRCP 23 certifying each of the Subclasses proposed by Plaintiffs and appointing James Reif, Esq. and Ian Hayes, Esq. as class counsel.

Dated:  October 20, 2021

Respectfully submitted,

*James Reif*

James Reif (*pro hac vice*)
GLADSTEIN, REIF & MEGINNISS LLP
39 Broadway, Suite 2430
New York, New York 10006
(212) 228-7727

Ian Hayes
Candace Morrison
CREIGHTON, JOHNSEN & GIROUX
1103 Delaware Avenue
Buffalo, New York 14209
(716) 854-0007

Attorneys for Plaintiffs

21