UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ORETHA BEH, RUBY CASON, BRIANA       1:19-CV-01417- JLS (MJR)
KINCANNON, and KIMBERLY BALKUM,
individually and on behalf of all persons
similarly situated,

                Plaintiffs,            REPORT and RECOMMENDATION

      v.

COMMUNITY CARE COMPANIONS INC.,
ALEXANDER J. CARO, MARK GATIEN,
INTERIM HEALTHCARE OF ROCHESTER,
INC., and JAMES WATSON,

                Defendants.
_____

## <u>INTRODUCTION</u>

       This case has been referred to the undersigned by the Honorable John L. Sinatra,

Jr., pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pretrial

matters and for hearing and reporting on dispositive motions for consideration by the

District Court.[1] (Dkt. Nos. 249). Before the Court is a motion for class certification and

appointment of class counsel brought by plaintiffs Oretha Beh and Kimberly Balkum. (Dkt.

No. 400). Also before the Court is a motion for entry and issuance of final judgments (Dkt.

No. 408) and a motion for attorney fees (Dkt. No. 474) brought by plaintiffs Ruby Cason,

Briana Kincannon, and numerous opt-in plaintiffs.

       For the following reasons, it is recommended that plaintiffs' motion for class

certification be granted in part and denied in part. It is further recommended that plaintiffs'

---

[1] This matter was originally assigned to the Honorable Lawrence J. Vilardo, who referred the matter to the
Honorable Hugh B. Scott. (Dkt. No. 128). The case was subsequent re-assigned to Judge Sinatra, who
later re-referred it to this Court.

motion for entry of final judgments and motion for attorney fees be denied without prejudice to renewal.

## PROCEDURAL BACKGROUND

On October 22, 2019, plaintiffs Oretha Beh, Ruby Cason, Briana Kincannon, and Kimberly Balkum ("plaintiffs" or "named plaintiffs") commenced this lawsuit against defendants Community Care Companions Inc. ("CCC"), Alexander J. Caro, Mark Gatien, Interim Healthcare of Rochester, Inc., and James Watson (collectively "defendants"). Plaintiffs are home care workers who allege that defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*., ("FLSA"), New York Codes, Rules and Regulations, 12 NYCRR § 142-2.2, and New York Labor Law, NYLL §§ 190, *et seq*., relative to overtime compensation, wage payment, reimbursement of expenses, and employer notice provisions. (Dkt. No. 1). Plaintiffs sought to bring both an FLSA collective action under 29 U.S.C. § 216(b), and a class action under Rule 23 of the Federal Rules of Civil Procedure.[2] (*Id*.).

On December 20, 2019, defendants CCC, Caro, and Gatien moved to dismiss the complaint for failure to state a claim on which relief could be granted (Dkt. No. 105). That motion was subsequently withdrawn by stipulation of the parties. (Dkt. No. 107). Pursuant to the stipulation, plaintiffs filed an amended complaint on January 3, 2020. (Dkt. No. 111). Defendants then refiled their motion to dismiss based on the amended complaint. (Dkt. No. 114). On April 20, 2020, Magistrate Judge Scott issued a Report and Recommendation recommending that defendants' motion to dismiss be denied. (Dkt. No.

---

[2] On March 26, 2020, the parties filed a stipulation reflecting their agreement as to the scope, form, and manner of distribution of a notice to be distributed to similarly situated home care workers employed by defendants notifying them of their right to become opt-in plaintiffs in this FLSA collective action. (Dkt. No. 136). Judge Scott approved that stipulation by Order dated March 27, 2020. (Dkt. No. 137).

139). On January 11, 2021, Judge Sinatra adopted Judge Scott's recommendations over the objections of defendants and issued a Decision and Order denying the motion to dismiss. (Dkt. No. 235).

On November 30, 2020, plaintiffs sought leave to further amend their complaint to add claims for untimely payment of wages. (Dkt. No. 226). Leave to amend was granted by Order of Judge Scott issued February 1, 2019. (Dkt. No. 241). Plaintiffs filed a second amended complaint on February 3, 2019, which is now the operative pleading here. (Dkt. No. 242). Defendants answered (Dkt. Nos. 245-47), and the parties proceeded with pre-certification discovery.

On September 29, September 30, and December 27, 2021, the Clerk of Court issued Interim Judgments in favor of a total of 152 named and opt-in plaintiffs who had accepted Fed. R. Civ. P. 68 offers of judgment by defendants. (Dkt. Nos. 263–397; 447–463).

On October 20, 2021, the remaining 61 named and opt-in plaintiffs filed a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure based on defendants' alleged violations of NYCRR § 142-2.2 and NYLL §§ 198(3), 193, 195(1) and 191(1)(a). (Dkt. Nos. 400-407). Defendants filed a response in opposition to the class certification. (Dkt. Nos. 416-419). Plaintiffs filed a reply. (Dkt. Nos. 424-427). Defendants filed a sur-reply. (Dkt. No. 428).

On November 5, 2021, the 152 plaintiffs who accepted offers of judgment filed a motion seeking entry of final judgments by the Clerk in favor of each movant consistent with the individual offers and notices of acceptance. (Dkt. No. 408-411). Defendants filed a response in opposition to the motion. (Dkt. No. 413). Plaintiffs filed a reply. (Dkt. No.

414). On December 3, 2021, at the direction of Judge Sinatra, defendants filed a letter advising of the status of their payments as set forth in the accepted offers of judgment. (Dkt. No. 424).

The Court heard oral argument as to the motion for class certification on December 17, 2021, at the conclusion of which additional briefing was requested on the issue of Article III standing to bring certain NYLL claims. The parties submitted supplemental briefing (Dkt. Nos. 468; 470), and responses (Dkt. Nos. 471; 472-73). On April 1, 2022, defendants filed a notice of supplemental authority relative to this motion. (Dkt. No. 479). On April 8, 2022, plaintiffs filed a letter in response to defendant's supplement authority, (Dkt. No. 483), to which defendants responded by letter filed April 11, 2022 (Dkt. No. 484). The Court considered the motion for class certification submitted at that time.

On March 1, 2022, the 152 plaintiffs who accepted offers of judgment filed a motion seeking attorney fees. (Dkt. Nos. 474-76). Defendants filed a response in opposition. (Dkt. Nos. 477-78). Plaintiffs filed a reply. (Dkt. Nos. 480-82). The Court heard oral argument as to the motion for attorney fees on April 14, 2022, at which time it considered the motion submitted for decision.[3]

## **COMPLAINT ALLEGATIONS**

The Second Amended Collective and Class Action Complaint ("Complaint") seeks redress on behalf of personal care assistants and home health aides (collectively referred to as "home care workers") who were employed by one or more defendants in home care services businesses with the purpose of providing care to individual clients. (Dkt. No. 242, ¶¶ 1). The named plaintiffs, Oretha Beh, Ruby Cason, Brianna Kincannon, and Kimberly

---

[3] Following oral argument, plaintiffs also filed a letter addressing an inquiry by the Court regarding the retainer agreements between counsel for plaintiffs and their clients. (Dkt. No. 486).

Balkum, are all residents of New York State who were employed as either home health aides or personal care assistants during various periods of time between 2013 to present. Defendants are corporate entities or individuals involved in operating said home care services enterprises in the Western District of New York. (*Id.*, ¶¶ 6-10). CCC is a domestic business corporation organized under the laws of New York with its principal place of business in Smithtown, New York. (*Id.*). Alexander J. Caro is an individual residing in Smithtown, New York who is the owner of CCC. (*Id.*). Mark Gatien is an individual residing in Patchogue, New York, who is the Chief Executive Officer of CCC. (*Id.*). Interim Healthcare of Rochester is a domestic business organized under the law of New York with places of business in Rochester and Buffalo, New York. (*Id.*). James Watson is an individual who is the sole shareholder and operator of Interim Heathcare. (*Id.*).[4] It is alleged that on or about October 13, 2017, CCC acquired several franchise home care businesses operated by Interim Healthcare. (*Id.*, ¶¶ 16-17). Employees, including the named plaintiffs, who were previously employed by Interim Healthcare became employed by CCC as home care workers performing the same tasks as their previous employment. (*Id.*).

Home care work was performed in the residences of individual clients and included tasks such as bathing and cleaning clients, doing laundry, preparing meals, ensuring clients take medications properly, helping clients get in and out of bed, maintaining clients' hygiene, and taking clients to medical or other appointments. (*Id.*, ¶ 18). These employees performed both "on-the-clock" work, which is work formally assigned to a home care work which much be performed within a specified frame of hours, and "off-the-clock" work,

---

[4] Neither Interim Healthcare nor James Watson have appeared in this action. Default judgment has not been sought against either.

which is work that is not formally assigned and need not be performed within a specified frame of hours, such as travel between client residences. (*Id.*, ¶ 19). Employees were required by CCC and Interim to provide home care services for more than one client in each workday. (*Id.*, ¶ 20).

