UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
**ORETHA BEH, RUBY CASON, BRIANA
KINCANNON and KIMBERLY BALKUM,**
individually and on behalf of all persons
similarly situated,

                           **Plaintiffs,**

         -versus-                                 No. 1:19-CV-01417 JLS MJR

**COMMUNITY CARE COMPANIONS INC.,
ALEXANDER J. CARO, MARK GATIEN,
INTERIM HEALTHCARE OF ROCHESTER,
INC., and JAMES WATSON,**

                          **Defendants.**
-------------------------------------------------------------x

**PLAINTIFFS' LOCAL RULE 56(a)(2) RESPONSES TO DEFENDANTS'
SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AND PLAINTIFFS'
<u>SUPPLEMENTAL STATEMENT OF ADDITIONAL MATERIAL FACTS</u>**

*I. Plaintiffs' Local Rule 56(a)(2) Responses to Defendants' Statement of Material Facts*

    1.      Admitted.

    2.      Admitted.

    3.      Admitted that the first week that CCC ran payroll for Buffalo and Rochester *in Viventium* was for the week of November 18, 2017, but denied that November 18, 2017 was the first week of Aides' payroll for which CCC was responsible. *See* Declaration of Arlene Gannon in Support of Defendants' Opposition to Plaintiffs' Motion to Strike [Doc. # 629] ("Gannon Decl. Opp.") ¶ 7 (November 18, 2017 was "the first week CCC ran payroll for Buffalo and Rochester in Viventium."); *see also* Pls.' Local R. 56(a)(2) Stmt. [Doc. # 642] ¶ 4.

    4.      Admitted.

    5.      Admitted.

6. Denied that the cited paragraphs of the Gannon Declaration support this claim. Denied that the relevant period began November 18, 2017. *See* ¶ 3 above. Admitted that CCC processed payroll on a weekly basis and paid at least some aides some of what they were owed each week. *See* Aksu Decl. Oct. 30, 2024 [Doc. # 643] ¶¶ 4, 6, 7.

7. Admitted that Beh last worked for CCC on May 20, 2020 but denied that her first shift for CCC occurred on or about November 18, 2017. *See* Pls.' Local R. 56(a)(2) Stmt. [Doc. # 642] ¶ 4.

8. Admitted that CCC paid Beh *some* of the wages she had earned weekly. *See* Exs. 1, 2 to Declaration of Ege Asku July 23, 2025 ("Aksu Decl. July 23, 2025"); Aksu Decl. July 23, 2025 ¶¶ 4–5.

9. Admitted that Balkum worked her last shift for CCC on January 18, 2019 but denied that her first shift for CCC occurred on or about November 18, 2017. *See* Pls.' Local R. 56(a)(2) Stmt. [Doc. # 642] ¶ 4.

10. Admitted that CCC paid Balkum *some* of the wages she had earned weekly. *See* Exs. 1, 2 to Aksu July 23, 2025 Decl.; Aksu Decl. July 23, 2025 ¶¶ 4–5.

11. Denied. Gannon was not employed by CCC during the relevant time period and thus has no personal knowledge of whether or when Beh and Balkum received wage statements, *see* Gannon Dep. [Doc. # 653-5] at 99:7-8, nor do the exhibits upon which Gannon apparently relied for this statement demonstrate its truth. Beh worked for CCC from October 2017 until May 2020 and Balkum began working for CCC in October 2017, *see* Pls.' Local R. 56(a)(2) Stmt. [Doc. # 642] ¶ 4, but the Gannon exhibits contain only paystubs from November 2017 to November 2019. Further, many of the paystubs are missing work dates altogether, or contain the

2

same "work date" for each shift. Finally, denied that this putative fact is material to any remaining claims in this case.

12. Denied. Gannon was not employed by CCC during the relevant time period and thus has no personal knowledge of whether or when Beh and Balkum received wage statements, *see* Gannon Dep. [Doc. # 653-5] at 99:7-8, nor do the exhibits upon which Gannon apparently relied for this statement demonstrate its truth. Beh worked for CCC from October 2017 until May 2020 and Balkum began working for CCC in October 2017, *see* Pls.' Local R. 56(a)(2) Stmt. [Doc. # 642] ¶ 4, but the Gannon exhibits contain only paystubs from November 2017 to November 2019. Admitted that CCC paid Beh and Balkum *some* of the wages they had earned, generally weekly.

13. Admitted.

14. Denied. Gannon's declaration, upon which Defendants rely for this assertion, does not support the assertion. Admitted that most class members were paid some of the wages they had earned, generally weekly.

