# JacksonLewis

Jackson Lewis P.C.
58 South Service Road, Suite 250
Melville NY 11747
(631) 247-0404 Main
(631) 247-0417 Fax
jacksonlewis.com

MY DIRECT DIAL IS: (631) 247-4671
MY EMAIL ADDRESS IS: BRIAN.SHENKER@JACKSONLEWIS.COM

August 12, 2025

**VIA ECF**

Honorable Michael J. Roemer
United States District Court
Western District of New York
2 Niagara Square
Buffalo, New York 14202

                Re:       <u>Oretha Beh, et al. v. Community Care Companions Inc., et al.</u>
                              Civ. No. 19-cv-1417(JLS)(MJR)

Dear Judge Roemer:

       On behalf of Defendants Community Care Companions, Inc., Mark Gatien, and Alexander Caro (collectively "Defendants"), we submit this Notice of Supplemental Authority in further support of Defendants' Motion for Summary Judgment as to Liquidated Damages Pursuant to Court Order Dated June 10, 2025 (ECF Dkt. No. 705, "Motion"). The enclosed recent decision issued by Eastern District Judge Brian M. Cogan interprets the pay frequency requirements of New York Labor Law ("NYLL") § 191. *Baron Chisolm-Lucas v. American Airlines, Inc.*, 23-cv-5177(BMC), at p. 9-12 (E.D.N.Y. Aug. 4, 2025). Judge Cogan held that the plaintiff could not, as a matter of law, establish an untimely payment claim under NYLL § 191 where (as here, and consistent with the recent amendment discussed in the Motion) the employer paid the employees in question at least twice per month, and pursuant to the applicable employment agreement between the parties, even though the amounts paid could vary for a host of administrative reasons, and certain payments for work performed at the beginning of a month were not made until the middle of the subsequent month. *Id.* at p. 2-3, 12. ("the subsection means what it says and nothing more").

       To the extent Plaintiffs submit substantive opposition papers in response to this Notice, Defendants respectfully request permission to file a response of equal length.

       We thank Your Honor for your attention to this matter.

                                                                       Respectfully submitted,

                                            JACKSON LEWIS P.C.

                                            /s/ *Brian J. Shenker*

                                            Noel P. Tripp
                                            Brian J. Shenker

cc:    All counsel (via ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
BARON CHISOLM-LUCAS, *individually and*
*on behalf of all others similarly situated*,

                  Plaintiff,

    -against-

AMERICAN AIRLINES, INC.,

                  Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-cv-5177 (BMC)

**COGAN**, District Judge.

    Plaintiff, a flight attendant, brings this putative class action, asserting jurisdiction under the Class Action Fairness Act, against his employer, a major airline, under the New York Labor Law. The operative complaint asserts two claims alleging that defendant's payment system violates the New York Labor Law's wage-statement and late-payment provisions. Defendant has moved for summary judgment on both counts. For the following reasons, its motion is granted. Plaintiff, like dozens of plaintiffs before him, lacks standing to bring his wage-statement claim in federal court. And as a matter of law, he cannot show that defendant's payment system distributes untimely payments.

## BACKGROUND

    Plaintiff Barron Chisolm-Lucas has worked as a flight attendant for defendant American Airlines, Inc. since 2016. From April 2016 to July 2019 and again from October 2022 to April 2023, he was based in Queens, New York. Since April 2023, he has been based in Charlotte, North Carolina. American is a Delaware corporation headquartered in Dallas, Texas. It has many employees based in New York, and it provides retail air transportation nationally and

internationally through New York airports.  During the class period, American employed roughly 6,600 New York-based flight attendants.

American pays its flight attendants an hourly wage governed by an agreement with the flight attendants' union.  Pursuant to the Joint Collective Bargaining Agreement ("JCBA"), which governs all of American's flight attendants, American pays its attendants on the 15th and 30th of each month.  However, rather than simply paying out the wages earned by the attendant in the previous two-week period, American distributes one "advance" payment on the last day of each month and one "true up" payment on the 15th day of the following month.

