

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ORETHA BEH and KIMBERLY BALKUM,
individually and on behalf of all persons
similarly situated,

                    Plaintiffs,

    v.

COMMUNITY CARE COMPANIONS INC.,
ALEXANDER J. CARO, MARK GATIEN,
INTERIM HEALTHCARE OF ROCHESTER,
INC., and JAMES WATSON,

                    Defendants.

_____

1:19-CV-01417- JLS (MJR)

REPORT and RECOMMENDATION

## INTRODUCTION

This case has been referred to the undersigned by the Honorable John L. Sinatra, Jr., pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pretrial matters and to hear and report on dispositive motions for consideration by the District Court. Before the Court is a supplemental motion for partial summary judgment (Dkt. Nos. 694; 705) brought by defendants Community Care Companions, Inc., Alexander J. Caro, and Mark Gatien. For the following reasons, it is recommended that defendants' motion be denied.

## BACKGROUND and PROCEDURAL BACKGROUND[1]

Plaintiffs Oretha Beh and Kimberly Balkum ("plaintiffs" or "named plaintiffs") commenced this lawsuit against defendants Community Care Companions Inc. ("CCC"),

_____

[1] Because the Court assumes familiarity with the factual background and extensive procedural history in this case, only facts relevant to the instant motions are included here. For a review of the past case history, allegations of the complaint, and additional facts, the Court refers to its prior Report and Recommendations dated September 29, 2022 and March 25, 2025. (Dkt. Nos. 487; 681).

Alexander J. Caro, Mark Gatien, Interim Healthcare of Rochester, Inc., and James Watson (collectively "defendants"). Plaintiffs are home care workers who have alleged that defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("FLSA"), New York Codes, Rules and Regulations, 12 NYCRR § 142-2.2, and New York Labor Law ("NYLL"), NYLL §§ 190, *et seq.*, relative to overtime compensation, wage payment, reimbursement of expenses, and employer notice provisions. (Dkt. No. 1). Plaintiffs sought to bring both an FLSA collective action under 29 U.S.C. § 216(b), and a class action under Rule 23 of the Federal Rules of Civil Procedure. (*Id.*). Following the Court's denial of a motion to dismiss (Dkt. No. 235), plaintiffs filed a second amended complaint on February 3, 2019, which is now the operative pleading. (Dkt. No. 242).

Plaintiffs previously moved for certification of a Rule 23 class action based on defendants' alleged violations of NYCRR § 142-2.2 and NYLL §§ 198(3), 195(a) and 191(1)(a). (Dkt. Nos. 400-407). Plaintiffs' motion for class certification was granted in part and denied in part by the District Court based on the Report and Recommendation of this Court. (Dkt. Nos. 487; 505). The class certified by the District Court was defined as:

> All persons employed by CCC as home care workers in the Western District of New York on or after October 14, 2017 but on or before January 3, 2020 (exclusive of any persons who have filed an Acceptance of an Offer of Judgment in this action) who were not paid wages by CCC within seven (7) calendar days of the end of each workweek in which the wages were earned.

(Dkt. No. 505). Following the class certification decision, the Court entered a Case Management Order setting deadlines for merits-phase discovery on the FLSA and NYLL claims, FLSA collective action certification motions, and dispositive motions. (Dkt. No. 514).

2

After extensive motion practice, this Court issued a Report and Recommendation dated March 25, 2025, which addressed defendants' motion for summary judgment and motion to decertify the Rule 23 class; plaintiffs' motion for approval of notice to Rule 23 class members; the parties' counter motions for leave to maintain and to decertify the FLSA collective; and several motions to strike. (Dkt. No. 681). By Decision and Order dated June 23, 2025, the District Court adopted the Report and Recommendation, resulting in the denial of defendants' motion for summary judgment and motion to decertify the Rule 23 class and the granting of plaintiff's motion for leave to maintain an FLSA collective action and motion for approval of notice to class members. (Dkt. No. 701).

On June 6, 2025, while objections to the prior R&R were pending before the District Court, defendants filed a letter motion seeking dismissal of plaintiffs' claim for liquidated damages on their certified class claims for late payments under NYLL § 191. (Dkt. No. 694). Defendants made this request based on an amendment to Section 198(1-a) of the NYLL which limits the damages recoverable for violations of NYLL § 191. (*Id.*). Plaintiffs filed a letter in opposition to the request. (Dkt. No. 695). The Court issued a text order setting a deadline for defendants to file a formal motion for the relief requested. (Dkt. No. 697).