Plaintiffs allege that defendants failed to pay named plaintiffs and other home care employees for (1) contractual wages for work performed, (2) wages at not less than the applicable minimum wage rates for work performed, (3) wages at not less than 1.5 times said employees' regular rates of pay for work performed in each workweek in excess of 40 hours, (4) reimbursements for expenses incurred in travelling between respective residences of two or more of defendants' clients, (5) for purchases of uniforms and for expenses incurred in laundering uniforms, (6) one hour's pay at the applicable minimum hourly wage rate for each workday in which the spread of hours for work performed exceeds ten hours, (7) one hour's pay at the applicable minimum hourly wage rate for each day in which an employee is subjected to a split shift, and (8) payment of wages weekly within seven calendar days of the end of the workweek in which the wages are earned, and no later than the regular pay day. (*Id.*, ¶ 1).

Plaintiff also allege that defendants caused them to make payments by separate transactions that would not be permitted as deductions from wages. (*Id.*). Plaintiffs claim that compelled expenditures, such as for the costs of travel during a workday and for the purchase of uniform scrubs, were improperly deducted from their wages or they were required to make such purchases directly without reimbursement.

The complaint further alleges that defendants failed to provide plaintiffs, at time of hiring or within ten business days of first employment, written notice ("hiring notice") of

his or her rate of pay, allowances, regular pay day, name of each employer and any name used by it, physical address of employer's main office, principal place of business and/or mailing address, and employer's telephone number. (*Id*., ¶ 1).

Lastly, the complaint alleges that defendants failed to provide to plaintiffs, with each payment of wages, a written statement listing the dates of each pay period corresponding to the payment of such wages, name of employer with address and telephone number, rate of pay and basis thereof, gross wages, deductions, claimed allowances, net wages, regular hourly rate(s) of pay, overtime rate(s) of pay, number of regular hours worked, and number of overtime hours worked. (*Id*., ¶ 1).

The claims for failure to pay overtime arise under 29 U.S.C. § 207(a)(1) and 12 NYCRR § 142-2.2. (Dkt. No. 242, ¶ 2). The claims for failure to pay wages at the applicable state-mandated minimum wage rates arise under NYLL § 198(3) and New York contract law. (*Id*.). The claims for failure to provide written notice of requirement information, and failure to furnish required wage statements together with each wage payment arise under NYLL § 195(1) and (3), respectively. (*Id*.). The claims for failure to reimburse employees for payments employers required employees to make by separate transaction arise under NYLL § 193. (*Id*.). The claims for failure to timely reimburse employees for purchase of uniforms and to provide employees with maintenance pay for laundering/maintenance of uniforms arise under NYCRR § 142-2.5(c). (*Id*.). The claims for failure to compensate employees for spreads of hours exceeding ten hours or for split shifts arise under NYCRR § 142-2.4(b). (*Id*.). The claims of failure to pay wages weekly and within seven calendar days of the end of the workweek in which the wages were

earned by the regular pay day arise under NYLL § 191(1)(a) and 29 U.S.C. § 207(a)(1) and 260. (*Id.*).

**I.**   **MOTION FOR CLASS CERTIFICATION**

Plaintiffs move for Rule 23 class certification of certain subclasses pertaining to their claims of violations of NYCRR § 142-2.2 (overtime compensation), NYLL § 198(3) (wage payment at agreed-upon rate), NYLL § 193 (reimbursement of expenses incurred in performance of job requirement), NYLL § 195(1) (provision of written notice of employer contact information and wage and wage payment information), and NYLL § 191(1)(a) (payment of wages within seven calendar days of workweek in which wages earned). (Dkt. Nos. 400; 407).

For purposes of class certification discovery, the parties agreed to the selection of 92 home care workers employed by CCC during the relevant period of October 14, 2017 through January 3, 2020 who would serve as and constitute a representative sample of the potential class members. (Dkt. Nos. 401, ¶ 3; 402, ¶ 8). Plaintiffs calculate that CCC employed a total of 1,380 individuals as home care workers in the Western District of New York during the relevant period. (Dkt. No. 402, ¶ 6). The representative plaintiffs were subject to interrogatories and document requests, with 40 of those individuals subject to deposition by defendants. (*Id.*, ¶ 8). CCC produced time, pay, and other records particular to each of the representative plaintiffs, from which plaintiffs have made determinations about hours and compensation, travel time and expenses, receipt of hiring notices, and timing of wage payments pertaining to all potential class members. (*See generally* Dkt. No. 401).

Plaintiffs propose certification of the following subclasses:

SUBCLASS I: All persons employed by CCC as home care workers in the Western District of New York ("Relevant Area") on or after October 14, 2017 but before January 4, 2020 ("Relevant Period") (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who worked more than forty (40) hours in one or more workweeks but who were not compensated for the hours worked in each such week in excess of 40 hours at 1 ½ times their respective regular rates of pay, arising from CCC's failure to pay such persons for travel between residences of CCC clients at their respective regular rates of pay;

SUBCLASS II: All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who worked more than forty (40) hours in one or more workweeks but who were not compensated for the hours worked in each such week in excess of 40 hours at 1 ½ times their respective regular rates of pay, arising from CCC's failure to reimburse such persons for out-of-pocket expenses incurred as a result of travel between residences of CCC clients;

SUBCLASS III: All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who traveled in the course of one or more workdays between the respective residences of two or more CCC clients being cared for by them but who were not compensated for such travel at their respective agreed-upon rates of pay;

SUBCLASS IV: All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who traveled in the course of one or more workdays between the respective residences of two or more CCC clients being cared for by them but who were not reimbursed nor otherwise compensated for the expenses they incurred on account of such travel;

SUBCLASS V: All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who were not provided, within ten (10) business days of their first day of employment by CCC, with a written notice containing the following information: the rate at which (s)he was to be paid by CCC and the basis thereof; each allowance, if any, claimed by CCC as part of the

minimum wage; the regular pay day designated by CCC; the frequency of CCC's payments of wages; identification of CCC as the person's employer and the "doing business as" name, if any, used by CCC; the physical address of CCC's main office or principal place of business and its mailing address, if different; CCC's telephone number; her/his regular hourly rate of pay by CCC and her/his overtime rate of pay by CCC; and

SUBCLASS VI: All persons employed by CCC as home care workers in the Relevant Area in the Relevant Period (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who were not paid wages by CCC within seven (7) calendar days of the end of each workweek in which the wages were earned.

(*Id*.).

Plaintiffs propose that the Court grant their motion on the basis of either claim certification or issue certification under Rule 23(c)(4). *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); s*ee also In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (explaining that where the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement, a court may employ Rule 23(c)(4)(A) to certify a class on a particular issue).

Defendants oppose class certification for each of the proposed subclasses. (Dkt. No. 418). They argue that plaintiffs' application lacks evidence relating to the claims and experiences of other members of the putative classes and relies instead on conclusory allegations which do not meet the preponderance of the evidence standard applicable to Rule 23 certification. Defendants further argue that the proposed subclasses are not certifiable because they will involve highly individualized questions which are not susceptible to generalized proof. In addition, defendants argue that proposed Subclass V, based upon alleged violations of NYLL § 195.1, has no legal basis.

## DISCUSSION

District courts customarily retain "broad discretion" on the issue of class certification. *Hicks v. T.L. Cannon Corp*., 35 F. Supp. 3d 329 (W.D.N.Y. Aug. 5, 2014); *accord Enea v. Bloomberg, L.P.*, 12 Civ. 4656, 2014 U.S. Dist. LEXIS 35613 (S.D.N.Y. Mar. 17, 2014). Further, "[i]n deciding class certification, courts must take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies the requirements[.]" *Hicks,* 35 F. Supp. at 350. "A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24, 42 (2d Cir. 2006). "It is understood that this Rule 23 inquiry may overlap with the merits of the underlying claims. When this occurs, courts are to consider the merits questions only to the extent they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Gordon v. Kaleida Health*, 08-CV-378S, 2014 U.S. Dist. LEXIS 41417 (W.D.N.Y. Mar. 27, 2014) (internal quotations and citations omitted). "The party seeking class certification bears the burden of establishing by a preponderance of evidence that each of Rule 23's requirements have been met." *Myers v. Hertz Corp*., 624 F.3d 537, 547 (2d Cir. 2010).