15. Admitted.

16. Admitted but denied that this putative fact is material to any claim or defense.

17. Admitted but denied that this putative fact is material to any claim or defense.

18. Denied. The Complaint speaks for itself. In the SAC, Plaintiffs allege, *inter alia*, that Defendants failed to pay Named Plaintiffs and other Personal Care Assistants and/or Home Health Aides "wages weekly within seven calendar days of the end of the workweek in which the wages were/are earned and by no later than the regular pay day." SAC ¶ 1. The SAC further alleges the existence of a subclass consisting of "all PCAs/HHAs employed by CCC Defendants who performed, are performing and/or will perform work for and benefiting said Defendants

who were not, are not being and/or will not be paid wages earned for such work weekly and within seven calendar days of the end of the workweek in which the wages were, are being and/or will be earned and on or before their regular pay day." *Id*. ¶ 37. Finally, the SAC adds an Eleventh Cause of Action entitled "Timely Payment of Wages," which cites several statutes, including NYLL § 191(1)(a), and alleges that CCC "failed to pay Plaintiffs at least some and on certain occasions all of their wages earned weekly and within seven calendar days of the end of the workweek in which the wages were earned" where the payroll workweek ran from Saturday to Friday. *Id*. ¶ 99.

19. Denied. The Complaint speaks for itself. In the SAC, Plaintiffs seek, *inter alia*: "[d]amages for the failures to compensate each such employee on a timely basis for work (s)he performed and/or will perform as required by NYLL § 191(1)(a) and/or the FLSA;" "liquidated damages pursuant to 29 U.S.C. § 260 and/or NYLL § 198(1-a) and/or § 663(1);" "[p]rejudgment interest, costs and reasonable attorney's fees."

20. Admitted that the SAC seeks liquidated damages for Defendants' late payments, but denied that this is the only relief sought in the SAC for these violations.

21. Admitted but denied that this putative fact is material to any claim or defense.

22. Denied. Plaintiffs' motion speaks for itself. Plaintiffs sought certification of the following class, as either an issue or claim class: "[a]ll persons employed by CCC as home care workers in the [Western District of New York on or after October 14, 2017 but on or before January 3, 2020] (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who were not paid wages by CCC within seven (7) calendar days of the end of each workweek in which the wages were earned." [Doc. # 407], at 9.

23. Admitted but denied that this putative fact is material to any claim or defense.

24. Admitted that Judge Sinatra adopted the R&R in full and that the order was granted solely as to subclass VI. Denied as to the description of subclass VI. The order speaks for itself. Judge Sinatra's order certified the following class: "[a]ll persons employed by CCC as home care workers in the [Western District of New York] [on or after October 14, 2017 but on or before January 3, 2020] (exclusive of persons who have filed an Acceptance of an Offer of Judgment in this action) who were not paid wages by CCC within seven calendar days of the end of each workweek in which the wages were earned." [Doc. ## 407, 505].

25. Admitted.

26. Denied. Plaintiffs' brief speaks for itself. Plaintiffs stated they do not seek punitive damages but instead seek statutorily prescribed damages in connection with their claims under NYLL § 191.

27. Admitted.

28. Denied. The Complaint speaks for itself. Plaintiffs did not expressly reference NYLL § 191(1)(d) in the SAC, but the SAC makes factual allegations that would support a claim under NYLL § 191(1)(d).

29. Admitted that Plaintiff's first expressly referenced NYLL § 191(1)(d) in opposition to Defendants' motion for summary judgment but see ¶ 28 above.

30. Denied. The parties completed merits-phase discovery in mid-July 2024. *See* Pls.' Local R. 56(a)(2) Stmt. [Doc. # 642] ¶ 245. Also denied that this putative fact is material to any of Plaintiffs' claims or Defendants' defenses.

31. Admitted.

*II. Plaintiffs' Supplemental Local Rule 56(a)(2) Statement of Additional Material Facts*

32. Between October 14, 2017 and January 3, 2020, CCC made at least 13,635 late payments to class members. Aksu Decl. Oct. 30, 2024 [Doc. # 643] ¶ 4; Suppl. Aksu Decl. Nov. 25, 2024 [Doc. # 671] ¶ 6.

33. Between October 14, 2017 and January 3, 2020, class members received late payments anywhere from 1 to 131 times, with the average class member receiving a late payment 14.3 times. Aksu Decl. Oct. 30, 2024 [Doc. # 643] ¶ 6; Suppl. Aksu Decl. Nov. 25, 2024 [Doc. # 671] ¶ 6.

34. In all, CCC paid class members more than $784,773.67 in late wages during the period October 14, 2017 to January 3, 2020. Oct. 30, 2024 [Doc. # 643] ¶ 7; Suppl. Aksu Decl. Nov. 25, 2024 [Doc. # 671] ¶ 6.

35. During the during the period October 14, 2017 to January 3, 2020, CCC made 1,911 wage payments to class members four or more weeks after the employee's regular pay day for the workweek in which the work was performed. Aksu Decl. July 23, 2025 ¶ 6.

36. The average late payment CCC made to class members during the period October 14, 2017 to January 3, 2020 was 2.5 weeks late. Aksu Decl. July 23, 2025 ¶ 7.

Dated: July 23, 2025

                                              Respectfully submitted,

                                              Jessica Harris (pro hac vice)
                                              James Reif (pro hac vice)
                                              GLADSTEIN, REIF & MEGINNISS, LLP
                                              39 Broadway, Suite 2430
                                              New York, New York 10006
                                              212-228-7727

Ian Hayes
Michael Dolce
HAYES DOLCE LLP
135 Delaware Avenue, Suite 502
Buffalo, New York 14202
716-608-3427

Attorneys for Plaintiffs