The end-of-month advance is a flat payment worth 37.5 hours of an attendant's "base" rate of pay.  Because American's flight attendants are guaranteed at least 75 hours of their base payrate per month, regardless of the hours they in fact work, the advance payment is exactly half of an attendant's minimum monthly income.[1]   Then, on the 15th, American pays its flight attendants a true-up payment, which is calculated by subtracting the advance payment from the total wages earned during the previous month.  In effect, the true up is equivalent to the second half of the flight attendant's minimum monthly income plus all additional wages earned.

An American flight attendant can earn additional wages during any hours worked beyond the 75-hour minimum and any hours worked at an increased rate of pay.  The JCBA outlines several ways by which attendants can enhance their base rate.  They can, for example, receive boosted wages for working overtime, for accepting assignments on understaffed flights, for flying on holidays, and even for working on certain international flights if the attendant is fluent in a relevant foreign language.  But, again, any pay enhancements a flight attendant may have

---

[1] Before July 2018, American used a similar "advance and true up" payment scheme, but it paid out a slightly lower advance and flipped the true-up and advance payment dates.  The parties agree that those differences are immaterial to the case.

2

earned in the first two weeks of the previous month are not paid out in the end-of-month advance, which is capped at 37.5 hours of base hourly pay. They are paid out in the mid-month true up.

As one can imagine, American's payroll system often results in variable, back-loaded paychecks on the 15th of each month. Flight attendants can fly upwards of two hundred hours in a single month, their flights are distributed irregularly throughout the month, and they often seek out flights that pay them above-base wages. Say, for instance, an American flight attendant worked 80 hours during the first two weeks of June, ten of which qualified for an enhanced rate, and sixty hours during the second two weeks of June, twenty of which qualified for an enhanced rate, for a total of 140 hours. The flight attendant would receive 37.5 hours of base pay on June 30th and then 72.5 hours of base pay, plus 30 hours of enhanced pay, on July 15th.

And paycheck size is not the only difference between the semi-monthly paydays. Alongside each true-up payment, American provides a detailed wage statement to its flight attendants, listing the attendant's hours worked and wages earned over the previous month. By contrast, the wage statement accompanying the advance payments is sparser. It simply communicates the dates of the corresponding pay period and the total amount of the advance payment.

Plaintiff takes two issues with American's payroll system. First, he notes that American does not pay interest to its flight attendants on any of the wages they earned during the first half of a given month that are not paid out until the true up. Second, he points out that, due to the lack of information on the wage statement distributed with his advance payment, he cannot tell from the face of that statement whether he has been properly credited for all the hours and pay enhancements he earned during the first half of the preceding month. Instead, he must wait until

3

the true-up payment on the 15th before he can determine whether American made any payment errors. According to plaintiff, American's wage-statement policy can turn what would have been a roughly 4-to-6-week process of resolving errors through American's payroll-dispute system into a 6-to-8-week process. American similarly does not pay interest to its employees for any delay in correcting payment errors.

Mirroring his two concerns, plaintiff's operative amended complaint asserts two claims against American: one for failing to provide accurate wage statements under New York Labor Law ("NYLL") § 195, and one for failing to make timely payments of hourly wages under NYLL § 191. Plaintiff seeks damages on both claims and an injunction on his § 195 claim. American has moved for summary judgment on both counts. It argues that plaintiff lacks standing under Article III of the Constitution to bring his § 195 claim, that there is no private right of action under § 191, and that, alternatively, it did not violate § 191. I address first the § 195 wage-statement claim before turning to the § 191 late-payment claim.

## DISCUSSION

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is considered "genuine" where the evidence is sufficient such that a reasonable jury could return a verdict in favor of the nonmoving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). "A fact is material if it might affect the outcome of the suit under the governing law." Id. (internal quotation marks omitted) (quoting Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008)). The Court must construe all the evidence "in the light most favorable to the non-moving party

4

and must resolve all ambiguities and draw all reasonable inferences against the movant." Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 126 (2d Cir. 2004) (quotation omitted).

## I.  Wage Statement Claim

### A.  Standing to seek compensatory damages

A plaintiff has standing to pursue a claim for damages under Article III of the Constitution if and only if (1) he suffered an "injury in fact" which is concrete, particularized, and actual or imminent; (2) there is a "fairly traceable" causal connection between his injury and the defendant's conduct; and (3) a favorable decision would provide redress for his injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The showing should correspond to the "manner and degree of evidence required at the successive stages of the litigation." Id. at 561. At the summary-judgment stage, then, the plaintiff can no longer rest on allegations in the complaint to establish standing. Id. He must "set forth by affidavits or other evidence specific facts" that create a genuine issue on standing. Id. at 555; see also Fed. R. Civ. P. 56(c).