On June 30, 2025, defendants filed the instant motion for partial summary judgment as to liquidated damages. (Dkt. Nos. 705-709). Plaintiffs filed a response in opposition. (Dkt. Nos. 710-713). Defendants filed a reply. (Dkt. Nos. 714-715). Defendants also filed a notice of supplemental authority. (Dkt. No. 716)

The Court heard oral argument on the supplemental motion for summary judgment on September 11, 2025. At that time, the Court considered the matter submitted for

decision. Subsequently, plaintiffs filed a notice of supplemental authority, to which a response and reply have been submitted. The Court has considered those supplemental filings. (Dkt. Nos. 723; 724; 725).

## FACTS[2]

Defendant CCC is a home care and nurse staffing agency that specializes in hourly and live-in care. (Dkt. No. 708, ¶ 1). Plaintiffs were employed at CCC's Buffalo and Rochester locations in the title of personal care assistants ("PCAs") and/or home health aides ("HHAs") (collectively referred to as "Aides"). (Id., ¶ 2).

CCC's first payroll week for Aides working out of its Buffalo and Rochester offices was for the workweek beginning on November 18, 2017. (Id., ¶ 3). CCC's payroll workweek ran from Saturday to Friday. (Id., ¶ 4). The regular payday for Aides, including named plaintiffs and class members, was each Friday. (Id., ¶¶ 5, 13). During all times relevant to this action, namely November 18, 2017 through February 3, 2021, CCC processed payroll and issued paychecks on a weekly basis. (Id., ¶ 6).

Plaintiff Oretha Beh began working for CCC in 2017 and last worked for CCC on May 20, 2020. (Id., ¶ 7; Dkt. No. 711, ¶ 7). CCC issued payroll checks to Beh on a weekly payroll frequency throughout her employment. (Dkt. No. 708, ¶ 8).

Plaintiff Kimberly Balkum began working for CCC in 2017 and last worked for CCC on January 18, 2019. (Id., ¶ 9; Dkt. No. 711, ¶ 9). CCC issued payroll checks to Balkum on a weekly payroll frequency throughout her employment. (Dkt. No. 708, ¶ 10).

---

[2] The facts described herein are taken from the pleadings, motion papers, statements of undisputed facts, and exhibits filed in this lawsuit. When citing a proposed fact within defendants' statement of material facts (Dkt. No. 708; 715), the Court has confirmed that plaintiffs' responding statement (Dkt. No. 711) either admits the fact or fails to specifically controvert it with evidence. See W.D.N.Y. L.R. Civ. P. 56(a).

4

Beh and Balkum generally received a payroll check from CCC every seven days throughout their employment with CCC. (*Id.*, ¶ 12; Dkt. No. 711, ¶ 12). All CCC Aides, including class members, were generally paid weekly. (Dkt. No. 708, ¶ 14; Dkt. No. 711, ¶ 14).

Between October 14, 2017 and January 3, 2020, CCC made at least 13,635 late wage payments to class members. (Dkt. No. 711, ¶ 32). Between these dates, class members received late payments anywhere from 1 to 131 times, with the average class member receiving a late payment 14.3 times. (*Id.*, ¶ 33). In total, CCC paid class members more than $784,773.67 in late wages during this period of time. (*Id.*, ¶ 34). CCC made 1,911 wage payments to class members during this period which were four or more weeks after the employee's regular pay day for the workweek in which the work was performed. (*Id.*, ¶ 35). The average late payment CCC made to class members during the period was 2.5 weeks late. (*Id.*, ¶ 36).[3]

In relevant part, plaintiffs' second amended complaint alleges that defendants failed to pay plaintiffs and other Aides "weekly wages within seven calendar days of the end of the workweek in which the wages were/are earned and by no later than the regular pay day." (*Id.*, ¶ 18). Plaintiffs seek "[d]amages for failures to compensate each such employee on a timely basis for work (s)he performed and/or will perform as required by NYLL § 191(1)(a) and/or the FLSA;" "liquidated damages pursuant to 29 U.S.C. § 260 and/or NYLL § 198(1-a) and/or § 663(1);" and "prejudgment interest, costs, and reasonable attorney's fees." (*Id.*, ¶ 19).

---

[3] Although defendants admit the facts and calculations included in this paragraph, they argue that plaintiffs' analysis is flawed and the statistics are misleading. (Dkt. No. 715).

The New York State Legislature recently amended New York Labor Law Section 198(1-a) as part of the 2026 New York omnibus budget legislation. (Dkt. No. 708, ¶ 31 (citing N.Y. SB 3006 Budget Bill)). There has been no post-amendment order by a court or finding by the New York State Department of Labor that defendants (individually or jointly) have violated NYLL § 191(1)(a). (*Id.*, ¶ 15).