The four prerequisites for class certification pursuant to Federal Rule of Civil Procedure 23(a) are:

(1) Numerosity: "the class is so numerous that joinder of all members is impracticable;"
(2) Commonality: "there are questions of law or fact common to the class;"
(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and

(4) Adequacy: "the representative parties will fairly and adequately protect the interests of the class."

*See* Fed. R. Civ. P. 23(a). District courts may certify a case as a class action whenever the proposed class meets all four prerequisites in Rule 23(a) and meets the requirements set forth in one of the three subsections of Rule 23(b). *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001), *overruled on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d at 42. Here, plaintiffs contend that the proposed subclasses meets the requirements of subsection (b)(3), which allows for class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See* Fed. R. Civ. P. 23(b)(3).

The Court finds, for the reasons discussed in turn below, that plaintiffs have not met all four prerequisites for class certification set forth in Rule 23(a), nor have they satisfied the requirement for class certification set forth in subsection (b)(3) of Rule 23, as they pertain to proposed Subclasses I through IV (travel time and expense reimbursement). The Court also finds that plaintiffs have not made a sufficient demonstration of standing on behalf of themselves and other proposed class members defined under proposed Subclass V (wage notices). Therefore, the Court recommends that only Subclass VI, containing employees who were not paid on time, be certified.

### Standing for Plaintiffs and members of proposed Subclasses V and VI

In their opposition to the class certification motion, defendants argue that the Court lacks subject matter jurisdiction because, in light of recent Supreme Court precedent, neither the named plaintiffs, nor any other members of proposed Subclass V can

demonstrate standing to bring their claims of violation of NYLL § 195(1) which requires an employer to provide written "hiring notice" containing employer contact information and wage and wage payment information within ten days of hiring. Defendants further argue that plaintiffs and members of proposed Subclass VI lack standing to bring their claims of violations of NYLL § 191(1) which requires timely payments of wages by employers. Defendants do not challenge standing as to any of the other claims or issues plaintiffs seek to have certified.

Standing is a requirement in every federal case because it implicates the court's subject matter jurisdiction. *Cohan v. Movtady*, 751 F. Supp. 2d 436, 439 (E.D.N.Y. 2010); *quoting Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008). Further, an injury-in-fact is required to establish standing under Article III of the Constitution. *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021) To demonstrate an injury-in-fact, a plaintiff must show "the invasion of a (1) legally protected interest that is (2) concrete and particularized and (3) actual or imminent, not conjectural or hypothetical." *Id*. In the recent decision of *Transunion v. Ramirez*, the Supreme Court narrowed Article III standing requirements by holding that a plaintiff cannot establish an injury-in-fact, for purposes of standing, by relying entirely on a risk of future harm. 141 S. Ct. 2190 (2021). Simply stated, "[n]o concrete harm, no standing." *Id*. at 2214. The *TransUnion* Court explained that "[p]hysical or monetary harms readily qualify as concrete injuries under Article III, and various intangible harms—like reputational harms—can also be concrete." *Id*. at 2197. However, the Court also made it clear that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id*. at 2205

(internal quotations omitted). In the class action context, plaintiffs "must allege and show that they personally have been injured[.]" *Warth v. Seldin*, 422 U.S. 490, 503 (1975).

Although Plaintiffs allege that Defendants failed to furnish them and others with proper hiring notices, as required by NYLL § 195(1), they have not alleged that they suffered harm as a result of the failure. A mere statutory or procedural violation of the law is not, alone, sufficient to confer Article III standing. *See Harty v. West Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("Last Term, the Supreme Court clarified that a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself."). Indeed, only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court. *TransUnion*, 141 S. Ct. at 2205 (emphasis in original).

Courts in this Circuit have recently found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing. In *Francisco v. NY Tex. Care, Inc.*, a plaintiff alleged that class members did not receive wage and hour notices when they were hired and that their wage statements lacked information required under the NYLL. *See* 19-CV-1649, 2022 U.S. Dist. LEXIS 55633, at *16-17 (E.D.N.Y. Mar. 28, 2022). The court found that these claims were "insufficient to maintain a class action because, even if the unlawful policies were applied to all of the Class Members, Plaintiff could not demonstrate that the class members have suffered the same injury." *Id*. The court explained that from these allegations, it was not clear that the wage notice violations led to an "injury" that can be recognized by a federal court. *Id*. *See also Cespedes v. Newmark Wood Working Grp.*

*Inc.*, 20-CV-2464, 2022 U.S. Dist. LEXIS 147558, at *19-24 (E.D.N.Y. Aug. 17, 2022) (suggesting that plaintiff lacked standing to bring NYLL wage statement and wage notice claims and requiring plaintiff to replead complaint with sufficient allegations of a causal relationship between informational failure and any harm suffered in order for claim to survive); *Garrido v. House of Salads One LLC*, 20-CV-6072, 2022 U.S. Dist. LEXIS 58496, at *18 (E.D.N.Y. Mar. 30, 2022) (dismissing for lack of standing claims of improper hiring notices and wage statements under NYLL 195(1) and 195(3)); *You Qing Wang v. XBB, Inc.*, 18-CV-7341, 2022 U.S. Dist. LEXIS 57481, at *34-35 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."). Similarly, in *Perez v. Postgraduate Ctr. for Mental Health*, 19-CV-931, 2021 U.S. Dist. LEXIS 156116, at *21-22 (E.D.N.Y. Aug. 18, 2021), the district court ruled that plaintiff's claim for damages based on his wage notices not showing the full name of his employer failed for lack of standing. In the absence of allegations that plaintiff did not understand who his employer was or where the employer was located, the court found no concrete harm. *Id*.

The Court finds the reasoning of these cases applicable and persuasive. Within their certification motion, plaintiffs here submit evidence that defendants failed to provide hiring notices to some employees and provided notices to other employees that lacked certain information or contained inaccuracies.[5] Plaintiffs Beh and Balkum do not state any

---

[5] The Court notes that the record here does not reflect uniform or consistent violations of the statutory hiring notice provisions, but instead reflects a wide variety of alleged "technical" deficiencies which would likely require individualized merits review, if the claims were actionable. A court in this district addressed a motion for certification of a subclass premised on NYLL wage notice violations under similar circumstances to the case at bar and denied certification on the basis that the requirement of commonality had not been met. *See Hardgers-Powell v. Angels In Your Home LLC*, 330 F.R.D. 89, 107 (W.D.N.Y. 2019). There, the court found that defendant's production of evidence showing that it had provided compliant notices to many employees undercut plaintiff's allegation that a common policy or practice of noncompliance existed, rather than that it resulted from oversight or administrative error. *Id*.

factual allegations relative to their standing or injuries suffered. Plaintiffs suggest that various harms could potentially stem from wage notice inadequacies, but they have not alleged concrete harm from said deficiencies, such as the inability to identify their employer to remedy compensation problems, or lack of knowledge about the rates or conditions of their pay. Although plaintiffs now seek to vindicate rights related to wage and hour violations, they have not linked such alleged harms or deprivations to the claimed violations of NYLL § 195(1). While the deficiencies in defendants' provisions of hiring notices may amount to violations of the labor law, neither plaintiffs nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court. *See Francisco*, 2022 U.S. Dist. LEXIS 55633, at *17 (citing *TransUnion*, 141 S. Ct. at 2205).

Plaintiffs cite numerous cases wherein courts have certified Rule 23 classes premised upon § 195(1) claims of employer failure to provide adequate hiring notices. *See Atakhanova v. Home Family Care, Inc.*, 16-CV-6707, 2020 U.S. Dist. LEXIS 129221 (E.D.N.Y. July 22, 2020); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018); *Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366, 375-78 (S.D.N.Y. 2017); *Velez v. 111 Atlas Rest. Corp.*, 14-CV-6956, 2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016). However, none of those cases directly addressed or analyzed Article III standing, and all were decided prior to the *TransUnion* and *Maddox* decisions setting forth more exacting standards for establishing an injury-in-fact.[6]

---

[6] The Court has also reviewed the cases of *Hicks v. T.L. Cannon Mgmt. Corp.*, 13-CV-6455-EAW, 2018 U.S. Dist. LEXIS 246171, at *18-20 (W.D.N.Y Mar. 13, 2018) and *Imbarrato v. Banta Mgmt. Servs.*, 18-CV-5422, 2020 U.S. Dist. LEXIS 49740, at *14-25 (S.D.N.Y. Mar. 20, 2020), which addressed challenges to Article III standing in the context of New York Wage Theft Prevention Act claims. In both cases, the district courts concluded that plaintiffs had established standing to bring wage statement or hiring notice claims because their employers' violations of procedures created by statute resulted in concrete injury or risk of harm. However, in making those decision the *Hicks* and *Imbarrato* courts relied on the holding of

Further, the Court rejects plaintiff's argument that standing exists because they seek prospective injunctive relief. This assertion fails because the remaining named plaintiffs, Beh and Balkum, are former employees of defendants who face no real risk of future harm from the claimed hiring notice violations. *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465-66 (S.D.N.Y. Feb. 7, 2013) ("a plaintiff generally lacks standing to seek injunctive or declaratory relief against his or her former employer, as there is no prospect that he or she will be injured in the future"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 205 (S.D.N.Y. 2006) ("because injunctive relief would not be available to Plaintiff, nor to other class members who no longer work for Defendants, this basis for certification is inappropriate, and thus fails").[7]

Thus, the Court finds that Plaintiffs have failed to allege an actual, concrete injury resulting from defendants' alleged violations of NYLL § 195(1).