The parties here dispute whether American's wage statements caused plaintiff to suffer an injury-in-fact. "Tangible" harms, such as physical or monetary harms, readily qualify as concrete injuries. TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021); see also Spokeo v. Robins, 578 U.S. 330, 341 (2016). Intangible harms, by contrast, confer standing only when they bear a "close relationship" to "harm[s] traditionally recognized as providing a basis for a lawsuit." TransUnion, 594 U.S. at 417. For this reason, a mere informational injury – *i.e.*, a failure to receive statutorily required information – is not independently sufficient to establish standing. There must be some "downstream consequences from failing to receive the required information in order to have an Article III injury in fact." Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022).

Applying these principles, courts in this circuit routinely reject claims under NYLL § 195 for lack of standing.  See, e.g., Quieju v. La Jugueria Inc., No. 23-cv-264, 2023 WL 3073518, at *1-2 (E.D.N.Y. April 25, 2023); Deng v. Frequency Elecs., Inc., No. 21-cv-6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022).  But see, e.g., Veloz v. MM Custom House Inc., No. 19-cv-852, 2024 WL 1282698, at *6 (E.D.N.Y. March 26, 2024) (holding that "wage statements are necessary to empower employees to understand and advocate for their rights, and the deprivation of that information can impinge on an employee's interest not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay." (internal quotation marks omitted)).  The majority of decisions find a lack of standing for good reason.  A mere failure to provide wage statements is a prototypical informational injury that cannot create standing, and plaintiffs often struggle to identify non-speculative downstream harms caused by the allegedly deficient statements.  See, e.g., Guthrie v. Rainbow Fencing Inc., No. 21-cv-5929, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), aff'd, 113 F.4th 300 (2d Cir. 2024).

Plaintiff conjures up two theories of injury stemming from the wage statements American distributes with its advance payments, which he argues violate § 195.  As is usually the case, neither theory passes constitutional muster.  First, he posits that the statements delayed his recovery of unpaid wages by up to two weeks.  Because the end-of-month statement does not disclose the hours worked during the previous month, flight attendants cannot discover any payment errors until the mid-month true-up payment.  Had the advance statement complied with § 195, plaintiff goes on, it would have disclosed his hours worked and wages earned during the first two weeks of the month, and he could have initiated American's arduous error-correction process two weeks earlier.

Sure, a delay in payment may constitute a concrete injury from a time-value-of-money perspective, at least in the absence of an offsetting interest payment. See <u>Carter v. HealthPort Techs., LLC</u>, 822 F.3d 47, 58 (2d Cir. 2016). And plaintiff has purported to identify five instances in which American did not pay him for all hours worked in the previous month. Yet the summary judgment record lacks any affidavits, or other evidence, suggesting that those errors would have shown up on a more fulsome end-of-month wage statement, had American provided one. By his own admission, plaintiff does not know whether he was underpaid in the first half of the month, which a compliant end-of-month statement would have revealed, or whether he was underpaid in the second half of the month, which a compliant end-of-month statement would not. Indeed, plaintiff even fails to offer evidence that the five errors occurred during his time in New York, rather than when he was based in another state. Any injury stemming from a delayed payment correction is thus "hypothetical" or "conjectural." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983).

Plaintiff's second theory fares no better. He alleges that the deficient information on the end-of-month wage statements caused plaintiff to expend undue time and energy cross-checking his mid-month wage statements with his flight activity records from the month prior to mitigate the risk of payment errors. Yet, fatal to his theory, he admitted that he would have cross-checked his wage statements just as closely even if American provided the information with the advance payment because "[p]ayment errors for Flight Attendants at American are a common occurrence." The injury is therefore not "traceable" to the wage statements. It is traceable only to the frequency of payments errors and American's slow error-correction process.