## **DISCUSSION**

### *Rule 56 Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "[V]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011).

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Importantly, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact."

*Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). However, a party cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations unsupported by facts. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

### Motion for Summary Judgment

Defendants seek partial summary judgment as to plaintiffs' right to liquidated damages on their NYLL § 191(1)(a) claims for late payment of wages. Defendants argue the liquidated damages are not recoverable for claims such as this based on the New York State Legislature's recent amendment to NYLL § 198(1-a).

In this case, the class of plaintiffs certified under Rule 23 is composed of "persons employed by CCC as home care workers [...] who were not paid wages by CCC within seven (7) calendar days of the end of each workweek in which the wages were earned." (Dkt. Nos. 487; 505). This class action is premised on CCC's alleged violations of NYLL § 191(1)(a) through late payment of wages to plaintiffs.

Section 191(1)(a) requires that a manual worker "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." This Court has previously held that a private right of action arises under § 191(1)(a) and that disputed issues of fact exist as to defendants' liability for the alleged violations. (Dkt. Nos. 487, pgs. 17-19; 681, pgs. 36-37, 43-45). Throughout this case, the availability of liquidated damages under NYLL § 198(1-a) for untimely wage payments has been

7

disputed. The Court previously found that resolution of the issue of damages was premature prior to trial. (Dkt. No. 681, pg. 39).

On May 9, 2025, the New York State Legislature passed an omnibus budget bill which amended New York Labor Law Section 198(1-a). *See* 2025 Sess. Law News of N.Y. Ch. 56 (SB 3006-C Budget Bill, Part U) (eff. May 9, 2025). Following amendment, the statute states, in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, […] unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due. […] Notwithstanding provisions of this subdivision, liquidated damages shall now be applicable to violations of Paragraph A of Subdivision One Hundred Ninety-One of this article where the employer paid the employee wages on a regular payday, no less frequently than semi-monthly. Such violations shall be subject to damages as follows:
>
> (i)     no more than one hundred percent of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect, as prescribed by the superintendent of financial services pursuant to section fourteen-a of the banking law for the employer's first violation; […]

NYLL § 198(1-a). The Bill provides that the amendment takes "effect immediately and shall apply to causes of action pending or commenced on or after [May 9, 2025]." *Id.*[4]

In other words, the Legislature has clarified that liquidated damages are not applicable for violations of Section 191(1)(a) where the employer paid the employee

---

[4] The Amendment to Section 198 further reinforces *Vega's* conclusion that § 198(1-a) provides a private cause of action for violations of Section 191(1)(a). *See Dedyn v. Gintzler Graphics, Inc.*, 23-CV-1294, 2026 U.S. Dist. LEXIS 16023, at *20 (W.D.N.Y. Jan. 28, 2026) (collecting cases) (finding that the new language of § 198 explicitly provides a private right of action for violations of § 191(1)(a)).

8

wages on a regular payday that was no less frequent than semi-monthly. Instead, the amended statute limits damages for first-time violators to "no more than one hundred percent of the lost interest found to be due for the delayed payment of wages" calculated using a daily interest rate set by state banking law.[5] *Id.* Liquidated damages are only available, prospectively, for repeated violations of the frequency of pay requirements. *Id.*

Based on the legislative amendment, defendants seek summary judgment on plaintiffs' claim for liquidated damages. Defendants argue that the limitation on liquidated damages expressly applies to the instant claim because it is undisputed that CCC's regular payroll schedule was weekly (i.e., more frequent than semi-monthly), with employees being paid every Friday for work that was performed the preceding week. Defendants further submit that the express language of the amendment applies to causes of action, such as this, which were pending at the time of enactment. Defendants believe that the appropriate remedy for these claims is interest payable on any delayed wages.[6]

Plaintiffs dispute defendants' theory; arguing that the recent amendment has no applicability to these facts. They submit that the legislative history of the amendment makes it clear that the bill was passed in response to the flood of NYLL § 191(1)(a) cases that were brought by manual workers in the wake of *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dept. 2019). Those cases largely involved manual workers who were paid bi-weekly rather than weekly in violation of the law, but nonetheless were paid in full on their regular bi-weekly payday. They offer that the Legislature sought to

---

[5] The interest calculation is based on the annual rate of interest set by the New York State Department of Financial Services and is currently set at 16% annually. *See* N.Y. Banking Law § 14-a.