Conversely, the Court finds that Plaintiffs have established standing to bring their claims of untimely payment of wages. First, it is the law of the case, based on Judge Scott's Order dated February 1, 2021, that NYLL § 191(1), which states that a "manual

---

*Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016), stating that "to determine whether a procedure violation manifests injury in fact, a court properly considers whether [the legislature] conferred the procedural right in order to protect an individual's concrete interests." Since that time, the Supreme Court has rejected the standard articulated in *Strubel*, to hold that "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself." *See Harty*, 28 F.4th at 443. This Court does not rely on either of these district court decisions on the basis that they may be analyzed differently in the wake of *TransUnion* and *Maddox*.

[7] The Court also rejects plaintiffs' argument that Subclass V is unique because the claims for hiring notice violations cannot be litigated a class action in state court because the statutory damages available to redress a violation of NYLL § 195(1) are viewed as a penalty, rather than as compensation. Plaintiffs cite to case law holding that, under NY CPLR § 901(b), "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (2007). It is this Court's opinion that the essence of this state policy supports the conclusion that constitutional standing may be absent for bare violations of statutory provisions enforceable only by recovery of a penalty.

worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned," creates a private right of action for violations of its provisions. *See* Dkt. No. 214, pgs. 3-5; citing *Vega v. CM & Associates Construction Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019) (opining that allowing workers to bring suits promotes the legislative purpose of NYLL § 191, namely, to protect workers who are generally "dependent upon their wages for sustenance"); *see also Mabe v. Wal-Mart Assocs.*, 20-CV-591, 2022 U.S. Dist. LEXIS 53492 (N.D.N.Y. Mar. 24, 2022) (applying *Vega's* holding that the late payment of wages is an underpayment of wages and thus actionable under New York Labor Law). Further, although Plaintiffs eventually received payment of the wages they were owed, they were deprived of their earnings for a period of time. This deprivation constitutes a concrete injury. *See Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("[T]he temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing."); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) (a temporary loss of use of one's money constitutes an injury in fact for purposes of Article III, since the inability to have and use money to which one is entitled is a concrete injury); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (holding that delay in reimbursing money is an economic injury, which "is the epitome of concrete" for Article III standing purposes). This temporary withholding of money to which Plaintiffs were owed is a concrete, economic harm. *Gillette v. Zara USA, Inc.*, 20-CV-3734, 2022 U.S. Dist. LEXIS 143434, at *16-19 (S.D.N.Y. Aug. 10, 2022) (holding that, even in the wake of *TransUnion*, plaintiff has alleged monetary injury from defendants' withholding his wages beyond when they were legally obligated to pay him, even without any additional facts about how he

would have used his wages had they been received in a timely fashion); *see also Caul v. Petco Animal Supplies, Inc.*, 20-CV-3534, 2021 U.S. Dist. LEXIS 184652, at *9-10 (E.D.N.Y. Sept. 27, 2021) (finding that late payment of wages is a concrete harm sufficient to establish Article III standing); *but see Rosario v. Icon Burger Acquisition LLC*, 21-CV-4313, 2022 U.S. Dist. LEXIS 11454 (E.D.N.Y. Jan. 21, 2022) (ruling that although late payment of wages can constitute a concrete harm sufficient to confer standing, a plaintiff must provide factual allegations that he forewent the opportunity to invest or otherwise use the money to which he was entitled to show he suffered an injury); *Rath v. Jo-Ann Stores, LLC*, 21-CV-791, 2022 U.S. Dist. LEXIS 154200, at *18 (W.D.N.Y. Aug. 26, 2022) (acknowledging dispute among authorities on this issue and stating, "[i]f this Court accepts irregular or delayed payment as a concrete harm due to the loss of money or the loss of the time value of money, Plaintiff needs to state his loss of money or time value due to the delayed payment.").

For these reasons, the Court finds that plaintiffs and the other proposed class members in Subclass V lack Article III standing to sue for lack of receipt of proper hiring notices. Accordingly, the Court recommends that Subclass V not be certified and that the claims for violations of NYLL § 195(1) be dismissed for lack of subject matter jurisdiction. The Court further finds that plaintiffs and the other proposed class members in Subclass VI have Article III standing to sue for untimely payment of wages, and recommends that those claims not be dismissed for lack of subject matter jurisdiction.

**Four prerequisites for certification under Rule 23(a)**

*The Numerosity Requirement*.

The numerosity requirement is satisfied if the class is sufficiently numerous such that joinder of all members is "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). The Second Circuit has held that "numerosity is presumed at a level of 40 members[.]" *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Further, a plaintiff "is not obligated to identify the exact number of class plaintiffs." *Alexander A. ex rel. Barr v. Novello*, 210 F.R.D. 27, 33 (E.D.N.Y. 2002). *See also In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982) ("The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class.").

According to records provided by defendants, CCC employed approximately 1,380 home care workers in the Western District of New York during the relevant period of October 14, 2017 through January 3, 2020. (Dkt. No. 402, ¶ 6). The number of CCC workers in Subclass I is approximated at 379. (Dkt. No. 401, ¶ 18). The number of CCC workers in Subclass II is approximated at 392. (*Id*., ¶ 19). The number of CCC workers in Subclass III is approximated at 704. (*Id*., ¶ 20). The number of CCC workers in Subclass IV is approximated at 690. (*Id*., ¶ 21). The number of CCC workers in Subclass VI is approximated at 1,123. (*Id*., ¶ 23). Each estimate of the proposed subclasses greatly exceeds the requirement of the 40-member threshold. Moreover, defendants have not argued that plaintiff fails to meet the numerosity requirement. Accordingly, the Court finds

that plaintiffs satisfy the numerosity prerequisite of Rule 23(a)(1) for each of the viable subclasses.[8]

<u>*The Commonality and Typicality Requirements*</u>.

The commonality and typicality requirements "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982). As a result, the commonality and typicality requirements tend to merge into one another, and similar considerations "animate" the analysis of both Rule 23(a)(2) and Rule(a)(3). *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *citing Falcon*, 457 U.S. at 157, n. 13.

---

[8] Although not explicitly required by Rule 23(a), "courts [in this Circuit] have required that a class be identifiable before it can be properly certified." *Schear v. Food Scope A., Inc.,* 297 F.R.D. 114, 124 (S.D.N.Y. 2014) (internal citations omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012); *see Brecher v. Republic of Argentina*, 802 F.3d 303, 304 (2d Cir. 2015) ("the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.") In *Schear,* the Court found that the class was ascertainable because it was "easily identifiable from Defendants' records." 297 F.R.D. at 125. Likewise here, plaintiffs set forth objective criteria in their definition of Subclass VI, namely persons employed by CCC as home care workers in the relevant area during the relevant time who were not paid wages by CCC within seven calendar days of the end of each workweek in which the wages were earned. Thus, the class is identifiable and can easily be ascertained from defendants' records. Further, the Court rejects defendants' contention that this subclass definition creates a "fail-safe" class. *See Marin v. Apple-Metro, Inc.*, 12-CV-5274, 2017 U.S. Dist. LEXIS 165568, at *133 (E.D.N.Y. Oct. 4, 2017) ("A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment…In order words, in a fail-safe class, either class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment."). Here, the subclass definition does not presume that any worker is entitled to wage payment within seven days, nor that any untimely payment constitutes a violation of the law.