At bottom, plaintiff brings a claim seeking to enforce a bare violation of the NYLL's wage-statement provisions. He cannot tie any harm, beyond the information withheld, to

7

American's failure to provide him with a detailed wage statement alongside his advance payments. Such a showing does not suffice to show standing.

### B. Standing to seek injunctive relief

Plaintiff lacks standing to seek injunctive relief for similar reasons. The standing requirements for injunctive claims are identical to those for compensatory claims. Plaintiffs must identify a harm that is "concrete and particularized" and "actual or imminent," caused by defendant's illegal conduct, that will be redressed by a decision in their favor. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014). The only difference is how those requirements apply. Because injunctions are prospective forward-looking relief, plaintiffs seeking an injunction have standing only when the defendant's conduct puts them at imminent risk of substantial injury. See Murthy v. Missouri, 603 U.S. 43, 58 (2024).

Plaintiff's request for injunctive relief stumbles on the redressability hurdle. Critically, Article 6 of the NYLL does not apply to employees who are based outside the state of New York. Rodriguez v. KGA Inc., 155 A.D.3d 452, 452-53, 64 N.Y.S.3d 11 (1st Dep't 2017) (because "Article 6 of the New York Labor Law . . . contains no indication that the provisions were intended to apply when the work in question is performed outside the state," the article "do[es] not expressly apply on an extraterritorial basis."). Plaintiff is currently based in Charlotte, North Carolina. An injunction compelling American to comply with the NYLL's wage statement requirements would have no effect on him; it would apply only to American's New-York-based flight attendants. Those attendants might have standing to enjoin American from violating New York law, but plaintiff does not.

## II. Late Payment Claim

American also seeks summary judgment on plaintiff's NYLL § 191 claim. It argues that there is no express or implied private right of action to bring a late-payment claim under § 198(1-a) and alternatively that plaintiff cannot shown, as a matter of law, that American's payroll system violates § 191. The Court will assume, without deciding, that § 198(1-a) confers a private right of action for violations of § 191.[2] Nevertheless, it agrees with American that its payroll system complies with the statute.[3]

Section 191(1)(d) provides that "[a] clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Lab. Law § 191(1)(d). There is no dispute that flight attendants are "other worker[s]"; that American pays its flight attendants "in accordance with the agreed terms of employment," *i.e.*, that American complies with the JCBA; or that American designates "regular pay days." The parties' debate is confined to the second of the subsection's three clauses; they dispute whether American pays its flight attendants "less frequently than semi-monthly."

Plaintiff argues that American does. He contends that hourly wages are, by default, earned when the work is performed; thus, § 191(1)(d) requires employers to abide by semi-monthly pay periods in which the employer pays its clerical and other workers all wages earned

---

[2] The New York state courts are in conflict as to whether the statute provides a private right of action, compare Vega v. CM & Assocs. Constr. Mgmt., LLC, 107 N.Y.S.3d 286, 175 A.D.3d 1144 (1st Dep't 2019) (finding private right of action) with Grant v. Glob. Aircraft Dispatch, Inc., 204 N.Y.S.3d 117, 223 A.D.3d 712 (2nd Dep't 2024) (no private right of action), with the majority of federal district courts predicting that the New York Court of Appeals would agree with Vega. See e.g., Camillo v. Khim's Millennium Mkt., Inc., No. 22-cv-7846, 2025 WL 951265 (E.D.N.Y. Mar. 13, 2025) (collecting cases) ("Almost every court in this Circuit that has confronted this split in authority has predicted that the Court of Appeals would rule that NYLL § 198 conveys a private right of action for violations of NYLL § 191"), report and recommendation adopted sub nom., No. 22-cv-7846, 2025 WL 948125 (E.D.N.Y. March 28, 2025).

[3] For the same reason, the Court need not address American's preemption defense.

9

within two weeks of the pay period's conclusion. American advocates for a more limited interpretation. It reads the statute as imposing only a pay-frequency requirement. By American's account, so long as an employer pays an employee twice per month, it does not run afoul of subsection (1)(d).