[6] Defendants point out the significant difference between potential damages due plaintiffs based on estimated interest (which defendants calculate at approximately $3,068) versus liquidated damages (which plaintiffs allege to be approximately $1 million). (Dkt. No. 709, pg. 15 n.3).

provide relief to employers who were paying their employees fully but with incorrect frequency of pay. Plaintiffs stress that the facts of this case are distinctly different from the bi-weekly pay frequency claims commonly brought under § 191(1)(a). They argue that the violations occurred here because, despite having a regularly weekly pay schedule, defendants failed to fully and timely pay plaintiffs their wages on over 13,000 occasions in a two-year period. As such, plaintiffs argue that the legislative amendment does not pertain to or limit their requests for liquidated damages

The Court agrees with plaintiffs and finds that this amendment does not affect plaintiffs' right to seek liquidated damages. When interpreting state law, "a federal court looks first to whether the state's highest court – here, the New York Court of Appeals – has spoken to the point at issue in a controlling decision." *Reyes v. City of New York*, 141 F.4th 55, 68 (2d Cir. 2025). The Court of Appeals has not yet addressed the issue raised here. Thus, this Court must apply state-law principles of statutory interpretation and related precedents to "predict how the forum state's highest court would decide" the point at issue. *Id.*, at 69. "The New York Court of Appeals has identified as the first rule of statutory construction that laws be construed 'to effectuate the intent of the Legislature.'" *Id.* (quoting *People v. Iverson*, 37 N.Y.3d 98, 103 (2021)). A court properly "look[s] first to the statutory text, which is the clearest indicator of legislative intent." *Id.* In doing so, however, New York courts will also consider "context" and "legislative history." *Id.* Lawmakers' "contemporaneous interpretation[s] of a statute," such as those expressed in a bill jacket or sponsor's memorandum, are entitled to considerable weight. *See id.*

Here, the statutory text, context, and legislative history of amendment support plaintiffs' position. As a starting point, and as this Court has explained, the remedial

10

purpose of NYLL § 191(1)(a) is to protect manual workers who are dependent on weekly wages. (Dkt. No. 681, pg. 37). The Court has previously rejected defendants' assertion that timely payment of some but not all wages due to an employee will satisfy the pay frequency requirements of the statute. (*Id.*, pgs. 36-37). Defendants raise the argument again, now asserting that the amended statute does not specify that an employer must pay "all" wages, but the Court rejects such an interpretation. Defendants ask the Court to construe this statute to mean that employers can escape the risk of liquidated damages by paying incomplete wages to employees, as long as some earnings are paid on a regular payday. No section of the statutory text supports that interpretation. To the contrary, the plain language of the amended statute does not include underpayment of wages within the limitation on liquidated damages for frequency of pay violations.

The legislative memorandum submitted to the Governor in support of the Budget Bill provides further context as to the purpose of the amendment. It states that the amendment is intended to limit plaintiffs' recovery of liquidated damages in certain frequency of pay violations. (*See* Dkt. No. 712-1, pgs. 25-26; FY 2026 NYS Executive Budget, Memorandum in Support, Part U). The memorandum explains that the amendment was proposed in response to the First Department ruling in *Vega v. CM & Associates* wherein the Appellate Division ruled that manual workers "who received full pay, at least semi-monthly, but were paid late in violation of the weekly frequency of payment provision of the Labor Law have a private right of action and can recover liquidated damages for untimely payment of wages." (*Id.*). The memorandum states that *Vega's* holding resulted in certain workers being awarded liquidated damages for up to six years of their wages for untimely payment "even if they were *paid in full* and on a semi-

11

monthly schedule." (*Id.*) (emphasis added). The memorandum acknowledges that lawsuits bringing these claims and seeking liquidated damages are increasing in frequency and have caused "some employers serious financial harm." (*Id.*). Lastly, it explains that enactment of the amendment would "avoid unnecessary financial harm to employers and businesses in situations where they have been paying employees the *correct* amount on a regular and timely, bi-weekly schedule." (*Id.*). (emphasis added).

From the legislative memorandum, it is clear that the amendment was intended to alleviate the burden on employers by eliminating liability for liquidated damages in instances where wages were paid bi-weekly, rather than weekly. However, there is no indication that the amendment was intended to reduce penalties for employers who paid employees less than they were owed on their regular payday. In fact, the memorandum plainly reflects the legislative intent to limit liquidated damages where manual workers were "paid in full" and paid the "correct amount" on a regular, semi-monthly schedule.