The commonality requirement is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Importantly, "commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 281 F.R.D. 100, 104 (E.D.N.Y. 2011) (internal citations and quotations omitted). Thus, a single question common to all class members can be sufficient to satisfy this requirement, "if the common question is at the core of the cause of action alleged." *Guzman v. VLM, Inc.*, 07-CV-1126, 2008 U.S. Dist. LEXIS 15821, at *17 (E.D.N.Y. Mar. 2, 2008) (internal quotations omitted). Similarly, typicality under Rule 23(a)(3) requires that the claims or defenses of the class representative be typical of those of the class. *Marisol A.*, 126 F.3d at 376; *Garcia*, 281 F.R.D. at 106 (*citing* Fed. R. Civ. P. 23(a)(3)). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove defendant's liability." *Id.*

Subclasses I and III seek to include CCC home care workers who were not paid for travel time between clients' homes, at overtime or regular rates, respectively. Subclasses II and IV seek to include CCC home care workers who were not reimbursed for expenses incurred for travel between clients' home, either in weeks they worked more than forty hours or in weeks they did not, respectively. Plaintiffs have identified several common questions of fact and law which they believe to be central to resolution of these claims. As to Subclasses I and III, the common questions identified by plaintiffs are: (1) whether class members were compensated for travel time (at overtime or regular rates depending on hours worked); (2) whether any non-compensation violated 12 NYCRR §

142-2.2, NYLL § 193, or NYLL § 198(3); and (3) whether such travel is compensable under New York law. As to Subclasses II and IV, the common questions identified by plaintiffs are: (1) whether class members were reimbursed for travel expenses; and (2) whether any non-reimbursement violated 12 NYCRR § 142-2.2, NYLL § 193, or NYLL § 193(3).

Subclass VI seeks to include CCC home care workers who were not paid wages on one or more occasions within seven calendar days of the workweek in which the wages were earned. As to Subclass VI, the common questions identified by plaintiffs are: (1) whether, on one or more occasions, class members were not paid timely paid wages; (2) did untimely payment violate NYLL § 191(1)(a).

Plaintiffs contend that their claims and the claims of the proposed class members stem "from the same course of conduct, [] raise common issues of law and fact, [] and are based on the same legal theories[.]" *See generally Morris v. Alle Processing Corp*., 08-CV-4874, 2013 U.S. Dist. LEXIS 64534 (E.D.N.Y. May 6, 2013). However, "what matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive resolution of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Where plaintiffs have alleged that defendants engaged in an unlawful policy and practice of failing to pay overtime compensation or otherwise violated labor law, the prerequisite of commonality may be found. *See Atakhanova,* 2020 U.S. Dist. LEXIS 129221, at *8-12 (explaining that even where "there are some differences among employees," such as "responsibilities, hours worked, and salaries," if "[a]ll potential class members are alleged to have been harmed by a common practice," i.e., "defendant's

failure to adequately compensate employees for overtime hours," the commonality requirement is met."); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("Claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."). By contrast, where liability must be established through individualized proof, courts have declined to find commonality. *See Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 99 (W.D.N.Y. 2019) (citing *Xuedan Wang v. Hearst Corp.*, 617 Fed. Appx. 35, 37-38 (2d Cir. 2015) (summary order) (plaintiffs failed to establish commonality in case brought by unpaid interns alleging that they were "employees" under FLSA and NYLL, where questions of each intern's employment status involved "highly individualized inquiry")).

Here, and as explained further in the Court's inquiry into predominance under Rule 23(b)(3), the Court finds a lack of commonality in the issues presented within Subclasses I through IV. Plaintiffs have not demonstrated the existence of a common policy or practice of non-payment of travel time compensation or travel expense reimbursement by defendants. In fact, the evidence before the Court from representative discovery establishes that named plaintiffs and other employees were compensated for travel time. (*See* Dkt. No. 417). Numerous paystubs produced by defendants, including paystubs for Beh and Balkum, reflect denotations for travel time hours and travel reimbursement payments. (*Id.*). Although plaintiffs' complaint alleges that their travel time went uncompensated and they were not reimbursed for travel expenses, the evidence showing that defendants did regularly compensate employees for such time and expenses stands in the way of a finding of common policy or practice. *See Gregory v. Stewart's Shops*

24

*Corp.*, 14-CV-33, 2016 U.S. Dist. LEXIS 89576, at *46-59 (N.D.N.Y. July 8, 2016), *adopted by* 2016 U.S. Dist. LEXIS 133136 (N.D.N.Y. Sept. 28, 2016) (denying class certification of NYLL overtime and gap-time claims despite anecdotal evidence that employees were not compensated for additional time worked beyond their schedule shift because plaintiffs failed to show, by a preponderance of the evidence, that a company-wide *de facto* policy of encouraging or requiring off-the-clock work existed); *Fernandez v. Wells Fargo Bank, N.A.*, 12-CV-7193, 2013 U.S. Dist. LEXIS 124692, at *16 (S.D.N.Y. Aug. 27, 2013) (denying class certification for lack of commonality where plaintiffs did not cite any specific, concrete policy by employer concerning plaintiffs' off-the-clock work or any requirement not to record hours worked). Further, plaintiffs' declarations are devoid of allegations that their time spent travelling between client residences was uncompensated or compensated at an improper rate.[9] Nor do they allege that defendants had any practice or procedure in place directing them not to record travel hours or not submit timesheets or reimbursement requests relative to travel. While defendants' payment of travel time and expenses in some instances does not relieve them of liability for any compensation they failed to pay, the evidence suggests that defendants did not have a common, unlawful policy or practice in effect. *See Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 295 (S.D.N.Y. 2015) (finding an absence of common questions susceptible to class wide proof where the evidence showed that overtime was paid in at least some pay periods, with wide variation in the overtime paid to individual plaintiffs).

---

[9] On reply, plaintiffs argue that proposed Subclasses I through IV are not defined by defendants' failure to compensate them at all for their travel time, but instead by defendants' failure to compensate employees for travel time at their regular rates of pay. (Dkt. No. 427, pgs. 17-18). The Court disagrees that this distinction strengthens the commonality of plaintiffs' claims in any meaningful way.

Notably, defendants do not contest that direct travel time of home care workers between client residences was compensable. As to liability, defendants argue only that indirect travel was not compensable. *See McLaughlin v. General Electric Co*., 87-CV-1594, 1988 U.S. Dist. LEXIS 10305, at *12-19 (N.D.N.Y. Sept. 13, 1988) (finding that split shift travel time is not compensable based on analysis of whether the travel represents a "principal activity" of the worker). Here, the liability determination of whether employees incurred compensable travel time will be dependent on individualized inquiries into where, when, and for what duration each employee was travelling, as well as whether such travel was directly between clients' residences or was indirect travel between shifts.

As it pertains to the travel reimbursement claims, plaintiffs fail to provide evidence of what their own travel expenses were, nor do they allege that their expenses were typical of those incurred by purported class members. Defendants argue that, under New York law, employers are not required to reimburse employees for business expenses so long as not doing so does not reduce the employees' wages below the minimum wage. *See Chan v. Big Geyser, Inc.*, 17-CV-6437, 2018 U.S. Dist. LEXIS 148291, at *21-22 (Aug. 30, 2018) ("Regardless of what type of expenses are at issue, courts in this District have held that under New York law, employers do not have to reimburse employees for business expenses so long as not doing so does not reduce the employee's wage below the minimum wage.") (internal quotations omitted); *Lin v. Benihana Nat'l Corp.,* 10-CV-1335, 2010 U.S. Dist. LEXIS 132871, at *15-17 (S.D.N.Y. Nov. 9, 2010) (FLSA and NYLL allow employers to shift the cost of expenses such as uniform purchase and maintenance and tools of the trade so long as these costs, when deducted from the employees' weekly

wages, do not reduce their wage to below the minimum required).[10] Thus, a determination of liability will be affected by the earnings of each individual class member, the travel expenses incurred, if any, and whether those expenses reduced the earnings of any individual below the minimum wage for any period.  The obvious lack of uniformity in both wages and expenses reflects a lack of commonality and typicality in this case. *See Lin*, 2010 U.S. Dist. LEXIS 132871, at *19-20 (denying FLSA collective action certification because plaintiffs submitted conclusory statements which lacked details of the expenditures of other employees, making expense and wage calculations too speculative). Any liability determination will entail inquiry into whether compensable travel expenses were incurred, and if so, the individual amount of those expenses.

The absence of evidence of a common policy or practice combined with necessity of individual liability determinations indicates a lack of commonality or typicality in plaintiffs' travel time and expense claims. *See Khalid v. DJ Shirley 1 Inc.*, 15-CV-5926, 2018 U.S. Dist. LEXIS 230700, at *19-20 (E.D.N.Y. June 26, 2018) ("[I]n absence of a *de facto* or express policy, 'resolving the employees' claims would require the Court to conduct individual inquiries for each class member to determine the hours he or she legitimately worked and whether he or she was paid appropriate compensation. Such individual determinations suggest a lack of commonality and render a class action inappropriate.'"); *Griffith v. Fordham Fin. Mgmt.*, 12-CV-1117, 2015 U.S. Dist. LEXIS 30869, at *9 (S.D.N.Y. Mar. 12, 2015) (finding no commonality among potential class

---

[10] Although it approaches merits review, the Court notes that "NYLL [§ 193] prohibits direct deductions—it does not apply to claims of failure to reimburse." *Chan*, 2018 U.S. Dist. LEXIS 148291, at *22. Plaintiffs here have not alleged that defendants directly deducted expenses for travel from their wages, nor is that shown in the record before the Court. If it is the case that certain class members may allege improper deductions for travel expenses, those claims are not represented within the allegations of either named plaintiff.

members whose work schedules had significant variability and would have required an individualized inquiry to determine the hours members actually worked).

Thus, the questions of whether defendants properly compensated and reimbursed class members for travel time and travel expenses is not susceptible to class-wide proof.

Conversely, the Court finds both commonality and typicality within the issues of Subclass VI. On this issue, plaintiffs have provided evidence from defendants' payroll records reflecting that 83 of the 92 selected plaintiffs worked one or more workweeks for which they were not paid wages due within seven days of the workweek those wages were earned. (Dkt. No. 401, ¶ 6(e)). The records indicate that Beh worked approximately 11 weeks and Balkum worked approximately 7 weeks in which their wages were not timely paid. (*Id*., ¶ 24(f)). Evidence of regular incidences of late payments reflect a policy or practice of untimely wage payments which was common to all home care employees. Further, liability for the claims of this subclass will involve determining whether defendants were required to pay class members within seven days of earning wages and whether they did so, if required. Those determinations are likely to be resolved by reference to defendants' payroll records for calculation of the time between when wages were earned and when wage payments were issued. Unlike plaintiffs' travel compensation and reimbursement claims, their untimely wage payment claims are readily subject to generalized proof. Although defendants argue that neither plaintiffs nor the purported class members have established that they are "manual workers" under NYLL § 190(4), who are subject to the requirements NYLL § 191(1)(a)(i)'s pay frequency requirements, this liability question can be resolved on a class wide basis. Plaintiffs have alleged, and the record before the Court does not contradict, that all purported class members

employed as home care workers performed substantially the same duties and tasks. Thus, individualized inquiry is unlikely to be necessary.

For all of these reasons, the Court finds that the commonality and typicality prerequisites under Rule 23(a)(2) and (a)(3) have not been met as to proposed Subclasses I through IV, but have been met as to proposed Subclass VI.

*The Adequacy Requirement*

The adequacy requirement has two elements: "(1) the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the class." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009). Defendants do not challenge either prong of the adequacy requirement.

The Court first finds that plaintiffs' attorneys, Gladstein, Reif & Meginniss LLP and Hayes Dolce, are qualified to represent class members in this litigation. In support of these law firms' qualifications, plaintiffs submit affidavits from James M. Reif, a partner of the Gladstein, Reif & Meginnis law firm, and Ian H. Hayes, formerly a partner of the law firm of Creighton, Johnsen & Giroux, and currently a partner of the Hayes Dolce law firm, both of whom have been litigating this case from filing of the complaint through the filing of the instant class certification motion. Mr. Reif's affidavit indicates that he has served as lead class counsel in several certified class actions. (Dkt. No. 403). Mr. Reif's affidavit also shows that he has extensive experience representing plaintiffs in wage and hour claims. (*Id.*). Mr. Hayes' affidavit similarly indicates that he has extensive experience with his prior firm in litigating labor and employment-related lawsuits, including wage and hour claims, and handling numerous class actions. (Dkt. No. 404). Mr. Hayes submits that he

has served as lead counsel in at least one class action case currently pending in New State Supreme Court.[11] (*Id.*). Although Mr. Hayes has informed the Court that, as of January 28, 2022, he is now working with a new law firm, his qualifications to serve as class counsel, particularly in tandem with those of Mr. Reif and the resources of his firm, are not diminished.

Furthermore, there is no indication that plaintiffs' interests are antagonistic to the remainder of the class. Beh and Balkum have each submitted an affidavit stating that they are willing and able to represent other home care workers employed by CCC and that they have already given depositions in support of their claims. (Dkt. Nos. 405, 406). They also submit that they each received offers of judgment from defendants, which they did not accept. (*Id.*). Further, Beh and Balkum's claims of untimely payment of wages are the same as or typical of the other class members. (Dkt. No. 401, ¶¶ 6-11). *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (finding typicality "is strong evidence that [named plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").

Accordingly, plaintiffs have satisfied the adequacy prerequisite of Rule 23(a)(4).

---

[11] Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, courts must consider the following in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(C)(i). These requirements are similar to the adequacy requirements set forth in Rule 23(a)(4). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 626, n. 20 (1997). Based on the record before the Court, including the affidavits submitted by plaintiffs' counsel, the Court concludes that the requirements of Rule 23(g) have been satisfied. Accordingly, the Court finds that James M. Reif and Ian H. Hayes should be appointed as class counsel for the viable subclass(es).

**Requirements for certification under Rule 23(b)(3)**

The Court now considers the requirements of Rule 23(b)(3), which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b). A court's inquiry into Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is similar to the analysis applied when considering the commonality and typicality requirements. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

*Do Common Questions Predominate?*

Common questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). The predominance inquiry is similar to, but more demanding than, the commonality inquiry. *Saleem v. Corporate Transp. Group, Ltd.*, 12-CV-8450, 2013 U.S. Dist. LEXIS 163934, at *29 (S.D.N.Y. Nov. 15, 2013).

As explained above, the claims raised by proposed class members in Subclasses I through IV strain commonality. In wage and hour cases, courts question whether individualized inquiries regarding employees' work and pay will predominate over class wide issues. *See Hardgers-Powell*, 330 F.R.D. at 100. "[W]here the employer's liability hinges on issues that demand substantial individualized analysis of each employee's duties, hours, or compensation, predominance is not satisfied." *Id*. Here, the Court finds

that individualized analysis of hours worked, and expenses incurred, by each proposed class member would predominate. More specifically, in order to resolve these claims and calculate compensable travel time and/or travel expenses, the Court would need to determine, as to each individual plaintiff, their specific shifts and client assignments, the amount of time between shifts or assignments, the relative locations of specific client residences, whether travel was direct or indirect, the mode of travel used, and costs associated with travel. Few, if any, answers to these questions are ascertainable by reference to defendants' payroll and timekeeping records.

In making this certification motion, plaintiffs rely on speculative calculations and estimates by their counsel as to the length of time workers spent travelling based on gaps between their shifts. Although individualized issues going to damages do not defeat class certification, *see e.g., Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015), plaintiffs' resort to assumptions about worker's time spent travelling, incurrence of travel expenses, and whether travel was direct or indirect, demonstrates that proof of liability for unpaid compensation will not be generalized. Instead, determinations will need to be made on an individualized basis, separate and apart from any damages inquiry. Indeed, where, as here, off-the-clock work is at issue, courts are disinclined to find the predominance requirement satisfied. *See Hardgers-Powell*, 330 F.R.D. at 105 ("[W]here an employee complains that 'off-the-clock' or otherwise unreported working hours have gone uncompensated, an employer's payroll records may not suffice to establish the number of hours the employee worked – additional, perhaps more individualized, evidence will be required."); *Shillingford v. Astra Home Care, Inc*., 293 F. Supp. 3d 401, 417-19 (S.D.N.Y. 2018) (finding that questions of liability about the hours worked by class

plaintiffs were not provable through the defendants pay records alone, and thus plaintiffs had not shown by a preponderance of the evidence that liability under NYLL could be established through generalized proof or that the individual issues were not more substantial than the class wide ones); *Ruiz*, 93 F. Supp. 3d at 296 (declining to certify class of bankers who alleged that they worked uncompensated overtime hours for lack of predominance, in part, because the number of hours worked off the clock were not reliably tracked).

Accordingly, the Court concludes that individualized questions will predominate over general ones as to the facts and issues raised by members of Subclass I through IV.

Nevertheless, the Court finds that common issues will predominate in adjudication of the claims of Subclass VI. For many of the same reasons that the Court finds commonality and typicality as to this subclass, it concludes that class wide questions regarding defendants' requirement to pay home care workers under NYLL § 191(1)(a) and whether payments were timely made are likely to predominate the class action.

The Court rejects defendants' arguments that class certification should be denied as to this subclass because they may have defenses as to why any untimely wage payments were late. Defendants submit that, in some cases, payments may have been reasonably delayed for reasons outside their control, e.g., because of a worker's failure to turn in timesheets by a weekly deadline. *See Parker v. City of New York*, 04-CV-4476, 2008 U.S. Dist. LEXIS 38769, at *42-43 (S.D.N.Y. May 13, 2008) (holding that the requirement of prompt payment under the FLSA considers minimization of delay to the extent practicable). Defendants are raising one or more affirmative defenses which, although they may have merit, do not necessarily defeat class certification. *See Weiss v.*

*La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 454 (S.D.N.Y. 2005) ("Although the existence of a meritorious defense does not necessarily defeat certification, affirmative defenses may be considered as a factor in the class certification calculus."). Here, this defense may be asserted by defendants and resolved by reference to the timesheet and payroll records and will not predominate over the common issues of untimely payments. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"); *Johnson v. Nextel Communs. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (holding that although individual defenses "may affect different class members differently, their existence does not compel a finding that individual issues predominate over common ones.").

For these reasons, it is apparent that common issues of law and fact predominate in satisfaction of Rule 23(b)(3) as to Subclass VI only. The Court further concludes that individualized issues will predominate as to Subclasses I through IV, preventing fulfillment of Rule 23(b)(3).

### Is a Class Action Superior?

Factors relevant to determining the superiority of a class action under Rule 23(b)(3) include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3).

The purpose of a class action is to allow individual plaintiffs a method to combine claims that they would not have the incentive, financial or otherwise, to litigate on an individual basis. In fact, the amount of potential recovery for each class member here is relatively small. Thus, potential class members may be discouraged from pursuing these claims individually because there is a significant risk that any potential recovery would be exceeded by the cost and burden of litigation. Proceeding as a class action would certainly aid potential class members who are unlikely to have knowledge of their rights due to their economic circumstances or other factors. *See Poplawski v. Metroplex on the Atlantic, LLC*, 11-CV-3765, 2012 U.S. Dist. LEXIS 46408, at * 30-31 (E.D.N.Y. Apr. 2, 2012) (finding class action to be superior to individual lawsuits under New York Labor Law because "[w]hile potential class members might possibly recover liquidated damages, […] such potential individual damage awards are not significant enough to indicate that any individual would shoulder the burden and cost of vast and complex litigation.") Moreover, it is more efficient to decide a single set of facts and single theory for liability in one case, rather than having multiple litigants bring individual actions on the same—or substantially similar—causes of action. Indeed, district courts in this Circuit "routinely hold that a class action is superior where…potential class members are aggrieved by the same policy [and] the damages suffered are small in relation to the expense and burden of individual litigation[.]" *Whitehorn v. Wolfgang's Steakhouse, Inc*., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (collecting cases).

Taking these considerations into account, the Court acknowledges that its recommendation not to certify proposed Subclasses I through IV will mean that potential class members who have not been fairly compensated or reimbursed for travel-related work by defendants are significantly less likely to receive redress of such wrongs. However, such individuals are not without recourse to bring suit on their own behalf. Furthermore, the lack of concrete allegations of a common policy affecting these workers, combined with the highly individualized inquiry into both liability and damages, directs the Court to a finding that litigating these issues or claims as a class action is not superior to litigation on an individual basis.

The Court does conclude that litigation of the issues raised by Subclass VI on a class wide basis is superior to individual litigation. The relevant factors, considered in connection with the record presented here, demonstrate that a class action is superior to other methods for the fair and efficient adjudication of this issue. The Court is not aware of any other pending litigation related to defendants' untimely payment of wages to home care workers in the relevant area and during the relevant period, and defendants have not brought the existence of any similar lawsuits to the attention of the Court. The instant forum is appropriate because the alleged wrongs took place in New York, and plaintiffs alleges a violation of New York Labor Law in addition to their FLSA claims. Finally, the Court can find no significant difficulties in managing the proposed class action. As discussed above, the identity of class members can be ascertained from defendants' records. Counsel for the proposed class and counsel for defendants appear to be highly competent with significant experience in litigating these types of suits.

Because common questions of fact and law predominate and a class action is superior to individual lawsuits for adjudication of this controversy, the requirements of Rule 23(b)(3) have been met as to proposed Subclass VI alone.

## II.   MOTION FOR ENTRY OF FINAL JUDGMENTS

A total of 135 named and opt-in plaintiffs, including named plaintiffs Ruby Cason and Briana Kincannon,[12] have moved for an order directing the Clerk of Court to enter a final judgment *nunc pro tunc* in each movant's favor in the amount specified in the Rule 68 Offer of Judgment tendered by defendants and accepted by each movant in the corresponding notice of acceptance. (Dkt. No. 408). In the event the Court does not agree with plaintiffs' position that such entry is required by Rule 68, plaintiffs request entry of final judgment in favor of each movant under Rule 54(b). *See* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.").

Rule 68 of the Federal Rules of Civil Procedure provides:

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

---

[12] Plaintiffs' motion identifies 135 movants who had accepted Offers of Judgment as of the date of filing. Since that time, 17 additional plaintiffs have accepted Offers of Judgment, bringing the total number of plaintiffs who have had an Interim Judgment entered in their favor to 152 individuals. (Dkt. Nos. 429-445; 447-463).

The Second Circuit has clarified that judicial approval of Rule 68(a) offers of judgment settling FLSA claims is not required, and that the entry of the agreed-upon judgment is a ministerial act and mandatory duty of the Clerk of Court. *See Mei Xing Yu v. Hasaki Rest.*, *Inc.*, 944 F.3d 395, 410 (2d Cir. 2019).

In this case, the Clerk of Court did promptly enter an "interim judgment" in favor of each and every plaintiff having filed a notice of acceptance of offer of judgment. Such judgments identified the individual plaintiff and the term upon which the offer of judgment was accepted. Plaintiffs do not contest this fact. Plaintiffs object to the Clerk's designation of each entry as an "Interim Judgment in a Civil Case." They submit that such interim judgments entered by the Clerk did not constitute money judgments which will be enforceable in favor of the movants by a writ of execution. They further submit that a delay in entry of judgments designated as "final" will result in financial loss to plaintiffs because they have expressly waived the right to collect prejudgment interest that would otherwise be due them from September 22, 2021, the date of filing of the notices of acceptance, to the eventual date of payment by defendants.

The Court finds the Clerk's entry of such "Interim Judgments" in compliance with the Federal Rules of Civil Procedure. The Court finds no legal basis for plaintiffs' assertion that judgment has not been entered by the Clerk as required by Rule 68. "A judgment is to be final if it conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order or resolve collateral issues." *Gardner v. Catering by Henry Smith, Inc.*, 205 F. Supp. 2d 49, 49-50 (E.D.N.Y. 2002) (quoting *Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999). Whereas a judgment that does not resolve the entire case is considered an "Interim Judgment." *See, e.g., Robinson v. City*

*of Buffalo*, 16-CV-432, 2017 U.S. Dist. LEXIS 177862, at *2 (W.D.N.Y. 2017) (noting that following dismissal of complaint as to some, but not all defendants, "[t]he Clerk of Court entered interim judgment in favor of these defendants […], and the case proceeded as to the remaining defendants."); *Sisem Muhendislik Insaat Sanayi Ve Ticaret v. Kyrgyz Republic*, 12-CV-4502, 2020 U.S. Dist. LEXIS 208487, at *1-2 (S.D.N.Y. Nov. 5, 2020) (reflecting entry of interim judgment against party for sanctions while the case continued to be litigated). Here, not all plaintiffs have accepted offers of judgment and the entire case before the Court is undoubtably not yet resolved. The case remains ongoing as to 61 named and opt-in plaintiffs, plus class members as identified above. Thus, entry of interim judgments as to the plaintiffs who have accepted offers of judgment is appropriate.

Further, the Court finds no justification to direct the entry of a final judgment pursuant to Rule 54(b) because plaintiffs' arguments for the necessity of such judgment are largely mooted at this time. Defendants submit, without dispute by plaintiffs, that they have remitted payments as set forth in the accepted offers of judgment. By letter of December 3, 2021, defendants represented to the District Court that all checks to the 135 applicable individuals were mailed by defendants' payroll vendor as of that date. (Dkt. No. 424). In the absence of claims that plaintiffs who accepted offers of judgment have not received prompt payment of settlement amounts, further action of the Court is unwarranted.

For these reasons, the Court recommends that plaintiffs' motion for entry of final judgments be denied.

### III.   <u>MOTION FOR ATTORNEY FEES</u>

Plaintiffs move for an award of attorney's fees for the 152 plaintiffs, including named plaintiffs Cason and Kincannon, who have accepted Offers of Judgment from defendants. (Dkt. No. 474). Plaintiffs seek attorney fees and expenses in the amount of $568,033.88 plus taxable costs of $540.00.[13] The moving plaintiffs have accepted Rule 68 Offers of Judgment and now seek an award of attorney's fees based upon the FLSA's fee-shifting provisions and the agreement of defendants to pay "reasonable *pro rata* attorneys' fees and costs" as determined by the Court.

Defendants do not dispute the agreement to pay attorney's fees, but they argue that (1) the timing of the request is premature; (2) plaintiffs are not entitled to fees on claims and issues on which they have not had success (including Rule 23 class certification); and (3) the fees and costs sought are unreasonable as to the time expended and proposed rates.[14] (Dkt. No. 477).

Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure provides that any claim for attorney's fees must be made no later than 14 days after entry of judgment. Further, "[w]hen an action presents more than one claim for relief […] or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54 requires timely fee applications and promotes

---

[13] These figures reflect work performed up to February 27, 2022. Plaintiffs have reserved their right to supplement their application for work performed after that date. Within their reply brief, plaintiffs have included additional time entries for services performed between February 27 and April 3, 2022. (Dkt. No. 482).

[14] The Court notes that based on the average settlement amounts contained in defendants' offers of judgment, the approximate total amount of $244,065 was paid by defendants to the 152 plaintiffs who accepted the offers. (Dkt. No. 477, pgs. 10-11).

prompt rulings. Nonetheless, the Rule expressly allows for a court to determine when just reasons for delay exist in rendering judgments.

The Court agrees with defendants' position that this request is premature, and in the interests of judicial economy and practicality, the appropriate award of attorneys' fees should be determined at the conclusion this case. Although the FLSA claims of these movants appear to have been resolved efficiently, plaintiffs are now seeking legal fees in connection with all plaintiffs and all time expended in pursuing this action. As the Second Circuit held in *Barfield v. N.Y. City Health & Hosps. Corp.*, the most critical factor in determining the reasonableness of a fee award is the "degree of success" obtained by the plaintiff. *See* 537 F.3d 132, 152 (2d Cir. 2008). Accordingly, in *Barfield*, a reduction of attorney fees was found to appropriately reflect a plaintiff's failure to secure collective action certification under the FLSA. *Id*. Relying on *Barfield*, defendants submit that the time expended by plaintiffs' counsel in obtaining these offers of judgment was minimal in comparison to the time spent pursuing class-based discovery and moving for Rule 23 certification, for which they have not yet, and may only partially, prevail. Plaintiffs counter that the legal services they provided in connection with the Rule 23 motion and class-based discovery are recoverable because that work contributed to the movants' success on their claims. Plaintiffs submit that although the opt-in plaintiffs were acting on the single FLSA claim in the complaint, it did not mean they could not also be making claims under New York Labor law. They further state that the class-based state law claims were the reason defendants made offers of judgment at the amounts they did. This dispute highlights that the overall reasonableness of plaintiffs' request for attorneys' fees will be affected by the outcome of the case, including the degree of success on their class action.

The Court has made a recommendation herein to certify only one of plaintiffs' putative subclasses, but the Court still lacks information to make the necessary determinations at this juncture.

Where, as here, a portion of numerous opt-in or class plaintiffs have accepted offers of judgment, but others have not, a fee application is more efficiently and accurately resolved upon resolution of all claims. In *Cohen v. Gerson Lehrman Group, Inc*., one of numerous plaintiffs accepted a Rule 68 offer of judgment, after which plaintiffs' counsel submitted application for attorney fees. *See* 09-CV-4352, 2011 U.S. Dist. LEXIS 104546 (S.D.N.Y. Sept. 15, 2011). The court denied the motion without prejudice, explaining that "[t]he action has not concluded and there will likely be a trial. The issue of allocation may become moot if all other plaintiffs prevail at trial." *Id*. at *5. The court further explained that "[a] rule that permits a plaintiff to pass on the litigation costs of all plaintiffs to a defendant who makes an offer of judgment to one plaintiff would produce a powerful disincentive for a defendant to make a Rule 68 offer of judgment and thus undermine the goals of Rule 68 […]." *Id*. In *Davis v. City of New York*, the court was presented with a fee application in a civil rights action after 9 of 16 plaintiffs accepted Rule 68 offers of judgment. *See* 10-CV-699, 2011 U.S. Dist. LEXIS 120165, at *17-18 (S.D.N.Y. Oct. 18, 2011). Similar to here, the settling plaintiffs agreed to dismiss their claims in exchange for a specified sum, and they did not obtain class certification, injunctive relief, or declaratory relief. *Id*. at * 6. The court confined its award of fees to the fees associated with the settling plaintiffs' individual claims for money damages. *Id*. at *17-18. It deferred determination of fees associated with the class-based "pattern and practice" discrimination claims until final resolution of the matter. *Id*. ("To allocate a portion of such fees to the Settling Plaintiffs at

this stage of the litigation makes little sense given that the degree of plaintiffs' success with regard to their pattern and practice claims has not yet been determined."). *See also Toliver v. JBS Plainwell, Inc.*, 11-CV-302 (W.D. Mich. July 3, 2013) (denying without prejudice plaintiffs' application for attorneys' fees where 7 out of 80 opt-in plaintiffs accepted offers of judgment to settle FLSA claims because "awarding fees at this point— even as a proportion of the time counsel has spent on this matter—would greatly complicate any later motions for attorney's fees. Such an award is not necessary to secure prompt appellate review of important issues, to promote judicial efficiency, or to serve any other legitimate goal.").

Here, determination of what portion of the fee request was reasonably expended to settle claims of the movant plaintiffs rather than for the remaining plaintiffs and putative class members will require considerable review and analysis. Because the allocation of time expended on each pursuit may become moot if the remaining plaintiffs prevail, it is in the interest of judicial economy for determination to be delayed pending the outcome of the proceedings. As the court concluded in *Toliver*, *supra*, the legitimate goals of this Court "would best be served by delaying consideration of fee issues until this suit has been fully resolved."[15]

---

[15] The Court rejects plaintiffs' argument that there is no authority authorizing a delay in fee adjudication for a plaintiff whose claims have been resolved on the merits to wait for resolution of claims of other plaintiffs. Plaintiffs rely on *McPhaul v. Insight Mgmt. Partners, LLC*, to support their claim that the prevailing plaintiffs' rights and entitlements to fees will be unaffected by the outcome of the remaining plaintiffs' claims. *See* 19-CV-1392, 2022 U.S. Dist. LEXIS 32035 (W.D.N.Y. Feb. 23, 2022). Indeed, in *McPhaul*, the court awarded attorneys' fees notwithstanding the resolution of one of three plaintiffs' Fair Debt Collection Practices Act claims. *Id*. at *17-18. The court rejected defendant's contention that the two movants who accepted offers of judgment should only be awarded two-thirds of the presumptively reasonable fee. *Id*. The court declined to *pro rate* the fees, explaining that the "critical issue" is that defendant not pay twice for any time charged or costs, which would be prevented by cautioning that plaintiffs' attorney could not submit the charges again if later seeking fees for the third plaintiff. *Id*. This Court does not disagree with that reasoning, but finds the holding, which involved only three plaintiffs and an award less than $6,000 in fees and costs, of limited applicability to the circumstances of this case.

In light of this recommendation, the Court does not reach defendants' arguments concerning the reasonableness of plaintiffs' fee application.[16]

For these reasons, the Court recommends that plaintiffs' motion for attorneys' fee be denied without prejudice to renewal.

## **CONCLUSION**

For the foregoing reasons, the Court finds that plaintiffs have satisfied the four prerequisites for class certification set forth in Rule 23(a) as well as one of the requirements for class certification set forth in Rule 23(b), specifically subsection (b)(3), as to proposed Subclass VI (untimely payment of wages) only. The Court finds that plaintiffs have not demonstrated standing on behalf of themselves or the proposed members of Subclass V (hiring notices). The Court further finds that plaintiffs have not satisfied the commonality, typicality, or predominance requirements of Rule 23(a) and 23(b)(3) for certification of Subclasses I through IV (travel compensation and reimbursement). Thus, the Court recommends that plaintiff's motion to certify the class and appoint class counsel be granted as to Subclass VI, and denied as to Subclasses I, II, III, IV, and V. (Dkt. No. 400).

The Court further recommends that plaintiffs' motion for entry of final judgments (Dkt. No. 408) and motion for attorney fees (Dkt. No. 474) be denied without prejudice to renewal.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

---

[16] To the extent a later renewed motion for attorney fees is opposed by defendants on reasonableness grounds, the parties' consideration of the recent Second Circuit holding in *Holick v. Cellular Sales of N.Y., LLC*, 2022 U.S. App. LEXIS 25055 (2d Cir. Sept. 7, 2022), may prove helpful in determining an eventual fee award.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.***  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).*

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:      September 29, 2022
            Buffalo, New York


                              /s/ *Michael J. Roemer*
                              MICHAEL J. ROEMER
                              United States Magistrate Judge