"In determining the meaning of state [statutory] law," a federal court "must carefully predict how the state's highest court would rule if confronted with the issue, including how it would resolve any ambiguity in the statute." KLC, Inc. v. Trayner, 426 F.3d 172, 175-76 (2d Cir. 2005). The court must "consider all sources available" and apply "traditional tools of statutory interpretation." Id. When discerning the meaning of a statute, New York courts begin with "the text itself." People v. Francis, 30 N.Y.3d 737, 745, 71 N.Y.S. 394 (2018) (quotation omitted). They also consider "the specific context in which statutory language is used and the broader context of the statute." Palmer v. Amazon.com, Inc., 51 F.4th 491, 514 (2d Cir. 2022). As a corollary, "where the Legislature 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the Legislature] acts intentionally and purposefully in the disparate inclusion or exclusion.'" Rivers v. Birnbaum 102 A.D.3d 26, 36, 953 N.Y.2d 232 (2nd Dep't 2012).

My inquiry begins, as it must, with the plain language of § 191(1)(d), and specifically the disputed language: "not less frequently than semi-monthly." N.Y. Lab. Law § 191(1)(d). The clause dictates how often an employer must pay its clerical and other employees – twice per month – and it modifies the preceding mandate that an employer pay its "clerical or other worker[s] . . . the wages earned in accordance with the agreed terms of employment." Id. Read together, subsection (d)'s text imposes a simple pay-frequency requirement. Generally, payment

10

of a clerical or other worker's wages is governed by "the agreed terms of employment," but those terms must provide for at least two payments per month.  Id.

Plaintiff's interpretation is wholly divorced from this straightforward text.  Nowhere does subsection (1)(d) mention a "pay period."  Nor does it mandate that each semi-monthly paycheck pay out the wages earned two weeks prior.  Nor for that matter does it say anything at all about the basis for calculating the semi-monthly payments, except that they must comply "with the agreed terms of employment" and occur "on regular paydays designated in advance by the employer."  Id.  Even if there is, as plaintiff contends, some "default" rule that wages are earned when work is performed, the statutory language supersedes it.  It clarifies that wages are "earned in accordance with the agreed terms of employment."  Id.  As the Second Circuit put it, "§ 191 guarantees only that the wages the employer and employee have agreed upon be paid in a timely manner again according to the terms of the employee's employment."  Myers v. Hertz Corp., 624 F.3d 537, 545 n.1 (2d Cir. 2010) (cleaned up).

If Second Circuit precedent and the text of subsection (d) was not enough, the rest of § 191 puts the interpretive question to bed.  Take first subsection (c), which covers "commission salespersons."  Id. at § 191(c).  Like subsection (d), that provision requires an employer to pay its salespeople "in accordance with the agreed terms of employment," but its modifying clause is quite different.  Id.  The clause states that payment should occur "not less frequently than once in each month and *not later than the last day of the month following the month in which they are earned*," before listing a series of exceptions.  Id. (emphasis added).

If the italicized language sounds familiar, that is because plaintiff has been attempting to read virtually identical language into the blank spaces of subsection (d).  Subsection (c) makes clear that the New York State legislature knows exactly how to write a statutory provision

11

detailing how long an employer can wait to pay wages already earned, or put another way, how to write a statute establishing a pay period. Indeed, it did so in subsections (a) and (b) too. The first half of subsection (a) states that "a manual worker shall be paid weekly *and not later than seven calendar days after the end of the week in which the wages are earned*," and subsection (b) states that "a railroad worker shall be paid on or before Thursday of each week *the wages earned during the seven-day period ending on Tuesday of the preceding week*." Id. at § 191(1)(a)-(b) (emphasis added). I must presume, then, that the state "act[ed] intentionally and purposefully in the disparate . . . exclusion" of that language from subsection (d). Rivers, 102 A.D.3d at 36.

Armed with this presumption, the text's plain meaning, and the Second Circuit's guidance, I have no trouble predicting how the New York Court of Appeals would interpret § 191(d). It would abide by steadfast principles of statutory interpretation to conclude that the subsection means what it says and nothing more: that employers must pay their clerical or other employees twice per month, on regular pay days set in advance, and otherwise according to the terms of any applicable employment agreement. American does precisely that. It abides by the JCPA, and it pays its flight attendants twice per month. It is accordingly entitled to summary judgment on the late-payment claim.

## CONCLUSION

For the foregoing reasons, American's motion for summary judgment is granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
August 4, 2025

12