The reasoning of the Second Department in *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2d Dept. 2024), also supports this interpretation. There, the court stated that while an employer who uses an agreed-upon bi-weekly pay schedule for manual workers violates the frequency of pay requirements, such a violation is "not equivalent" to "a nonpayment or underpayment of wages subject to collection with an additional easement of liquidated damages." *See id.*, at 716. *Grant* highlights the distinction between the less serious offense of violating the frequency of pay requirements, and the more serious offense, which is at issue here, of failing to pay wages to employees on their regular payday. That difference underscores why the Legislature might seek to prevent imposition of liquidated damages for violations of the weekly timing of pay requirement,

12

but not for underpayment violations involving failure to pay full and complete wages to manual workers in a timely manner.

Indeed, at least two other courts have interpreted the amendment as proscribing liquidated damages only in instances where an employer pays all wages due on a regular, semi-monthly payday. *See Orea Garcia v. New Force Const. Corp.*, 23-CV-2336, 2025 U.S. Dist. LEXIS 137815, at *48 (E.D.N.Y. July 18, 2025), *adopted by* 2025 U.S. Dist. LEXIS 165906 (E.D.N.Y. Aug. 26, 2025) ("The amended NYLL Section 198(a-1) permits recovery of liquidated damages for Section 191(a)(i) violations involving late payments other than those made in full on a regular, at least semi-monthly schedule."); *Garzon v. Building Servs., Inc.*, 24-CV-5429, 2025 U.S. Dist. LEXIS 126441, at *44 (S.D.N.Y. July 2, 2025), *adopted by* 2025 U.S. Dist. LEXIS 141107 (S.D.N.Y. July 23, 2025) ("When Defendants paid Plaintiff on a semi-monthly basis *and in full*, those payments, although untimely under New York Labor Law section 191(1)(a), were made on a regular schedule not 'less frequently than semi-monthly.") (emphasis added).[7]

Defendants rely on a recent case from the Eastern District of New York to support their proposed interpretation of the Amendment. *See Chisolm-Lucas v. Am. Airlines, Inc.*, 793 F. Supp. 3d 477 (E.D.N.Y. 2025). In *Chisolm-Lucas*, the district court held that the plaintiff could not establish untimely payment under § 191 where he was paid at least twice per month, but the amount of pay varied between the beginning and middle of the month due to administrative reasons. *Id.*, at 484-86. The court explained that NYLL §

---

[7] Although liquidated damages were not requested or awarded on the claim, another court recently recognized a § 191(1)(a) late payment claim where the plaintiff "frequently . . . would only receive a fraction of her wages on payday and would receive the remaining amount at a later date." *See Chacha v. Nueva Era Flower Corp.*, 23-CV-3367, 2025 U.S. Dist. LEXIS 174932, at *29 (E.D.N.Y. Sept. 8, 2025), *adopted by* 2025 U.S. Dist. LEXIS 193577 (Sept. 30, 2025).

191(1)(d) imposes a "simple pay-frequency requirement" that does not mandate that each semi-monthly check paid out the wages earned two weeks prior. *Id.*, at 485. However, NYLL § 191(1)(d) is applicable to clerical and other workers, while § 191(1)(a), covering manual workers, is the subsection in question here. In fact, the court in *Chisolm-Lucas* drew a sharp distinction between the text of subsection (d) and subsection (a) because of the fact that subsection (a) includes the requirement that manual workers "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." *Id.*, at 485-86. Thus, the holding of *Chisolm-Lucas* is not instructive.

Based on the statutory language, context, and history, this Court concludes that the New York Court of Appeals would interpret the amended statute as not providing a limitation on liquidated damages for cases such as this involving untimely payment of wages. The facts of the instant case do not involve an employer who was paying employees the correct amount on a regular, bi-weekly schedule. Although payroll checks were issued by CCC on a weekly basis, it is undisputed that there were numerous instances in which plaintiffs were underpaid and not fully compensated within the statutorily prescribed seven-day period. It is further undisputed that the average late payment for wages was made 2.5 weeks after the employee's regular payday, with many instances of longer delays. This type of wage underpayment is distinct from the simple pay frequency cases for which the New York Legislature has recently provided relief to employers. Accordingly, defendants are not shielded by the limitation of liquidated damages for a frequency of pay violation described in the amendment to NYLL § 198(1-a).

14

For these reasons, the Court recommends that defendants' motion for summary judgment be denied.

## CONCLUSION

For the foregoing reasons, the Court recommends that defendants' supplemental motion for partial summary judgment (Dkt. Nos. 694; 705) be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).*

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall*

*be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:    March _11_ , 2026
           Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge